**UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

**In Re:** Highland Capital Management, L.P

§
§ Case No 19–34054–SGJ-11

Patrick Daugherty - Appellant §

25-03055

vs §

**3:26-CV-02664-S**

**Highland Capital Management, L.P., et al - Appellee**

§
§

**[138] Judgment. Entered on 8/7/2026**

**APPELLANT RECORD**

**VOLUME 9**

Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
J. Reid Burley (Texas Bar No. 24109675)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1845 Woodall Rodgers Fwy., Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054 (SGJ) |
| Reorganized Debtor. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 25-03055-bwo |
| PATRICK HAGAMAN DAUGHERTY, | § | |
| Defendant. | § | INDEX |

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

**APPELLANT'S AMENDED DESIGNATION OF ITEMS TO BE INCLUDED IN THE RECORD ON APPEAL AND STATEMENT OF THE ISSUES PRESENTED**

Pursuant to Federal Rule of Bankruptcy Procedure 8009(a), Appellant Patrick Daugherty ("Daugherty") hereby submits his amended designation of items to be included in the record on appeal and statement of issues to be presented in connection with his appeal from the July 24, 2026 *Judgment and Memorandum Opinion* [Docket Nos. 138, 139 in Adversary No. 25-03055-bwo]. *See Notice of Appeal* [Docket No. 142 in Adversary No. 25-03055-bwo].

**Statement of Issues on Appeal**

1. Whether the Bankruptcy Court erred in disallowing Daugherty's Reserved Claim based on the Employment Agreement's termination provisions, when the Court itself found the 2009 Compensation Statement was incorporated into the Employment Agreement and resolved its ambiguity in Daugherty's favor, concluding that Highland Capital Management, L.P. ("Highland") intended to compensate Daugherty for any material deviation in his 2008 tax refund.

2. Whether the Bankruptcy Court erred in applying the "no further liability or obligation" language of Sections 4.5 and 4.6 of the Employment Agreement to extinguish Daugherty's compensation entitlement under the 2009 Compensation Statement, when that language pertains to severance contingent upon execution of a separation agreement and not to earned compensation that accrued during Daugherty's active employment.

3. Whether the Bankruptcy Court erred in holding that James Dondero's oral promises to cover Daugherty's contingent tax liability were unenforceable under Texas's statute of frauds, Tex. Bus. & Com. Code § 26.01, when Highland had a main purpose of its own in making the promise and when the Court failed to consider Daugherty's continued employment and forbearance as adequate consideration.

4. Whether the Bankruptcy Court erred in denying Daugherty's counterclaim for specific performance of the Settlement Agreement's books-and-records provision by construing that provision through the statutory categories of 6 Del. C. § 18-305(a), rather than by the plain meaning of the negotiated Settlement Agreement requiring Highland to "transfer its *interests* in HERA and ERA to Daugherty" "[t]o facilitate [the] recovery of [] potential claims," including "the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system."

5. Whether the Bankruptcy Court abused its discretion by granting Highland Capital Management, L.P.'s Cross Motion pursuant to Fed. R. Civ. P. 60(b)(6) when Highland failed to make a showing of manifest injustice and exceptional circumstances required to rewrite a term of

the parties' bargained-for, court-approved settlement agreement that Highland Capital Management, L.P. entered on a free, deliberate, calculated, and counseled basis.

6. Whether the Bankruptcy Court abused its discretion by granting Highland Capital Management, L.P.'s Cross Motion pursuant to Fed. R. Civ. P. 60(b)(6) when Highland was estopped from seeking such relief after it obtained the benefits of the tolling provision in the settlement agreement, including, inter alia, the parties' negotiation and execution of a series of tolling agreements to the benefit of Highland Capital Management, L.P. regarding its certain claim-objection deadline.

**Designation of Record**

Daugherty respectfully designates the following items to be included in the appellate record pursuant to Bankruptcy Rule 8009(a):

Vol. 1

000001 1. Notice of Appeal for Adversary No. 25-03055-bwo [Docket No. 142].

000008 2. The Judgment Order or Decree appealed from: July 24, 2026 – Judgment [Docket No. 138].

000010 3. July 24, 2026 – Memorandum of Opinion [Docket No. 139].

000035 4. Docket Sheet for Adversary Case No. 25-03055-bwo kept by the Bankruptcy Clerk.

5. Documents listed below for Bankruptcy Case No. 25-03055-bwo:

Vol. 2

| Filing Date | Docket No. | Description |
|---|---|---|
| 05/02/2025 000053 | 1 | (16 pgs; 3 docs) Adversary case 25-03055. Complaint by Highland Capital Management, L.P. against Patrick Hagaman Daugherty. Fee Amount $350 (Attachments: # 1 Exhibit A # 2 Adversary Proceeding Cover Sheet). Nature(s) of suit: 81 (Subordination of claim or interest). (Annable, Zachery) |
| 05/05/2025 000069 | 2 | (4 pgs; 2 docs) Summons issued on Patrick Hagaman Daugherty; Answer Due 6/4/2025; (Edmond, Michael) |
| 05/05/2025 000073 | 3 | (2 pgs) Scheduling order setting deadlines. Discovery and all exhibits except impeachment documents: 45 days prior to Docket Call, pre-trial order: 7 calendar days prior to Docket Call, proposed findings of fact and conclusions of law: 7 days prior to first scheduled docket call (RE: related document(s)1 Complaint filed by Plaintiff Highland Capital Management, L.P.). Trial Docket Call date set for 10/6/2025 at 01:30 PM at https://us- |



4926-7565-0252

| | | | |
|---|---|---|---|
| vol. 2 | | | courts.webex.com/meet/jerniga. Trial will be held during the week of 10/20/2025. Entered on 5/5/2025 (Edmond, Michael) |
| 000076 | 05/06/2025 | 4 | (4 pgs) Summons service executed on Patrick Hagaman Daugherty 5/5/2025 (Annable, Zachery) |
| 000079 | 06/04/2025 | 5 | (13 pgs; 2 docs) Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty (Attachments: # 1 Proposed Order) (York, Andrew) |
| 000092 | 06/16/2025 | 6 | (5 pgs) Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)3 Standing scheduling order in an adversary proceeding). (Annable, Zachery) |
| 000097 | 06/20/2025 | 7 | (10 pgs) Order approving stipulation concerning Scheduling Order (RE: related document(s)6 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Entered on 6/20/2025 (Okafor, M.) |
| 000107 | 06/22/2025 | 8 | (12 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)7 Order approving stipulation concerning Scheduling Order (RE: related document(s)6 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Entered on 6/20/2025 (Okafor, M.)) No. of Notices: 1. Notice Date 06/22/2025. (Admin.) |
| 000119 | 07/18/2025 | 9 | (13 pgs; 2 docs) Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty) filed by Plaintiff Highland Capital Management, L.P.. (Attachments: # 1 Proposed Order) (Annable, Zachery) |
| 000132 | 07/18/2025 | 10 | (13 pgs; 2 docs) Highland Capital Management, L.P.'s CROSS MOTION FOR RELIEF FROM A FINAL ORDER PURSUANT TO BANKRUPTCY RULE 9024 filed by Plaintiff Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) Modified TEXT on 7/21/2025 (hsj). |
| 000145 | 07/18/2025 | 11 | (43 pgs; 5 docs) Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)9 Response, 10 Motion for leave *(Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4) (Annable, Zachery) |

Vol. 2

| | | |
|---|---|---|
| 07/28/2025 000188 | 12 | (4 pgs) Certificate of service re: Objection, Objection, & Declaration Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)9 Response opposed to (related document(s): 5 Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty) filed by Plaintiff Highland Capital Management, L.P.. (Attachments: # 1 Proposed Order) filed by Plaintiff Highland Capital Management, L.P., 10 Highland Capital Management, L.P.'s CROSS MOTION FOR RELIEF FROM A FINAL ORDER PURSUANT TO BANKRUPTCY RULE 9024 filed by Plaintiff Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) Modified TEXT on 7/21/2025 (hsj). filed by Plaintiff Highland Capital Management, L.P., 11 Declaration re: *(Declaration of John A. Morris in Support of Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)9 Response, 10 Motion for leave *(Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4) filed by Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 07/30/2025 000192 | 13 | (3 pgs) Notice of hearing filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)5 Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty, 10 Motion for leave filed by Plaintiff Highland Capital Management, L.P.). Hearing to be held on 9/4/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 10 and for 5, (York, Andrew) |
| 07/31/2025 000195 | 14 | (6 pgs; 2 docs) Amended Notice of hearing filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)5 Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty, 10 Motion for leave filed by Plaintiff Highland Capital Management, L.P.). Hearing to be held on 9/4/2025 at 09:30 AM at https://us-courts.webex.com/meet/jerniga for 10 and for 5 and for 10, (Attachments: # 1 Exhibit A)(York, Andrew) |
| 08/08/2025 000201 | 15 | (13 pgs) Reply to (related document(s): 9 Response filed by Plaintiff Highland Capital Management, L.P.) *and Response to Plaintiff's Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* filed by Defendant Patrick Hagaman Daugherty. (York, Andrew) |
| 08/15/2025 000214 | 16 | (5 pgs) Reply to (related document(s): 15 Reply filed by Defendant Patrick Hagaman Daugherty) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)* filed by Plaintiff Highland Capital Management, L.P.. (Annable, Zachery) |



4926-7565-0252

| | | |
|---|---|---|
| Vol. 2 000219 08/18/2025 | 17 | (3 pgs) Notice of Appearance and Request for Notice by Melissa S. Hayward filed by Plaintiff Highland Capital Management, L.P.. (Hayward, Melissa) |
| 08/19/2025 000222 | 18 | (3 pgs) Certificate of service re: *Highland Capital Management, L.P.s Reply in Further Support of its Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)16 Reply to (related document(s): 15 Reply filed by Defendant Patrick Hagaman Daugherty) *(Highland Capital Management, L.P.'s Reply in Further Support of Its Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)* filed by Plaintiff Highland Capital Management, L.P.. filed by Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 08/29/2025 000225 | 19 | (225 pgs; 12 docs) Witness and Exhibit List *for Hearing Scheduled for September 4, 2025 at 9:30 a.m.* filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)5 Motion to dismiss adversary proceeding , 9 Response, 10 Motion for leave *(Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)*). (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit) (York, Andrew) |
| Vol. 3 09/04/2025 000450 | 20 | (48 pgs; 2 docs) Witness and Exhibit List filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)5 Motion to dismiss adversary proceeding , 10 Motion for leave *(Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024)*). (Attachments: # 1 Exhibit 1) (Annable, Zachery) |
| 09/05/2025 000498 | 23 | (3 pgs) Order (A) denying Patrick Daugherty's motion to dismiss adversary proceeding (related document # 5), and (B) granting Highland Capital Management's cross motion for relief from a final order. (related document # 10). Pursuant to Bankruptcy Rule 9024(b)(6), the Settlement Order is hereby modified to provide that the Stay Provision is stricken from the Settlement Agreement. Entered on 9/5/2025. (Okafor, M.) |
| 09/07/2025 000501 | 24 | (5 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)23 Order (A) denying Patrick Daugherty's motion to dismiss adversary proceeding (related document 5), and (B) granting Highland Capital Management's cross motion for relief from a final order. (related document 10). Pursuant to Bankruptcy Rule 9024(b)(6), the Settlement Order is hereby modified to provide that the Stay Provision is stricken from the Settlement Agreement. Entered on 9/5/2025. (Okafor, M.)) No. of Notices: 1. Notice Date 09/07/2025. (Admin.) |

10/3

| | | | |
|---|---|---|---|
| 000506 | 09/19/2025 | 25 | (9 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave). Appellant Designation due by 10/3/2025. (Attachments: # 1 Exhibit A)(York, Andrew) |
| 000515 | 09/23/2025 | 27 | (13 pgs; 3 docs) Certificate of mailing regarding appeal (RE: related document(s)25 Notice of appeal . Fee Amount $298 filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave). Appellant Designation due by 10/3/2025. (Attachments: # 1 Exhibit A) filed by Defendant Patrick Hagaman Daugherty) (Attachments: # 1 Service List) (Almaraz, Jeanette) |
| 000528 | 09/23/2025 | 28 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)25 Notice of appeal filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave). (Almaraz, Jeanette) |
| 000530 | 09/23/2025 | 30 | (6 pgs) Notice of docketing notice of appeal. Civil Action Number: 3:25-cv-02584-E. (RE: related document(s)25 Notice of appeal filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave) filed by Defendant Patrick Hagaman Daugherty) (Almaraz, Jeanette) |
| 000536 | 09/25/2025 | 31 | (7 pgs) Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)3 Standing scheduling order in an adversary proceeding, 7 Order (generic)). (Annable, Zachery) |
| 000543 | 09/25/2025 | 32 | (4 pgs) BNC certificate of mailing. (RE: related document(s)28 Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)25 Notice of appeal filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave).) No. of Notices: 0. Notice Date 09/25/2025. (Admin.) |
| 000547 | 09/26/2025 | 33 | (44 pgs; 2 docs) Motion to stay pending appeal (related documents 23 Order on motion to dismiss adversary proceeding, Order on motion for leave) filed by Defendant Patrick Hagaman Daugherty (Attachments: # 1 Exhibit A) (York, Andrew) |
| 000591 | 09/29/2025 | 34 | (1 pg) Request for Transcript regarding a hearing held on 9/4/2025. The requested turn-around time is hourly. filed by Plaintiff Highland Capital Management, L.P.. (Hayward, Melissa) |

Vol. 3

| | | |
|---|---|---|
| 09/30/2025 000592 | 35 | (36 pgs) Transcript regarding Hearing Held 09/04/2025 before Judge Stacey G.C. Jernigan (36 pages) RE: Motion to Dismiss Adversary Proceeding (5); Cross-Motion for Relief (10). THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 12/29/2025. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Kathy Rehling, kathyrehlingtranscripts@gmail.com, Telephone number 972-786-3063. (RE: related document(s) 21 Hearing held on 9/4/2025. (RE: related document(s)5 Motion to dismiss adversary proceeding filed by Defendant Patrick Hagaman Daugherty (Attachments: # 1 Proposed Order)) (Appearances: A. York and J. Smeltzer for P. Daugherty; J. Morris for Reorganized Debtor. Evidentiary hearing. Motion denied for reasons stated orally. Counsel to upload order.), 22 Hearing held on 9/4/2025. (RE: related document(s)10 Highland Capital Management, L.P.'s CROSS MOTION FOR RELIEF FROM A FINAL ORDER PURSUANT TO BANKRUPTCY RULE 9024 filed by Plaintiff Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) Modified TEXT on 7/21/2025 (hsj).) (Appearances: A. York and J. Smeltzer for P. Daugherty; J. Morris for Reorganized Debtor. Evidentiary hearing. Motion granted for reasons stated orally. Counsel to upload order.)). Transcript to be made available to the public on 12/29/2025. (Rehling, Kathy) |
| 10/01/2025 000628 | 36 | (6 pgs) Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)33 Motion to stay pending appeal (related documents 23 Order on motion to dismiss adversary proceeding, Order on motion for leave)). (Annable, Zachery) |
| 10/01/2025 000634 | 37 | (14 pgs) Order Approving Stipulated Scheduling Order (RE: related document(s)1 Complaint filed by Plaintiff Highland Capital Management, L.P., 31 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Evidentiary Hearing to be held on 4/8/2026 at 09:30 AM Dallas Judge Jernigan Ctrm for 1, Entered on 10/1/2025 (Okafor, M.) |
| 10/01/2025 000648 | 38 | (11 pgs) Order Approving Stipulation Regarding Highland Capital Managment L.P.'s Deadline to File Response to Patrick Daughtery's Motion for Stay Pending Appeal (RE: related document(s)36 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Entered on 10/1/2025 (Okafor, M.) |
| 10/03/2025 000659 | 39 | (45 pgs; 2 docs) Answer to complaint , Counterclaim by Patrick Hagaman Daugherty against Highland Capital Management, L.P. filed by Patrick Hagaman Daugherty. (Attachments: # 1 Exhibit A)(York, Andrew) |

| | | | |
|---|---|---|---|
| Vol 3 000704 | 10/03/2025 | 40 | (3 pgs) Notice of Appearance and Request for Notice by Jeffrey Reid Burley filed by Defendant Patrick Hagaman Daugherty. (Burley, Jeffrey) |
| 000707 | 10/03/2025 | 41 | (6 pgs) Appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Defendant Patrick Hagaman Daugherty. Appellee designation due by 10/17/2025. (York, Andrew) |
| 000713 | 10/04/2025 | 42 | (16 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)37 Order Approving Stipulated Scheduling Order (RE: related document(s)1 Complaint filed by Plaintiff Highland Capital Management, L.P., 31 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Evidentiary Hearing to be held on 4/8/2026 at 09:30 AM Dallas Judge Jernigan Ctrm for 1, Entered on 10/1/2025 (Okafor, M.)) No. of Notices: 1. Notice Date 10/04/2025. (Admin.) |
| 000729 | 10/04/2025 | 43 | (13 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)38 Order Approving Stipulation Regarding Highland Capital Managment L.P.'s Deadline to File Response to Patrick Daughtery's Motion for Stay Pending Appeal (RE: related document(s)36 Stipulation filed by Plaintiff Highland Capital Management, L.P.). Entered on 10/1/2025 (Okafor, M.)) No. of Notices: 1. Notice Date 10/04/2025. (Admin.) |
| Vol 4 000742 | 10/06/2025 | 44 | (29 pgs) Objection to (related document(s): 33 Motion to stay pending appeal (related documents 23 Order on motion to dismiss adversary proceeding, Order on motion for leave) filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty) filed by Plaintiff Highland Capital Management, L.P.. (Annable, Zachery) |
| 000771 | 10/09/2025 | 45 | (3 pgs) Notice of Appearance and Request for Notice by Jeffrey Nathan Pomerantz filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Pomerantz, Jeffrey) |
| 000774 | 10/09/2025 | 46 | (3 pgs) Notice of Appearance and Request for Notice by John A Morris filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Morris, John) |
| 000777 | 10/09/2025 | 47 | (3 pgs) Notice of Appearance and Request for Notice by Hayley R Winograd filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Winograd, Hayley) |
| 000780 | 10/09/2025 | 48 | (3 pgs) Notice of Appearance and Request for Notice by Gregory V. Demo filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Demo, Gregory) |
| 000783 | 10/13/2025 | 49 | (9 pgs) Reply in support filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)33 Motion to stay pending appeal (related |



4926-7565-0252

| | | |
|---|---|---|
| 1014 | | documents 23 Order on motion to dismiss adversary proceeding, Order on motion for leave)). (York, Andrew) Modified text to match pdf on 10/15/2025 (mdo). |
| 10/21/2025 000792 | 50 | (1 pg) Clerk's correspondence requesting File an amended designation from attorney for Appellant. (RE: related document(s)41 Appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Defendant Patrick Hagaman Daugherty. Appellee designation due by 10/17/2025.) Responses due by 10/24/2025. (Blanco, J.) |
| 10/22/2025 000793 | 51 | (6 pgs) Amended appellant designation of contents for inclusion in record on appeal and statement of issues on appeal. filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)41 Appellant designation). (York, Andrew) |
| 10/22/2025 000799 | 53 | (1 pg) Transmittal of record on appeal to U.S. District Court . Complete record on appeal. Transmitted: Volume 1, Mini Record. Number of appellant volumes: 1 . Civil Case Number: 3:25-cv-02584-E (RE: related document(s)25 Notice of appeal filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave) filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty) (Almaraz, Jeanette) |
| 10/22/2025 000800 | 54 | (1 pg) Notice of docketing COMPLETE record on appeal. Civil Case Number: 3:25-cv-02584-E(RE: related document(s)25 Notice of appeal filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)23 Order on motion to dismiss adversary proceeding, Order on motion for leave). (Almaraz, Jeanette) |
| 10/22/2025 000801 | 55 | (3 pgs) Certificate of service re: Stipulated Scheduling Order Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)31 Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)3 Standing scheduling order in an adversary proceeding, 7 Order (generic)). filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 10/24/2025 000804 | 56 | (8 pgs) Answer to counterclaim *(Highland Capital Management, L.P.'s Answer to Patrick Daugherty's Original Counterclaim)* filed by Highland Capital Management, L.P.. (Annable, Zachery) |
| 11/21/2025 000812 | 57 | (7 pgs) DISTRICT COURT Stipulation concerning supplement to record on appeal re: 3:25-cv-02584-E (RE: related document(s)51 Amended appellant designation of contents for inclusion in record on appeal and statement of |

| | | | |
|---|---|---|---|
| Vol 4 | | | issues on appeal. filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)41 Appellant designation). filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty) (Almaraz, Jeanette) (Entered: 11/24/2025) |
| | 12/18/2025 | 58 | ELECTRONIC ORDER: I, the presiding judge, will recuse myself in this adversary proceeding No. 25-03055, effective immediately. The Bankruptcy Clerk of Court will re-assign this adversary proceeding to a different bankruptcy judge in this district in accordance with his normal protocols. Ordered by Bankruptcy Judge Stacey G.C. Jernigan on 12/18/2025. (Almaraz, Jeanette) |
| | 12/19/2025 | | Judge Brad W Odell assigned. Involvement of Judge Stacey G Jernigan terminated (Okafor, M.) |
| 000819 | 12/19/2025 | 59 | (11 pgs) Subpoena on Hunton Andrews Kurth LLP filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 000830 | 12/24/2025 | 60 | (14 pgs; 2 docs) Motion to compel re: discovery Production of Audio Recordings, Transcripts, and Related Documents *(Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) (Annable, Zachery) |
| 000844 | 12/24/2025 | 61 | (156 pgs; 7 docs) Declaration re: *(Declaration of Hayley R. Winograd in Support of Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)60 Motion to compel re: discovery Production of Audio Recordings, Transcripts, and Related Documents *(Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3--Part 1 # 4 Exhibit 3--Part 2 # 5 Exhibit 4 # 6 Exhibit 5) (Annable, Zachery) |
| Vol 5 001000 | 12/29/2025 | 62 | (3 pgs) Notice of hearing *(Notice of Hearing on Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)60 Motion to compel re: discovery filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Hearing to be held on 1/14/2026 at 03:30 PM via WebEx for 60, (Annable, Zachery)Modified on 12/29/2025 (sdw). |



4926-7565-0252

Vol 5

| | | | |
|---|---|---|---|
| 001003 | 12/29/2025 | 63 | (3 pgs) Notice of hearing filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (RE: related document(s)33 Motion to stay pending appeal filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty). Hearing to be held on 1/14/2026 at 03:30 PM via WebEx for 33, (Burley, Jeffrey)Modified on 12/30/2025 (sdw). |
| 001006 | 12/30/2025 | 64 | (19 pgs) Stipulation by Patrick Hagaman Daugherty, Patrick Hagaman Daugherty and. filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (RE: related document(s)37 Order to set hearing). (York, Andrew) |
| 001025 | 12/30/2025 | 65 | (3 pgs) Notice to take deposition of Patrick Hagaman Daugherty filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 001028 | 12/30/2025 | 66 | (14 pgs) Stipulation by Patrick Hagaman Daugherty, Patrick Hagaman Daugherty and. filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (RE: related document(s)37 Order to set hearing). (York, Andrew) |
| 001042 | 12/31/2025 | 67 | (14 pgs) Agreed Protective Order (RE: related document(s)66 Stipulation filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty). Entered on 12/31/2025 (Okafor, M.) |
| 001056 | 01/02/2026 | 68 | (16 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)67 Agreed Protective Order (RE: related document(s)66 Stipulation filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty). Entered on 12/31/2025 (Okafor, M.)) No. of Notices: 0. Notice Date 01/02/2026. (Admin.) |
| 001072 | 01/05/2026 | 69 | (12 pgs) Response opposed to (related document(s): 60 Motion to compel re: discovery Production of Audio Recordings, Transcripts, and Related Documents *(Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.) filed by Defendant Patrick Hagaman Daugherty. (York, Andrew) |
| 001084 | 01/05/2026 | 70 | (10 pgs; 2 docs) Declaration re: filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)69 Response). (Attachments: # 1 Exhibit 1) (York, Andrew) |
| 001094 | 01/08/2026 | 71 | (10 pgs) Reply to (related document(s): 69 Response filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty) *(Highland Capital Management, L.P.'s Reply in Support of Motion* |



4926-7565-0252

VOL 5

| | | |
|---|---|---|
| | | *to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 01/12/2026 001104 | 72 | (4 pgs) Certificate of service re: *Documents Served on or After December 19, 2025* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)59 Subpoena on Hunton Andrews Kurth LLP filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 60 Motion to compel re: discovery Production of Audio Recordings, Transcripts, and Related Documents *(Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (Attachments: # 1 Proposed Order) filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 61 Declaration re: *(Declaration of Hayley R. Winograd in Support of Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)60 Motion to compel re: discovery Production of Audio Recordings, Transcripts, and Related Documents *(Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)*). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3--Part 1 # 4 Exhibit 3--Part 2 # 5 Exhibit 4 # 6 Exhibit 5) filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 62 Notice of hearing *(Notice of Hearing on Highland Capital Management, L.P.'s Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)60 Motion to compel re: discovery filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Hearing to be held on 1/14/2026 at 03:30 PM via WebEx for 60, (Annable, Zachery)Modified on 12/29/2025 (sdw). filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 65 Notice to take deposition of Patrick Hagaman Daugherty filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 71 Reply to (related document(s): 69 Response filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty) *(Highland Capital Management, L.P.'s Reply in Support of Motion to Compel Production of Audio Recordings, Transcripts, and Related Documents)* filed by Plaintiff |



4926-7565-0252

| | | | |
|---|---|---|---|
| Vol 5 | | | Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 001108 | 01/12/2026 | 73 | (3 pgs) Certificate of service re: *Highland Capital Management, L.P.s Answer to Patrick Daughertys Original Counterclaim* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)56 Answer to counterclaim *(Highland Capital Management, L.P.'s Answer to Patrick Daugherty's Original Counterclaim)* filed by Highland Capital Management, L.P.. filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 001111 | 01/15/2026 | 74 | (2 pgs) Order granting Highland's motion to compel production of audio recordings, transcripts, and related documents (related document # 60) Entered on 1/15/2026. (Hyden, Kara) |
| 001113 | 01/17/2026 | 76 | (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)74 Order granting Highland's motion to compel production of audio recordings, transcripts, and related documents (related document 60) Entered on 1/15/2026.) No. of Notices: 0. Notice Date 01/17/2026. (Admin.) |
| 001117 | 01/23/2026 | 77 | (16 pgs) Agreed Protective Order Concerning Subpoena to Third-Party Hunton Andrews Kurth LLP(RE: related document(s)59 Subpoena filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Entered on 1/23/2026 (Ecker, C.) |
| 001133 | 01/25/2026 | 78 | (18 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)77 Agreed Protective Order Concerning Subpoena to Third-Party Hunton Andrews Kurth LLP(RE: related document(s)59 Subpoena filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Entered on 1/23/2026 (Ecker, C.)) No. of Notices: 0. Notice Date 01/25/2026. (Admin.) |
| 001151 | 01/26/2026 | 79 | (13 pgs) Memorandum of opinion (RE: related document(s)33 Motion to stay pending appeal filed by Counter-Claimant Patrick Hagaman Daugherty, Defendant Patrick Hagaman Daugherty). Entered on 1/26/2026 (Hyden, Kara) |
| 001164 | 01/26/2026 | 80 | (13 pgs) Order denying motion to stay pending appeal (related document # 33) Entered on 1/26/2026. (Hyden, Kara) |
| 001177 | 01/28/2026 | 81 | (15 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)79 Memorandum of opinion (RE: related document(s)33 Motion to stay pending appeal filed by Counter-Claimant Patrick Hagaman |



4926-7565-0252

| | | |
|---|---|---|
| Vol 5 | | Daugherty, Defendant Patrick Hagaman Daugherty). Entered on 1/26/2026) No. of Notices: 0. Notice Date 01/28/2026. (Admin.) |
| 01/28/2026 001192 | 82 | (15 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)80 Order denying motion to stay pending appeal (related document 33) Entered on 1/26/2026.) No. of Notices: 0. Notice Date 01/28/2026. (Admin.) |
| 02/09/2026 001207 | 84 | (4 pgs) Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)59 Subpoena). (Annable, Zachery) |
| 02/09/2026 001211 | 85 | (7 pgs) Order Approving Stipulation as to the Authenticity of Documents Produced by Hunton Andrews & Kurth LLP (RE: related document(s)59 Subpoena filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 84 Stipulation filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Entered on 2/9/2026 (Okafor, M.) |
| 02/11/2026 001218 | 86 | (9 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)85 Order Approving Stipulation as to the Authenticity of Documents Produced by Hunton Andrews & Kurth LLP (RE: related document(s)59 Subpoena filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P., 84 Stipulation filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Entered on 2/9/2026 (Okafor, M.)) No. of Notices: 0. Notice Date 02/11/2026. (Admin.) |
| 02/25/2026 00122? | 87 | (3 pgs) Notice to take deposition of T.J. Liles-Tims filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P.. (Annable, Zachery) |
| 02/27/2026 001230 | 88 | (2 pgs) Order Resetting Trial Date (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Trial date set for 4/17/2026 at 09:00 AM at Dallas Judge Jernigan Ctrm. Entered on 2/27/2026 (Okafor, M.) |
| 03/01/2026 001232 | 89 | (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)88 Order Resetting Trial Date (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Trial date set for 4/17/2026 at 09:00 AM at Dallas Judge Jernigan Ctrm. Entered on 2/27/2026 (Okafor, M.)) No. of Notices: 2. Notice Date 03/01/2026. (Admin.) |



4926-7565-0252

VOTS

| | | |
|---|---|---|
| 03/10/2026 001236 | 91 | (3 pgs) Certificate of service re: *Stipulation as to the Authenticity of Documents Produced by Hunton Andrews & Kurth LLP* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)84 Stipulation by Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)59 Subpoena). filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 03/17/2026 001239 | 93 | (5 pgs) Stipulation by Highland Capital Management, L.P., Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)37 Order to set hearing, 88 Order to set hearing). (Annable, Zachery) |
| 03/19/2026 001244 | 94 | (8 pgs) Order Approving Second Stipulated Scheduling Order (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Hearing to be held on 4/17/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 1, Entered on 3/19/2026 (Okafor, M.) MODIFIED to correct hearing location on 3/20/2026 (mdo). |
| 03/20/2026 001252 | 95 | (3 pgs) Certificate of service re: *[Proposed] Second Stipulated Scheduling Order* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)93 Stipulation by Highland Capital Management, L.P., Highland Capital Management, L.P. and Patrick Hagaman Daugherty. filed by Plaintiff Highland Capital Management, L.P., Counter-Defendant Highland Capital Management, L.P. (RE: related document(s)37 Order to set hearing, 88 Order to set hearing). filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 03/21/2026 001255 | 96 | (10 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)94 Order Approving Second Stipulated Scheduling Order (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Hearing to be held on 4/17/2026 at 09:00 AM Dallas Judge Jernigan Ctrm for 1, Entered on 3/19/2026 (Okafor, M.) MODIFIED to correct hearing location on 3/20/2026 (mdo).) No. of Notices: 1. Notice Date 03/21/2026. (Admin.) |
| 04/02/2026 001265 | 97 | (8 pgs) Witness and Exhibit List *(Highland Capital Management, L.P.'s Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)1 Complaint). (Annable, Zachery) |



4926-7565-0252

| | | | |
|---|---|---|---|
| Vol. 5 001273 | 04/02/2026 | 98 | (8 pgs) Witness and Exhibit List filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)1 Complaint). (York, Andrew) |
| 001281 | 04/08/2026 | 99 | (9 pgs) Objection to (related document(s): 97 List (witness/exhibit/generic) filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.) filed by Defendant Patrick Hagaman Daugherty. (York, Andrew) |
| 001290 | 04/10/2026 | 100 | (28 pgs) Proposed pre-trial order filed by Plaintiff Highland Capital Management, L.P.. (Annable, Zachery) |
| 001318 | 04/13/2026 | 101 | (28 pgs) Joint Pre-Trial order (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). Entered on 4/13/2026 (Hyden, Kara) |
| 001346 | 04/13/2026 | 102 | (21 pgs) Brief in support filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)94 Order to set hearing). (York, Andrew) |
| 001367 | 04/14/2026 | 103 | (8 pgs) Amended Witness and Exhibit List filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)98 List (witness/exhibit/generic)). (York, Andrew) |
| 001375 | 04/14/2026 | 104 | (8 pgs) Amended Witness and Exhibit List *(Highland Capital Management, L.P.'s Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)97 List (witness/exhibit/generic)). (Annable, Zachery) |
| 001383 | 04/15/2026 | 105 | (1782 pgs; 95 docs) Amended Witness and Exhibit List *2nd* filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (RE: related document(s)103 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit PD-01 # 2 Exhibit PD-02 # 3 Exhibit PD-03 # 4 Exhibit PD-04 # 5 Exhibit PD-05 # 6 Exhibit PD-06 # 7 Exhibit PD-07 # 8 List of 20 Largest Creditors PD-08 # 9 Exhibit PD-09 # 10 Exhibit PD-10 # 11 Exhibit PD-11 # 12 Exhibit PD-12 # 13 Exhibit PD-13 # 14 Exhibit PD-14 # 15 Exhibit PD-16 # 16 Exhibit PD-16 # 17 List of 20 Largest Creditors PD-17 # 18 Exhibit PD-18 # 19 Exhibit PD-19 # 20 Exhibit PD-20 # 21 Exhibit PD-21 # 22 Exhibit PD-22 # 23 Exhibit PD-23 # 24 Exhibit PD-24 # 25 Exhibit PD-25 # 26 Exhibit PD-26 # 27 Exhibit PD-27 # 28 Exhibit PD-28 # 29 Exhibit PD-29 # 30 Exhibit PD-30 # 31 Exhibit PD-31 # 32 Exhibit PD-32 # 33 Exhibit PD-33 # 34 Exhibit PD-34 # 35 Exhibit PD-35 # 36 Exhibit PD-36 # 37 Exhibit PD-37 # 38 List of 20 Largest Creditors PD-38 # 39 List of 20 Largest Creditors PD-39 # 40 Exhibit PD-40 # 41 List of 20 Largest Creditors PD-41 # 42 Exhibit PD-42 # 43 Exhibit PD-43 # 44 Exhibit PD-44 # 45 Exhibit PD-45 # 46 Exhibit PD-46 # 47 Exhibit PD-47 # 48 Exhibit PD-48 # 49 Exhibit PD-49 # 50 Exhibit PD-50 # 51 Exhibit PD-51 # 52 Exhibit PD-52 # 53 Exhibit PD-53 # 54 Exhibit PD-54 |

| | | |
|---|---|---|
| Vol 5 001383 | | # 55 Exhibit PD-55 # 56 Exhibit PD-56 # 57 Exhibit PD-57 # 58 Exhibit PD-58 # 59 Exhibit PD-59 # 60 Exhibit PD-60 # 61 Exhibit PD-61 # 62 Exhibit PD-62 # 63 Exhibit PD-63 # 64 Exhibit PD-64 # 65 Exhibit PD-65 # 66 Exhibit PD-66 # 67 Exhibit PD-67 # 68 Exhibit PD-68 # 69 Exhibit PD-69 # 70 Exhibit PD-70 # 71 Exhibit PD-71 # 72 Exhibit PD-72 # 73 Exhibit PD-73 # 74 Exhibit PD-74 # 75 Exhibit PD-75 # 76 Exhibit PD-76 # 77 Exhibit PD-77 # 78 Exhibit PD-78 # 79 Exhibit PD-79 # 80 Exhibit PD-80 # 81 Exhibit PD-81 # 82 Exhibit PD-82 # 83 Exhibit PD-83 # 84 Exhibit PD-84 # 85 Exhibit PD-85 # 86 Exhibit PD-86 # 87 Exhibit PD-87 # 88 Exhibit PD-88 # 89 Exhibit PD-89 # 90 Exhibit PD-90 # 91 Exhibit PD-91 # 92 Exhibit PD-92 # 93 Exhibit PD-93 # 94 Exhibit PD-94) (York, Andrew) |
| 04/15/2026 001385 | 106 | (11 pgs) Joint Motion to file document under seal. *Exhibits* filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (York, Andrew) |
| Vol. 6 04/15/2026 001396 Thru Vol 7 | 107 | (696 pgs; 66 docs) Amended Witness and Exhibit List *(Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)97 List (witness/exhibit/generic), 104 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit 1 # 2 Exhibit 2 # 3 Exhibit 3 # 4 Exhibit 4 # 5 Exhibit 5 # 6 Exhibit 6 # 7 Exhibit 7 # 8 Exhibit 8 # 9 Exhibit 9 # 10 Exhibit 10 # 11 Exhibit 11 # 12 Exhibit 12 # 13 Exhibit 13 # 14 Exhibit 14 # 15 Exhibit 15 # 16 Exhibit 16 # 17 Exhibit 17 # 18 Exhibit 18 # 19 Exhibit 19 # 20 Exhibit 20 # 21 Exhibit 21 # 22 Exhibit 22 # 23 Exhibit 23 # 24 Exhibit 24 # 25 Exhibit 25 # 26 Exhibit 26 # 27 Exhibit 27 # 28 Exhibit 28 # 29 Exhibit 29 # 30 Exhibit 30 # 31 Exhibit 31 # 32 Exhibit 32 # 33 Exhibit 33 # 34 Exhibit 34 # 35 Exhibit 35 # 36 Exhibit 36 # 37 Exhibit 37 # 38 Exhibit 38 # 39 Exhibit 39 # 40 Exhibit 40 # 41 Exhibit 41 # 42 Exhibit 42 # 43 Exhibit 43 # 44 Exhibit 44 # 45 Exhibit 45 # 46 Exhibit 46 # 47 Exhibit 47 # 48 Exhibit 48 # 49 Exhibit 49 # 50 Exhibit 50 # 51 Exhibit 51 # 52 Exhibit 52 # 53 Exhibit 53 # 54 Exhibit 54 # 55 Exhibit 55 # 56 Exhibit 56 # 57 Exhibit 57 # 58 Exhibit 58 # 59 Exhibit 59 # 60 Exhibit 60 # 61 Exhibit 61 # 62 Exhibit 62 # 63 Exhibit 63 # 64 Exhibit 64 # 65 Exhibit 65) (Annable, Zachery) |
| Vol 7 04/15/2026 002092 | 108 | (5 pgs) Order granting Plaintiff Highland Capital Management, L.P.'s and Defendant Patrick Hagman Daugherty's motion to seal certain exhibits (related document # 106) Entered on 4/15/2026. (Okafor, M.) |
| 04/15/2026 002097 | 109 | SEALED document regarding: Exhibit 14 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital |

| | | |
|---|---|---|
| Vol 7 | | Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 110 | SEALED document regarding: Exhibit 21 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 111 | SEALED document regarding: Exhibit 22 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 112 | SEALED document regarding: Exhibit 23 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 113 | SEALED document regarding: Exhibit 24 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 114 | SEALED document regarding: Exhibit 25 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 115 | SEALED document regarding: Exhibit 26 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 04/15/2026 002097 | 116 | SEALED document regarding: Exhibit 27 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |

| | | | |
|---|---|---|---|
| 101.7 002097 | 04/15/2026 | 117 | SEALED document regarding: Exhibit 28 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 118 | SEALED document regarding: Exhibit 35 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 119 | SEALED document regarding: Exhibit 36 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 120 | SEALED document regarding: Exhibit 37 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 121 | SEALED document regarding: Exhibit 57 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 122 | SEALED document regarding: Exhibit 61 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002097 | 04/15/2026 | 123 | SEALED document regarding: Exhibit 62 of Highland Capital Management, L.P.'s Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026 per court order filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)108 Order on motion to seal). (Annable, Zachery) |
| 002098 | 04/15/2026 | 124 | (30 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)101 Joint Pre-Trial order (RE: related document(s)1 Complaint filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff |

| | | |
|---|---|---|
| | | Highland Capital Management, L.P.). Entered on 4/13/2026) No. of Notices: 0. Notice Date 04/15/2026. (Admin.) |
| Vol 8<br>04/16/2026<br>002128 | 126 | (64 pgs; 5 docs) Support/supplemental document *Supplemental 2nd Amended Witness and Exhibit List* filed by Defendant Patrick Hagaman Daugherty, Counter-Claimant Patrick Hagaman Daugherty (RE: related document(s)105 List (witness/exhibit/generic)). (Attachments: # 1 Exhibit PD-95 # 2 Exhibit PD-96 # 3 Exhibit PD-97 # 4 Exhibit PD-98) (York, Andrew) |
| 04/16/2026<br>002192 | 127 | (3 pgs) Certificate of service re: *[Proposed] Joint Pretrial Order* Filed by Claims Agent Kurtzman Carson Consultants, LLC d/b/a Verita Global (related document(s)100 Proposed pre-trial order filed by Plaintiff Highland Capital Management, L.P.. filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.). (Kass, Albert) |
| 04/17/2026<br>002195 | 128 | (15 pgs; 2 docs) Witness and Exhibit List *(Highland Capital Management, L.P.'s First Supplement to Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)1 Complaint). (Attachments: # 1 Exhibit 66) (Annable, Zachery) |
| 04/17/2026<br>002210 | 129 | (7 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)108 Order granting Plaintiff Highland Capital Management, L.P.'s and Defendant Patrick Hagman Daugherty's motion to seal certain exhibits (related document 106) Entered on 4/15/2026. (Okafor, M.)) No. of Notices: 0. Notice Date 04/17/2026. (Admin.) |
| 04/20/2026<br>002217 | 130 | (9 pgs; 2 docs) Witness and Exhibit List *(Highland Capital Management, L.P.'s Second Supplement to Second Amended Witness and Exhibit List with Respect to Trial to Be Held on April 17, 2026)* filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)1 Complaint). (Attachments: # 1 Exhibit 67) (Annable, Zachery) |
| 04/21/2026<br>002226 | 132 | (1 pg) Court admitted exhibits date of hearing 4/17/2026 (RE: related document(s)1 Adversary case 25-03055. Complaint by Highland Capital Management, L.P. against Patrick Hagaman Daugherty. Fee Amount $350 (Attachments: # 1 Exhibit A # 2 Adversary Proceeding Cover Sheet). Nature(s) of suit: 81 (Subordination of claim or interest). filed by Counter-Defendant Highland Capital Management, L.P., Plaintiff Highland Capital Management, L.P.) (Noble, Nicholas) |
| 05/13/2026<br>002227 | 133 | (1 pg) Request for Transcript regarding a hearing held on 4/17/2026. The requested turn-around time is hourly. filed by Plaintiff Highland Capital Management, L.P.. (Hayward, Melissa) |



4926-7565-0252

| | | | |
|---|---|---|---|
| Vol. 8 002228 | 05/18/2026 | 135 | (327 pgs) Transcript regarding Hearing Held 4/17/26 RE: 1 Adversary case 25-03055. Complaint by Highland Capital Management, L.P. against Patrick Hagaman Daugherty.. THIS TRANSCRIPT WILL BE MADE ELECTRONICALLY AVAILABLE TO THE GENERAL PUBLIC 90 DAYS AFTER THE DATE OF FILING. TRANSCRIPT RELEASE DATE IS 08/17/2026. Until that time the transcript may be viewed at the Clerk's Office or a copy may be obtained from the official court transcriber. Court Reporter/Transcriber Cindy Sumner, Telephone number 2148027196. (RE: related document(s) 131 Hearing held on 4/17/2026. **Matter taken under advisement; each side to file proposed Findings of Fact and Conclusions of Law no later than June 5, 2026.** (RE: related document(s)1 Adversary case 25-03055. Complaint by Highland Capital Management, L.P. against Patrick Hagaman Daugherty. Fee Amount $350 (Attachments: # 1 Exhibit A # 2 Adversary Proceeding Cover Sheet). Nature(s) of suit: 81 (Subordination of claim or interest).)). Transcript to be made available to the public on 08/17/2026. (Sumner, Cindy) |
| Vol. 9 002555 | 06/05/2026 | 136 | (47 pgs) Proposed findings of fact and conclusions of law filed by Plaintiff Highland Capital Management, L.P. (RE: related document(s)1 Complaint). (Annable, Zachery) |
| 002602 | 06/05/2026 | 137 | (19 pgs) Proposed findings of fact and conclusions of law filed by Defendant Patrick Hagaman Daugherty (RE: related document(s) 131 Hearing held). (York, Andrew) |
| 002621 | 07/24/2026 | 138 | (2 pgs) Judgment. Entered on 7/24/2026 (Grandstaff, Travis) |
| 002623 | 07/24/2026 | 139 | (25 pgs) Memorandum of opinion (RE: related document(s)138 Judgment). Entered on 7/24/2026 (Grandstaff, Travis) |
| 002648 | 07/26/2026 | 140 | (4 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)138 Judgment. Entered on 7/24/2026) No. of Notices: 0. Notice Date 07/26/2026. (Admin.) |
| 002652 | 07/26/2026 | 141 | (27 pgs) BNC certificate of mailing - PDF document. (RE: related document(s)139 Memorandum of opinion (RE: related document(s)138 Judgment). Entered on 7/24/2026) No. of Notices: 0. Notice Date 07/26/2026. (Admin.) |
| 002679 | 08/07/2026 | 142 | (7 pgs; 2 docs) Notice of appeal . Fee Amount $298 filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)138 Judgment). Appellant Designation due by 08/21/2026. (Attachments: # 1 Exhibit A)(York, Andrew) |
| 002686 | 08/11/2026 | 144 | (9 pgs; 3 docs) Certificate of mailing regarding appeal (RE: related document(s)142 Notice of appeal . filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)138 Judgment). Appellant Designation |



4926-7565-0252

| | | |
|---|---|---|
| | | due by 08/21/2026. (Attachments: # 1 Exhibit A)) (Attachments: # 1 Service List) (Whitaker, Sheniqua) |
| 08/11/2026 002695 | 145 | (2 pgs) Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)142 Notice of appeal . filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)138 Judgment). Appellant Designation due by 08/21/2026. (Attachments: # 1 Exhibit A)) (Whitaker, Sheniqua) |
| 08/11/2026 002697 | 146 | (4 pgs) DISTRICT COURT Notice of docketing notice of appeal. Civil Action Number: 3:26-cv-02664-S. (RE: related document(s)142 Notice of appeal . Fee Amount $298 filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)138 Judgment). Appellant Designation due by 08/21/2026. (Attachments: # 1 Exhibit A)) (Whitaker, Sheniqua) |
| 08/13/2026 002701 | 147 | (4 pgs) BNC certificate of mailing. (RE: related document(s)145 Notice regarding the record for a bankruptcy appeal to the U.S. District Court. (RE: related document(s)142 Notice of appeal . filed by Defendant Patrick Hagaman Daugherty (RE: related document(s)138 Judgment). Appellant Designation due by 08/21/2026. (Attachments: # 1 Exhibit A))) No. of Notices: 0. Notice Date 08/13/2026. (Admin.) |

**Reservation of Rights**

Daugherty expressly reserves the right to amend or supplement this designation and/or to object, or otherwise supplement or move to strike or modify, some or all of any designations filed by any other party to this appeal. This filing is made expressly subject to, and without waiver of, any and all rights, remedies, challenges and objections.



4926-7565-0252

Respectfully submitted this 2nd day of September, 2026,

GRAY REED

By: */s/ Andrew K. York*
Jason S. Brookner
Texas Bar No. 240033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507

1845 Woodall Rodgers Fwy., Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 2nd day of September 2026, via the CM/ECF system and/or email.

*/s/ Andrew K. York*
ANDREW K. YORK

PACHULSKI STANG ZIEHL & JONES LLP
Jeffrey N. Pomerantz (CA Bar No. 143717) (*admitted pro hac vice*)
John A. Morris (NY Bar No. 2405397) (*admitted pro hac vice*)
Gregory V. Demo (NY Bar No. 5371992) (*admitted pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760

HAYWARD PLLC
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Plaintiff/Counter-Defendant*
*Highland Capital Management, L.P.*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| Plaintiff/Counter-Defendant, | § | Adv. Proc. No. 25-03055-bwo |
| v. | § | **Highland Capital Management, L.P.'s Post-Trial Proposed Findings of Fact and Conclusions of Law** |
| PATRICK HAGAMAN DAUGHERTY, | § | |
| Defendant/Counter-Plaintiff. | § | |

[1] Highland's last four digits of its taxpayer identification number are (8357). The service address for Highland is 6333 E. Mockingbird Ln., Ste 147 #5045, Dallas, TX, 75214.

**TABLE OF CONTENTS**

**Page**

I. NATURE OF ACTION AND PROCEDURAL POSTURE ....... 1

II. STIPULATED FACTS ....... 3

III. FACTS ADDUCED AT TRIAL ....... 5

A. Daugherty's Employment, Partnership, and 2008 Comp Statement ....... 5

B. Daugherty's 2008 Tax Return and Receipt of Refund ....... 6

C. The Highland 2008 Tax Year Audit; Daugherty Resigns from Highland; Daugherty Sues for Breach of Employment Agreement ....... 7

D. Daugherty's Employment Agreement and Failure to Sign Separation Agreement ....... 10

E. The Claimant Trust, Claim 205, the Settlement Agreement, and the Objection to Reserved Claim ....... 12

F. Evidence at Trial Concerning Estimation of the Reserved Claim ....... 13

G. Highland's Performance Under the Books and Records Provision in the Settlement Agreement ....... 21

IV. DETERMINATION OF CONTESTED ISSUES OF FACT AND LAW ....... 24

A. The Party with the Ultimate Burden of Proof on Each Cause of Action and Defining Those Burdens ....... 24

B. The Compensation Statement Is Not a Binding and Enforceable Contract (Mixed Question of Law and Fact) ....... 24

C. If Highland Had Obligations Under the Compensation Statement, They Were Fulfilled ....... 29

D. Daugherty's Reserved Claim Should Be Disallowed (Mixed Question of Law and Fact) ....... 33

E. If the Compensation Statement Is an Enforceable Contract, and Highland Has Not Fulfilled Its Obligations Thereunder, Daugherty's Reserved Claim Can Be Estimated in Accordance with Section 502(c) of the Bankruptcy Code (Mixed Question of Law and Fact) ....... 33

F. Failure to Estimate Daugherty's Reserved Claim Before August 11, 2026 Would Unduly Delay the Administration of Highland's Bankruptcy Case ....... 34

G. If Daugherty's Reserved Claim Can Be Estimated, How Much Is the Reserved Claim Estimated to Be for Purposes of Allowance? ....... 35

H. Whether Daugherty's Breach of Contract Counterclaim Is Barred by the Statute of Limitations? ....... 37

I. Highland Fulfilled Its Obligations Under the Books and Records Provision (Mixed Question of Law and Fact) ....... 37

J. Daugherty Withdrew His Claim for Attorneys' Fees ....... 43

V. CONCLUSION ....... 43

**HIGHLAND CAPITAL MANAGEMENT, L.P.'S POST-TRIAL**
**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Highland Capital Management, L.P. ("Highland" or "HCMLP") submits its *Post-Trial Proposed Findings of Fact and Conclusions of Law* pursuant to the Court's direction provided at the conclusion of the trial (the "Trial") of this adversary proceeding (the "Adversary Proceeding") on April 17, 2026.

## I. NATURE OF ACTION AND PROCEDURAL POSTURE

1. This action concerns Daugherty's contingent, unliquidated claim against Highland arising from the audit of Highland's 2008 tax return (the "Reserved Claim") and Highland's claims against Daugherty seeking to disallow and estimate his Reserved Claim.[2] This action also concerns Daugherty's Counterclaims (defined below). JPO ¶ 1.[3]

2. On October 16, 2019, Highland filed its petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") commencing the above-captioned bankruptcy case (the "Bankruptcy Case" or the "Case"). Thereafter, Daugherty filed several proofs of claim in the Bankruptcy Case. Those claims culminated in Daugherty's claim filed December 23, 2020 appearing as claim no. 205 on the claims register in the Highland Bankruptcy Case ("Claim 205"), which superseded and replaced all Daugherty's prior claims. JPO ¶ 2.

3. In November 2021, Daugherty and Highland entered into that certain *Settlement Agreement* (the "Settlement Agreement"), which resolved all aspects of Daugherty's claims against Highland's estate except for the Reserved Claim. On March 8, 2022, the Court entered an order approving the Settlement Agreement [Bankr. Docket No. 3299] (the "Settlement Order").

---

[2] Highland has withdrawn its claim for subordination under 11 U.S.C. § 510(b).

[3] "JPO" refers to the Joint Pretrial Order entered on April 13, 2026 at Docket No. 101.

The Settlement Agreement provided, among other things, that Highland would transfer to Daugherty its "interests in HERA and ERA,"[4] and that such transfer will include "the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system . . . [and] be without representation or warranty of any type … and without any liability or material cost to HCMLP or its affiliates ...." Highland Ex. 5 ¶ 8 (the "Books and Records Provision"). The Settlement Agreement further provided that Highland expressly "reserve[d] the right to assert any and all defenses" to the Reserved Claim. *Id.* ¶ 9; JPO ¶ 3.

4. On May 2, 2025, Highland commenced the Adversary Proceeding by filing its *Complaint for (1) Disallowance of Claim No. 205 in Its Entirety, (2) Estimation of Claim No. 205 for Allowance Purposes, or (3) Subordination of Any Allowed Portion of Claim No. 205 of Patrick Hagaman Daugherty* [Docket No. 1] (the "Complaint"). In its Complaint, Highland asserted three claims: (a) disallowance of the Reserved Claim, (b) estimation of the Reserved Claim pursuant to 11 U.S.C. 502(c), and (c) subordination of the Reserved Claim under 11 U.S.C. § 510(b), (excluding the claim for subordination which has been withdrawn with prejudice, "Highland's Claims"). JPO ¶ 4.

5. On June 5, 2025, Daugherty filed a motion to dismiss the Complaint [Docket No. 5] (the "Motion to Dismiss"). On July 18, 2025, Highland filed *Highland Capital Management, L.P.'s (A) Objection to Patrick Daugherty's Motion to Dismiss and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* [Docket No. 10] (the "Cross Motion"). At the hearing on Daugherty's Motion to Dismiss and Highland's Cross Motion, the Court denied the Motion to Dismiss and granted the Cross Motion. The Court's ruling struck a particular

[4] "HERA" refers to "Highland Employee Retention Assets LLC" and "ERA" refers to "Highland ERA Management, LLC."

provision of the Settlement Agreement that Daugherty contends prohibited Highland from filing this Adversary Proceeding.[5] JPO ¶ 5.

6. On October 3, 2025, Daugherty filed his *Answer* and *Original Counterclaim* [Docket No. 39] asserting three causes of action against Highland for (a) breach of contract for breach of the Books and Records Provision; (b) specific performance through which Daugherty seeks an order requiring Highland to turn over all of the HERA and ERA books and records in compliance with the Books and Records Provision; and (c) attorneys' fees arising from Highland's alleged bad faith conduct in commencing the Adversary Proceeding (collectively, the "Counterclaims"). On October 24, 2025, Highland filed its answer to the Counterclaims (which included its affirmative defenses) [Docket No. 56]. JPO ¶ 6.

7. The Court conducted the Trial on Highland's Claims and Daugherty's Counterclaims on April 17, 2026 in which it admitted certain documents into evidence (subject to certain limitations stated on the record) [Docket No. 132] and heard testimony from James P. Seery, Jr. (Highland's Chief Executive Officer), David Klos (Highland's Chief Financial Officer), Patrick Daugherty (the Claimant and defendant in this Adversary Proceeding), and Trevor Jason Liles-Tims (an individual who proffered expert testimony on Daugherty's behalf).

## II. STIPULATED FACTS

8. From 1998-2011, Daugherty was employed by Highland. JPO ¶ 8.

9. Daugherty and Highland entered into that certain Amended Employment Agreement dated as of December 31, 2004 (the "Employment Agreement"). Highland Ex. 11; JPO ¶ 9.

[5] Daugherty appealed to the District Court from this Court's order granting the Cross Motion. That appeal is still pending. In the JPO, Daugherty agreed that he would not relitigate those issues during the April 17 Trial. *See* JPO at 3 n.5.

10. On or about February 27, 2009, Highland issued to Daugherty a Comprehensive Compensation and Benefits Statement (the "Comprehensive Statement"). Highland Ex. 13; Daugherty 14; JPO ¶ 10.

11. In 2009, based on a draft Schedule K-1 that Highland provided to him, Daugherty filed his 2008 federal income tax return. JPO ¶ 11.

12. In 2009, Daugherty received refunds from the IRS of previously paid taxes in the amounts of $493,629 and $780,301 related to his 2008 Individual Income Tax Return (Form 1040) and his 2008 Application for Tentative Refund (Form 1045), respectively. These forms incorporated Highland's losses that had been allocated to him as provided for in the draft Schedule K-1. JPO ¶ 12.

13. On March 3, 2010, the IRS notified Highland that it was initiating an audit of Highland's 2008 federal income tax returns. JPO ¶ 13.

14. On September 28, 2011, Daugherty gave voluntarily notice of resignation from all positions at Highland. Highland Ex. 12; JPO ¶ 14. His last day as an employee at Highland was October 31, 2011. JPO ¶ 14.

15. On October 16, 2019, Highland filed its petition for relief under chapter 11 of the Bankruptcy Code. JPO ¶ 15.

16. On February 22, 2021, the Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief* [Bankr. Docket No. 1943] (the "Confirmation Order") with respect to the Plan.[6] JPO ¶ 16.

[6] The "Plan" refers to the *Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified)* filed on the main docket at Docket No. 1808. The Confirmation Order was subsequently modified for reasons irrelevant to the Motion. *See* Bankr. Docket No. 4378.

17. The Plan included a form of *Claimant Trust Agreement* (the "CTA"). Bankr. Docket No. 1811, Exhibit R (preamble); JPO ¶ 17.

18. The Plan created the CTA when the Plan went effective on August 11, 2021. Bankr. Docket No. 2700; JPO ¶ 18.

19. On November 22, 2021, Daugherty and Highland executed the Settlement Agreement. Highland Ex. 5; JPO ¶ 19.

20. On March 8, 2022, the Court entered the Settlement Order approving the Settlement Agreement. JPO ¶ 20.

21. On May 5, 2022, and October 19, 2022, Highland delivered certain documents and materials to Daugherty as reflected in Daugherty Exhibits 33 and 34, respectively. JPO ¶ 21.

22. The Reserved Claim remains disputed, contingent, and unliquidated. JPO ¶ 22.

## III. FACTS ADDUCED AT TRIAL

23. The following facts were established by the testimony and documentary evidence admitted at the Trial of this matter.

### A. Daugherty's Employment, Partnership, and 2008 Comp Statement

24. Daugherty was an employee and limited partner of Highland from 1998 until his resignation, noticed by letter dated September 28, 2011. Highland Ex 12; Daugherty Ex. 15; Trial Tr. at 247:11-16.

25. The unsigned Comprehensive Statement summarizes the compensation and benefits that Daugherty received for his work at Highland in 2008 and includes a statement of his prospective base salary effective March 1, 2009. Highland Ex. 13; Daugherty Ex. 14.

26. In the "Earnings and Awards" section, the Comprehensive Statement includes the following: "2008 Tax Refund $1,475,816 Refund is an estimated amount. If actual refund deviates

materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months." Highland Exhibit 13; Daugherty Ex. 14.

27. Daugherty testified that the 2008 Tax Refund was provided by Highland in place of a cash bonus, as Highland did not have the funds to pay cash bonuses directly as a result of its strained financial circumstances arising from the 2008 financial crisis. Trial Tr. at 294:24-295:20.

**B. Daugherty's 2008 Tax Return and Receipt of Refund**

28. In April 2009, based on a draft Schedule K-1 that Highland provided to him (the "Draft K-1"), Daugherty filed his 2008 federal income tax return with the IRS. JPO § 11; Daugherty Ex. 26.

29. The Draft K-1 identified Daugherty's "partner's share of loss" as 0.746998% as of December 31, 2008. *Id.*

30. Using the Draft K-1, Daugherty filed his 2008 form 1040 U.S. Individual Tax Return with the IRS attesting "under penalties of perjury I declare that I have examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct and complete" (the "2008 1040"). Highland Ex. 35; Daugherty Ex. 23.

31. Based on line 73a of the 2008 1040, Daugherty requested an IRS refund in the amount of $493,629 of 2008 tax previously paid. Highland Ex. 35 (line 73a); Daugherty Ex. 23 (line 73a).

32. In addition to the 2008 1040, Daugherty also filed a 2008 IRS Form 1045 Application for Tentative Refund (the "2008 1045") to recover taxes previously paid related to the 2006 tax year. The 2008 1045 was also delivered to the IRS by Daugherty with the attestation: "under penalty of perjury, I declare that I have examined this application and the accompanying schedules and statements and to the best of my knowledge and belief, they are true accurate, and complete." Highland Ex. 36; Daugherty Ex. 22.

33. Based on line 27 of the 2008 1045, Daugherty requested an IRS refund in the amount of $780,301 from the IRS for 2006 tax previously paid. Highland Ex. 36 (line 27); Daugherty Ex. 22 (line 27).

34. In sum, in 2009, as a result of the 2008 1040 and the 2008 1045 filings, Daugherty actually received refunds from the IRS of previously paid taxes in the amounts of $493,629 and $780,301 for a total refund of $1,273,930 (the "Refund Received") based on Daugherty's allocable partner's share of losses as identified in the Draft K-1. JPO ¶ 12.

35. Later in 2009, Highland issued its final 2008 Schedule K-1 to Daugherty identifying Daugherty's "partner's share of loss" as 0.740262% as of December 31, 2008 (the "Final K-1"). Highland Ex. 14; Daugherty Ex. 24.

36. The Final K-1 with Daugherty's 0.740262% partner's share of loss was delivered to the IRS, set Daugherty's partner's share of loss as 0.00674% less than the Draft K-1, and was later used by the IRS, rounded to 0.74030000%, in its calculation of Daugherty's percentage of Highland portfolio income in connection with the 2008 Tax Year Audit (below). Highland Ex. 17; Daugherty Ex. 28.

## C. The Highland 2008 Tax Year Audit; Daugherty Resigns from Highland; Daugherty Sues for Breach of Employment Agreement

37. On March 3, 2010, the IRS notified Highland that it was initiating an audit of Highland's 2008 federal income tax return (the "2008 Tax Year Audit"). JPO ¶ 13.

38. On September 28, 2011, Daugherty gave voluntary notice of resignation from all positions at Highland with his last day as an employee being October 31, 2011 (the "Resignation Date"). JPO ¶ 14.

39. On May 22, 2012, Daugherty filed his original answer, counterclaim, and third-party petition (the "Texas Action") against a number of counter-defendants, including Highland,

in the 68th Judicial District Court of Dallas County. Among the causes of action Daugherty asserted was a claim for breach of the Employment Agreement. Highland Ex. 45.

40. On February 6, 2014, a jury returned a verdict in the Texas Action, which found, among other things, that Highland had complied with the Employment Agreement. Highland Ex. 44 (Jury Questions and Answers: "Q: Did Highland fail to comply with the Employment Agreement? A: No.").

41. On December 8, 2017, the IRS examiner completed the IRS audit of the 2008 Tax Year Audit and executed IRS Form 4605-A with the Examination Changes to the Highland 2008 tax return ("Form 4605-A"). Highland Ex. 15; Daugherty Ex. 27.

42. Pursuant to Form 4605-A, the IRS proposed to increase Highland's reported 2008 short-term portfolio income by $166,332,713 (the "2008 Adjustment"). *Id.* The IRS proposed no adjustments to Highland's reported ordinary loss of $546,177,906. *Id.*

43. After Highland's previously reported 2008 portfolio income of $3,570,236 was upwardly adjusted by the 2008 Adjustment, the corrected short-term portfolio income for Highland for 2008 was determined by the IRS to be $169,902,949 ("Total 2008 Partnership Income"). *Id.*

44. By letter dated February 3, 2018, Brian Collins of Highland advised Daugherty in writing that the IRS (a) had concluded its 2008 Tax Year Audit, (b) proposed adjustments to the Highland 2008 tax return, and (c) would hold a closing conference on March 2, 2018 ("Collins 1"). Highland Ex 16; Daugherty Ex. 16.

45. Collins 1 also attached (a) IRS Form 886-Z (redacted) ("Form 886-Z") and (b) IRS Form 870-PT ("Form 870-PT"). Highland Exs. 17, 18; Daugherty Exs. 28, 29.

46. The Form 886-Z entitled "TEFRA Partners' Share of Income" lists all of the 2008 Highland partners by name and address, their respective TIN (taxpayer identification number), and "Percentage of Profit, and Portfolio income (loss) net short-term gain (loss)."[7] Highland Ex. 17; Daugherty Ex. 28.

47. The Form 886-Z lists Daugherty with his address and TIN, his percentage of profit at 0.74030000% (same as the Final K-1, only rounded to four decimal places), and his total adjusted portfolio income as $1,257,792. Highland Ex. 17; Daugherty Ex. 28; Trial Tr. at 50:14-22 (Klos); 253:19-254:1 (Daugherty).

48. The Form 886-Z total adjusted portfolio income for Daugherty was calculated by multiplying Daugherty's 0.74030000% share of the partnership interest by Highland's Total 2008 Partnership Income shown on page 2 of the Form 886-Z. Highland Ex. 17; Daugherty Ex. 28.

49. Collins 1 also provided Daugherty with a copy of IRS Form 870-PT specifically made out for Daugherty's assent. Highland Exs. 16, 18; Daugherty Exs. 16, 29.

50. The Form 870-PT is an offer of agreement from the IRS to Daugherty pursuant to which the IRS and Daugherty would agree on the IRS's proposed adjustments to the Highland 2008 return resulting from the 2008 Tax Year Audit. *Id*.

51. Annexed to the Form 870-PT is the IRS's "Schedule of Adjustments" which proposes that Daugherty agree to the 2008 Adjustment and the 2008 Total Partnership Income. Highland Ex. 18.

---

[7] Highland's and Daugherty's Exhibits are redacted to exclude all of the partners' information, except for Daugherty's and the total.

52. No evidence was offered that Daugherty accepted the 2008 IRS proposal reflected in the Form 870-PT, and based on the existence of the pending dispute, the Court infers that Daugherty effectively rejected the IRS's proposal.

53. By email dated July 3, 2018 ("Collins 2"), Collins advised Daugherty that: (a) Daugherty may have received a 60-Day Letter from the IRS, (b) Highland's tax matters partner would appeal the 2008 Adjustment to the IRS Appeals Office, and (c) Daugherty would have the opportunity to accept any settlement by the tax matters partner as to his pro rata share or individually dispute the adjustment in judicial proceedings. Highland Ex. 19; Daugherty Ex. 31.

54. By email dated December 9, 2019, Collins advised Daugherty that "by letter dated December 8, 2017, Exam [*i.e.*, the IRS field examiners] indicated that they had concluded their audit," made proposed adjustments, issued an audit report, and held a closing conference ("Collins 3"). Highland Ex. 20; Daugherty Ex. 32.

55. Collins 3 also advised Daugherty that Highland had formally disagreed with the IRS's proposed adjustments and that the 2008 Tax Year Audit had been transferred to the IRS Office of Appeals. *Id.*

56. The appeal of the IRS's final adjustments from the 2008 Tax Year Audit continues, and there is no known date when the appeal is expected to be completed. Trial Tr. at 61:10-23 (Klos), 173:18-174:1 (Liles-Tims)

## D. Daugherty's Employment Agreement and Failure to Sign Separation Agreement

57. Daugherty and Highland entered into the Employment Agreement. JPO ¶ 9. Highland Ex. 11.[8]

[8] While Daugherty testified that he did not have a copy of his Employment Agreement (Trial Tr. at 248:22-24), the parties stipulated that Daugherty and Highland entered into the Employment Agreement dated as of December 31, 2004, and a copy of the Employment Agreement was admitted into evidence without objection. *See* JPO ¶ 9 ; Highland Ex. 11.

58. The Employment Agreement was in effect through the Resignation Date, and Daugherty has not been employed at Highland since the Resignation Date. Trial Tr. at 248:5-16.

59. Daugherty claims that the 2008 Tax Refund he received and any "guarantee" thereof was part of his discretionary "non-cash" bonus for 2008. Claim 205, Addendum to Proof of Claim filed by Patrick H. Daugherty ("Addendum") ¶ 3(ii)); *Patrick Hagaman Daugherty's Motion for Leave to Amend Proof of Claim No. 77* [Bankr. Docket No. 1280], Ex. B, Addendum ¶ 3(ii); *see also Patrick Daugherty's Trial Brief* [Docket No. 102] (the "Daugherty Trial Brief") ¶ 10 ("Highland's intent to guarantee Daugherty's compensation is plain.").

60. Section 3.1 of the Employment Agreement requires that Daugherty must be employed in order to be eligible for a bonus: "[Daugherty] must be employed on the payment date(s) in order to be eligible for the bonus." Highland Ex. 11 § 3.1.

61. Section 4.5 of the Employment Agreement mandates that if, at the future time his employment terminates, Daugherty does not sign the separation and release form attached as Exhibit A to the Employment Agreement, "[Daugherty] shall not be entitled to any severance, and [Highland] will have no further liability or obligation to [Daugherty] under [the Employment Agreement] or in connection with [Daugherty's] employment or termination." Highland Ex. 11 § 4.5.

62. Daugherty and Highland later attempted to negotiate a different set of separation and release documents that would have provided Daugherty with, among other things, a tax indemnity related to the 2008 Tax Audit. Trial Tr. at 207:9-209:5; Highland Exs. 38, 40, 41. The parties did not reach agreement, and Daugherty never signed and returned to Highland an executed Exhibit A to the Employment Agreement or any other separation agreement and release. Trial Tr. at 206:2-207:3.

**E. <u>The Claimant Trust, Claim 205, the Settlement Agreement, and the Objection to Reserved Claim</u>**

63. The Plan and the CTA created the Claimant Trust when the Plan went effective on August 11, 2021 (the "<u>Effective Date</u>"). Bankr. Docket No. 2700; JPO ¶ 18.

64. Section 9.1 of the CTA requires that the Claimant Trust be dissolved no later than three years from the Effective Date, subject to a maximum additional two years of extensions as approved by the Bankruptcy Court on motion. CTA § 9.1 [Bankr. Docket No. 1811]. The Bankruptcy Court granted two one-year extensions of the life of the Claimant Trust with the final date of dissolution set at August 11, 2026. *See* Highland's *Motion for An Order Further Extending Duration of Trusts* [Bankr. Docket No. 4213] (the "<u>Extension Motion</u>") and *Order Extending the Duration of the Trusts* [Bankr. Docket No. 4298] entered June 30, 2025.

65. Daugherty filed Claim 205 on December 23, 2020, which included the Addendum. Highland Claims Register Claim 205; Bankr. Docket No. 1280, Ex. B; Trial Tr. 179:4-16; 258:19-259:3.

66. Claim 205 is an unsecured claim against Highland; Daugherty admitted that no part of the claim is secured. Claim 205, part 2 § 9.

67. As set out in the Addendum to Claim 205, Daugherty claimed damages for "2008 Compensation" which was comprised of two components: "Compensation Award $1,475,816.00" and "Estimated Interest on Compensation Award $1,174,537.00." Claim 205, Addendum ¶ 3. Accordingly, the Reserved Claim is capped at $2,650,353.00. Claim 205, Addendum ¶ 3; Trial Tr. 203:17-25. *See also Patrick Daugherty's Reply in Support of Motion for Temporary Allowance of Claims for Voting Purposes Pursuant to Bankruptcy Rule 3018* [Bankr. Docket No. 1411] ¶¶ 40-42 ("Daugherty provided an amount in his claim covering the maximum amount of his contingent liability for which Highland is responsible only to preserve

the claim…. The full amount of the potential contingent liability, $2,650,353, should be included in Daugherty's claim for voting purposes.").

68. In respect of the Reserved Claim, Daugherty asserted that: "[Highland] did not have sufficient cash available to pay bonuses on the February 29, 2009 payments date. Instead, it opted to award non-cash bonuses …[and] provided Daugherty with [the Comprehensive Statement]." Claim 205, Addendum ¶ 3(ii).

69. On November 22, 2021, Daugherty and Highland executed the Settlement Agreement settling and releasing all claims Daugherty had against Highland and its related parties except the Reserved Claim. Highland Ex. 5 ¶ 9; Daugherty Ex. 3 ¶ 9. The Settlement Agreement was approved by the Court on March 8, 2022. Bankr. Docket No. 3298.

70. The Reserved Claim is fully reserved in an account held by the Claimant Trust with a balance equal to the $2,650,353.00 amount of the Reserved Claim. Daugherty Ex. 94 ¶ 1; Trial Tr. at 203:13-204:2. It is the only unresolved claim left in the Highland estate. Trial Tr. at 241:25-242:3.

## F. Evidence at Trial Concerning Estimation of the Reserved Claim

71. Two witnesses testified at trial concerning the estimation of the Reserved Claim, David Klos, Highland's CFO ("Klos"), and Trevor Jason Liles-Tims ("Liles-Tims"), an expert retained by Daugherty.

72. Klos offered lay testimony in which he described an objective methodology to estimate the Reserved Claim.[9] Klos' calculation was a straightforward arithmetic formula based

[9] Klos is a CPA in Texas with undergraduate degrees in accounting and finance and both a Masters of Science in accounting and a Masters of Business Administration from SMU. Trial Tr. at 45:1-14. While Klos is clearly experienced in tax matters, he was not offered as an expert witness (Trial Tr. at 45:15-23); the Court finds that Klos' testimony did not require unique expertise because it focused on applying objective, factual information to the agreed-upon methodology. While a basic understanding of certain statutes was required, Klos' testimony was fundamentally

on a number of identified inputs. The first of those inputs was the magnitude of the adjustment to Highland's total 2008 short-term portfolio income, for which Klos set forth five possible outcomes. The lowest of the outcomes reflected a complete reversal of the IRS's proposed adjustments resulting from the 2008 Tax Year Audit. The other outcomes reflected specific positions taken by the IRS and Highland's tax matters partner with respect to the IRS's proposed adjustments resulting from the 2008 Tax Year Audit.

73. Notably, Liles-Tims adopted the exact same methodology Klos employed. Trial Tr. at 122:4-14; Highland Ex. 59 ¶ 44 (describing the methodology). Yet, Liles-Tims testified that the value of the Reserved Claim could not be estimated because there were supposedly "too many variables," "too much uncertainty," and such an analysis required "too much speculation." Trial Tr. at 90:7-91:13. Highland Ex. 59 ¶¶ 33, 43, 48-49.

74. The Court rejects Liles-Tims' testimony that the Reserved Claim cannot be estimated for purposes of Section 502 for several reasons. First, the evidence established that the parties *agree* on a methodology that could be used to estimate the Reserved Claim. Second, with the sole exception of the adjustment to Highland's total 2008 short-term portfolio income, the divergence between Klos and Liles-Tims concerning the remaining inputs to the arithmetic formula were insignificant. Third, Klos' inputs were all reasonably supported by documentary evidence. Fourth, contrary to his expert, Daugherty *did* estimate the value of the Reserved Claim—a valuation that the parties used to establish the claim reserve.[10] And finally, since the

arithmetical and supported by specific statutes that both Klos and Liles-Tims agree apply and which can be found at Highland Exs. 29-34.

[10] Liles-Tims admitted that he never reviewed Daugherty's Claim 205 and never asked Daugherty if he had a view as to what his maximum liability might be. Trial Tr. at 113:11-21. The "Compensation Award" amount set forth on Daugherty's Claim 205 had simply listed the amount found on the Compensation Statement. The "Estimated Interest on Compensation Award" amount set forth in Daugherty's Claim 205 was not accompanied by details as to how it had been calculated or what inputs were used to calculate it. Claim 205, Addendum ¶ 2 and ¶ 3(ii). During his

Court finds and determines that the administration of Highland's Bankruptcy Case would be unduly delayed if the Reserved Claim were not estimated and fixed at this time, acceptance of Liles-Tims' opinion would necessarily result in the disallowance of Daugherty's Reserved Claim.[11]

75. While Liles-Tims insisted that the Reserved Claim could not be estimated and acknowledged that he hadn't specifically analyzed the applicable statutes or calculated interest using the applicable interest rates (one of the inputs to the formula), he nevertheless offered his views on each of the individual inputs of the agreed-upon methodology.

1. <u>IRS Income Adjustment to HCMLP</u>

76. Klos' testimony on estimation was aided by a demonstrative exhibit (Highland Ex. 65; *see* Trial Tr. at 49:11-21) that set out, in tabular format, the inputs and arithmetical calculations for estimating five potential outcomes of the 2008 Tax Year Audit.[12] The only input

deposition, Mr. Daugherty indicated that he thought he had "googled" penalty rates and interest rates, but he couldn't recall what those rates were. Highland Ex. 57 at 237:22-240:14.

[11] While not determinative, the Court also has considerable concerns regarding Liles-Tims' expertise and credibility. Liles-Tims appears to be an expert in business valuations, fraud examinations, and quantifying commercial damages (Trial Tr. 88:1-3), not IRS audits. Moreover, while Liles-Tims' history of teaching seminars and providing expert testimony on those subject matters is impressive, nothing in their lengthy descriptions evinces knowledge or expertise in the area of federal income tax audits or even tax issues generally. *See* Highland Ex. 59 (Appendix (Liles-Tims' CV at 2-7)). Further, Liles-Tims is not a CPA, has never played more than a supporting role in an IRS audit, has never testified in tax court, is not an expert in bankruptcy law, and has no opinions concerning Bankruptcy Code Section 502, the statute at issue. Trial Tr. at 88:5-89:13. Most concerning to the Court is Liles-Tims' opinion that he would be unable to estimate Daugherty's Reserved Claim even if Highland's tax matters partner reached an agreement with the IRS or there was a final judicial determination concerning the 2008 Tax Year Audit. *Id*. at 91:14-92:15. That is an extreme position that is hard to understand.

[12] The Court rejects Daugherty's counsel's suggestion that Highland unfairly presented its evidence concerning the estimate of the Reserve Claim for several reasons. First, Daugherty never moved to compel the production of such evidence thereby indicating such evidence was not responsive to Daugherty's discovery requests. Second, under the scheduling order in this Adversary Proceeding (Docket No. 37), Daugherty had the right to depose Klos (a fairly obvious witness given his role at Highland and the subject matter of this proceeding) during discovery but apparently chose not to do so. Third, Klos was identified on Highland's Witness & Exhibit list filed more than two weeks before the hearing (Docket No. 97), yet Daugherty apparently made no effort to depose Klos even then. Finally, with respect to Highland Ex. 65, the Court notes that (a) it set forth the same methodology that Daugherty's expert recited, (b) Daugherty's expert admitted that he analyzed the two-page demonstrative exhibit for 10 hours (Trial Tr. at 164:22-165:1), and (c) Daugherty's expert was able to offer his views as to the appropriateness of the inputs Klos utilized. If

that changed among the outcomes was the amount of the "IRS income adjustment to HCMLP."[13] Klos identified the following potential outcomes based on available data:

- (I) complete reversal of the 2008 Adjustment (*i.e.*, no further tax liability to HCMLP or its former limited partners such as Daugherty);
- (II) the value of the tax matters partner's recent settlement counter-offer to the IRS ($8 million in settlement);[14]
- (III) the mid-point amount between a complete reversal (*see* I above) and the full 2008 Adjustment (*see* V below) ($83,166,357 of IRS income adjustment to HCMLP);
- (IV) the IRS's recent settlement offer ($129,528,078 of IRS income adjustment to HCMLP), and
- (V) the full IRS proposed 2008 Adjustment from the 2008 Tax Year Audit ($166,332,713 of IRS income adjustment to HCMLP).

Highland Ex. 65; Trial Tr. at 50:4-13; 58:4-59:21.

2. <u>Daugherty's Percentage Interest in the Highland Limited Partnership</u>

77. The next input in the methodology is Daugherty's interest in the Highland limited partnership. Relying on the Final K-1 (Highland Ex. 14) and the IRS Form 886-Z (Highland Ex. 17), Klos used 0.7403% as Daugherty's allocable share of Highland's limited partnership interests as of December 31, 2008. Highland Ex. 65; Trial Tr. at 50:14-51:6.

78. While acknowledging that Klos relied on the percentage interest that Daugherty used to obtain his tax refund (Trial Tr. at 116:3-20), Liles-Tims nevertheless suggested that the

---

Daugherty believed Highland unfairly presented its evidence concerning the estimation of the Reserved Claim, it could have and should have sought an adjournment or other relief.

[13] The variance in penalty percentage rates simply reflected that certain of the settlement offers had included waiver of the penalty, so were 0% and not applicable in those instances.

[14] *See* Highland Ex. 22. The tax matters partner's offer was for a single payment of $8 million to resolve all liability for all former limited partners. Calculation of Daugherty's share would be $8 million times his partnership share of 0.7403%. While it is unclear from the offer whether liability for such a payment would or could be allocated amongst the partners, including Daugherty, Highland's estimate under this scenario assumed that Daugherty would pay his ratable 0.7403% share. Trial Tr. at 84:3-21.

percentage interest somehow remained uncertain. Upon cross-examination, however, Liles-Tims was forced to admit that based on the information he reviewed, there was only one other possible alternative to the partnership percentage used in the Final K-1 and Form 886-Z: 0.783%, a percentage taken from a prior Highland limited partnership agreement that was not used by Daugherty in his 2008 1040 or 2008 1045 or by the IRS. Trial Tr. at 157:18-162:4; Highland Ex. 10 at Ex. A.

79. Based on IRS Forms 886-Z (Highland Ex. 17) and 870-PT (Highland Ex. 18), it is clear that the IRS applied 0.7403% as Daugherty's percentage interest in the partnership both for purposes of allocating his share of the proposed HCMLP 2008 Adjustment and for purposes of providing Daugherty with an opportunity to settle the audit dispute as it pertains to his partnership interest. The Court finds as a matter of fact that adopting the percentage used in the Final K-1 given to Daugherty and reported to the IRS in 2009 and used in IRS Form 886-Z (*i.e.*, 0.7403%) in 2018 is appropriate to use for claim estimation purposes.

3. <u>2008 Applicable Tax Rate</u>

80. After multiplying the adjustment by Daugherty's percentage partnership interest in Highland (Trial Tr. at 51:13-17; 116:21-117:3), the next step in the agreed-upon methodology is to multiply that product by the personal income tax rate in effect in 2008. Highland Ex. 65.

81. Klos testified that the highest federal income tax rate for individuals in 2008 was 35%, and he used that rate to be conservative. Trial Tr. at 51:18-52:3, 84:5-17. Liles-Tims agreed that 35% was the highest federal income tax bracket in 2008. *Id.* at 117:4-23; 162:17-163:15; 173:2-17.

82. Based on the foregoing, the Court finds as a matter of fact that, while a lower rate may ultimately be applicable in Daugherty's particular circumstances, applying a 35% federal income tax rate is appropriate for claims estimation purposes.

4. <u>Statutory Penalty</u>

83. After quantifying the tax underpayment for Daugherty under the five scenarios, the next step in the agreed-upon methodology is to determine the applicable penalty to be included in the estimated claim, if any.[15]

84. According to Klos, under the applicable IRS statute and the IRS's proposed adjustments from the audit, Daugherty would face a one-time 20% penalty. Trial Tr. at 52:18-53:2; Highland Ex. 65 (Statutory Penalties). But Klos testified that no penalty would be imposed under scenarios I, II, or IV because (a) there would be no penalty if the audit was reversed (scenario I), and (b) the tax matters partner's and the IRS's settlement offers did not include a penalty component. Klos applied the 20% penalty to scenario V and a 10% penalty (the simple mid-point of 0% and the 20% statutory penalty) to scenario III. *See* Trial Tr. at 53:3-22, 55:19-23.

85. Liles-Tims (a) acknowledged that Klos relied on the right statute to determine any applicable penalty; (b) testified that the penalty could be either 20% or 30%; (c) suggested that the 30% penalty rate applies to corporations, not limited partnerships such as Highland; (d) suggested that the 30% penalty rate applies to "reported transactions", which the proposed adjustments by the IRS are not; (e) admitted that he had no opinion as to which penalty rate to

[15] This input is only relevant if the Court finds that an estimation of Daugherty's allowed claim requires the inclusion of penalties. If the Court finds that (a) Highland was not responsible for penalties under the Compensation Statement or (b) even if it was, (i) Daugherty assumed the risk that penalties might be imposed when he elected to reject the IRS's settlement offer in early 2018, or (ii) such penalties are completely mitigated by the investment return Daugherty should have been able to reasonably achieve on the 2008 Refund, then penalties are irrelevant and should be ignored for purposes of estimating the claim.

use; and (f) otherwise deferred to the Court on this issue. Trial Tr. at 122:15-123:24; 126:19-127:6; 128:9-10; 163:19-164:9; 169:16-23.

86. Based on the foregoing, including that Highland was not a corporation in 2008, the Court finds as a matter of fact that using a 20% penalty rate is appropriate for claim estimation purposes (except that if the Court ultimately estimates the claim based on the IRS settlement offer or the tax matters partner's settlement offer, then a 0% penalty rate would be appropriate in those instances, since those settlement offers explicitly excluded the application of any penalty).

5. <u>Interest Rate</u>

87. Klos and Liles-Tims agreed that the IRS is authorized to impose interest on tax payment deficiencies.[16]

88. According to Klos, the applicable statutory blended interest rate to be applied is 4.59%. This rate is based on the average applicable statutory rate over the interest period (described below), updated quarterly and compounded daily. Trial Tr. at 55:25-56:8; Highland Ex. 65 n.3. The historical rates that were used in the blended rate calculation and referred to in the demonstrative footnote can further be found at Highland Ex. 29 at 10-12 (with applicable rates at 11). The simple average of the historical applicable rates described above during the interest accrual period was approximately 3.8%, and the effect of the daily compounding added approximately 0.8% in the aggregate. *See* Highland Ex. 65 n. 3.

89. Liles-Tims admitted that (a) Klos relied on the same statutes cited in his own report and (b) he did not personally calculate the applicable interest rate. Yet, Liles-Tims mistakenly

[16] This input is only relevant if the Court finds that an estimation of Daugherty's allowed claim requires the inclusion of interest. If the Court finds that (a) Highland was not responsible for interest under the Compensation Statement or (b) even if it was, (i) Daugherty assumed the risk that interest might be imposed when he elected to reject the IRS's settlement offer in early 2018, or (ii) such interest is completely mitigated by the investment return Daugherty should have been able to reasonably achieve on the 2008 Refund, then interest is irrelevant and should be ignored for purposes of estimating the claim.

testified that Klos erred by not compounding interest daily, apparently overlooking Klos' contrary testimony. Highland Ex. 29; Highland Ex. 65 n. 3; Trial Tr. at 119:19-120:9; 128:11-21; 164:10-165:7.

90. Because Liles-Tims agreed that Klos relied on the appropriate statute, and because Klos correctly compounded interest daily, the Court finds as a matter of fact that utilizing a statutory blended interest rate of 4.59% to be reasonable for claims estimation purposes.

6. Time Outstanding (years)

91. The last input in the agreed-upon methodology is determining the length of time interest, if any, would be imposed.[17]

92. Liles-Tims agreed with Klos' determination that the period of time from the tax payment date (*i.e.*, April 15, 2009) through Highland's petition date (*i.e.*, October 16, 2019) equaled 10.51 years. Trial Tr. at 56:9-18; 120:10-122:3; 154:23-155:8; 165:8-12; Highland Ex. 65.

93. As set forth above, the Reserved Claim is a general unsecured claim; as such, the claim amount cannot and does not include unmatured, post-petition interest. 11 U.S.C. § 502(b)(2). Based on that, and to the extent that the Court finds that pre-petition interest should be included in the estimated claim amount, the Court finds as a matter of fact that there is no dispute that the period of time to be used to calculate pre-petition interest, if any, is 10.51 years.

7. Summary of Potential Claim Estimates

[17] This input is only relevant if the Court finds that an estimation of Daugherty's allowed claim requires the inclusion of interest. If the Court finds that (a) Highland was not responsible for interest under the Compensation Statement or (b) even if it was, (i) Daugherty assumed the risk that interest might be imposed when he elected to reject the IRS's settlement offer in early 2018; or (ii) such interest is completely mitigated by the investment return Daugherty should have been able to reasonably achieve on the 2008 Refund, then interest is irrelevant and should be ignored for purposes of estimating the claim.

94. Applying the findings of fact above to the agreed-upon methodology yields the following estimates of the Reserved Claim under the five scenarios:

| Scenario | Estimated Claim amount if Highland is either not responsible for penalties or interest, or is responsible, but mitigated by investment return | Estimated Claim amount if Highland responsible for penalties and interest and no offset for mitigating damages |
|---|---|---|
| Scenario 1 (audit reversal) | $0 | $0 |
| Scenario 2 (tax matters partner settlement counter-offer) | $59,224 | $59,224 (same because the counter-offer had no penalties or interest) |
| Scenario 3 (mid-point amount) | $215,488 | $340,897 |
| Scenario 4 (IRS settlement offer) | $335,614 | $497,371 |
| Scenario 5 (IRS adjustments) | $430,976 | $724,892 |

Highland Ex. 65; *see* Trial Tr. at 58:4-60:8.

**G. Highland's Performance Under the Books and Records Provision in the Settlement Agreement**

95. The Settlement Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type …. Such transfer will be without any liability or material cost to HCMLP or its affiliates …." Highland Ex. 5 ¶ 8; Daugherty Ex. 3 ¶8.

96. On or about April 1, 2022, Highland transferred its interests in HERA and ERA, respectively, to Daugherty pursuant to written agreements (the "Transfer Agreements"). Highland Ex. 52; Trial Tr. at 190:10-15.

97. HERA and ERA were non-operating entities whose purpose was to passively hold certain assets after the 2008 financial crisis for the benefit of certain Highland employees. Neither HERA nor ERA had any employees, offices, operations, servers, or email addresses. Trial Tr. at 183:4-185:25.

98. The phrase "books and records" is not expressly defined in the Settlement Agreement. Seery credibly testified that, when read as a whole, the Books and Records Provision was intended to require Highland to deliver a limited set of documents to Daugherty. Trial Tr. at 186:24-189:8. He also testified that the parenthetical "(spreadsheet)" referred to the manner in which HERA and ERA's accounting records were maintained (in QuickBooks, an electronic format that generates output to users in Microsoft Excel), and how they would be provided to Daugherty. Trial Tr. at 189:9-25.

99. Daugherty provided no extrinsic evidence concerning the meaning of the phrase "books and records (spreadsheet)" at time the Settlement Agreement was negotiated. Daugherty admitted that the Books and Records Provision does not require Highland to provide all documents concerning HERA and ERA in its possession. Trial Tr. at 263:3-6. Daugherty also acknowledged that Highland had cooperated in good faith to deliver additional documents at his request. Trial Tr. at 271:17-272:7.

100. Daugherty never sought relief from this Court concerning Highland's compliance with the Books and Records Provision at any time before filing his Counterclaims on October 3, 2025, including at any time before commencing his action in the District Court on HERA's behalf. Trial Tr. at 277:12-17.

101. Seery credibly testified that in May 2022, Highland delivered over 50 mb of data to Daugherty in satisfaction of the Books and Records Provision (the "May Production"). Trial

Tr. at 193:16-194:4; Highland Ex. 2. The May Production contained all of HERA and ERA's (a) corporate governance records, (b) historical accounting records, and (c) historical tax filings. Trial Tr. at 192:6-21, 193:4-11; Highland Ex. 2. In the transmittal letter with the May Production, Daugherty was told: "We believe this production completes HCMLP's obligations under paragraph 8 of the settlement agreement." Highland Ex. 2.

102. Klos credibly testified that Highland also provided all the legal invoices it could locate, some 300. Trial Tr. at 81:6-11.

103. After Highland completed the May Production (which it contended satisfied its obligations under the Books and Records Provision), Daugherty requested backup documents for the materials already produced. In response, Highland re-produced the May Production as well as "as many backup documents as [David Klos] could find." Trial Tr. at 194:5-19. Highland provided those documents (including the legal invoices) to Daugherty, identifying them in an email dated October 19, 2022 (the "October Production," and together with the May Production, "Highland's Books and Records Production"). Highland Ex. 3; Trial Tr. 80:16-81:11.

104. Daugherty's Counterclaims failed to identify specific documents or categories of HERA and ERA's "books and records" that he contends Highland did not provide. *See* Highland Ex. 1. In fact, in his Counterclaims, Daugherty demanded "**Highland's books and records** related to HERA." Highland Ex. 1 ¶ 14 (emphasis added). The Daugherty Trial Brief also describes documents that plainly go beyond any reasonable interpretation of the phrase "the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system," claiming:

- Highland failed to provide "books and records . . . that **related** to HERA and ERA." Daugherty Trial Brief ¶ 1 (emphasis added);
- Daugherty is entitled to "**all ownership rights, property, data, documents, and records relating** to HERA and ERA." *Id.* ¶ 25 (emphasis added);

- Daugherty needs "**all HERA and ERA materials** in Highland's possession." *Id.* ¶ 27 (emphasis added); and

- Daugherty "must receive **everything Highland possessed relating** to those entities." *Id*. (emphasis added).

## IV. DETERMINATION OF CONTESTED ISSUES OF FACT AND LAW

### A. The Party with the Ultimate Burden of Proof on Each Cause of Action and Defining Those Burdens

105. Under 11 U.S.C. § 502(a), a "claim ..., proof of which is filed under section 501 [of the Bankruptcy Code], is deemed allowed, unless a party in interest ... objects." 11 U.S.C. § 502(a). The ultimate burden of proof for a claim always lies with the claimant. *In re Armstrong*, 347 B.R. 581, 583 (Bankr. N.D. Tex. 2006) (citing *Raleigh v. Ill. Dep't of Rev.*, 530 U.S. 15 (2000)); *see also In re Couture Hotel Corp.*, 554 B.R.369, 380 (Bankr. N.D. Tex. 2016). Thus, Daugherty has the ultimate burden of proof with respect to the allowance and amount of his Reserved Claim.

106. Daugherty also has the ultimate burden of proof with respect to each of his Counterclaims. *Couture Hotel*, 554 B.R. at 380.

### B. The Compensation Statement Is Not a Binding and Enforceable Contract (Mixed Question of Law and Fact)

107. The Compensation Statement is unenforceable as a contract because it is vague and indefinite and is missing material terms required to form a contract. *See APS Cap. Corp. v. Mesa Air Grp., Inc.*, 580 F.3d 265, 272-73 (5th Cir. 2009).

108. The Compensation Statement does not constitute an offer by Highland and acceptance by Daugherty, who was an "at will" employee with an Employment Agreement; rather, it is simply a summary of what Highland had or was going to pay Daugherty for services already rendered during the prior year and a reiteration of his base salary for the next year.

109. As relevant here, the alleged agreement is contained in three sentences that state only: "Refund is an ***estimated amount***. If actual refund deviates ***materially*** from estimate, ***other compensation*** will be ***fairly adjusted***. Refund is expected to be received in approximately 4 months." Highland Ex. 13 (emphases added).

110. The Compensation Agreement provides no guidance to the parties or the Court as to (a) what "materially" means for this purpose; (b) how "other compensation" might be adjusted; (c) how the "fair[ness]" of an adjustment will be assessed; (d) who will make the determinations as to (i) whether the "actual refund deviates materially from estimate," (ii) what compensation would be adjusted, or (iii) how such compensation would be "fairly adjusted"; or (e) when all of this was supposed to happen.

111. Under Texas law, an alleged contract that fails to address all essential and material terms with a reasonable degree of certainty and definiteness is unenforceable as a matter of law. *See APS Cap. Corp.*, 580 F.3d at 272 ("In order to be a legally enforceable contract, an agreement must be formed around the contours of sufficiently specific terms."). Material terms "are those that the parties would reasonably regard as vitally important elements of their bargain," and "a contract must define its essential terms with enough precision to enable the court to determine the obligations of the parties." *In re ACM-Tex., Inc.*, 430 B.R. 371, 408 (Bankr. W.D. Tex. 2010); *see also Wesdem, LLC v. Ill. Tool Works Inc.*, 2022 WL 18585978, at *4 (W.D. Tex. July 28, 2022), *aff'd sub nom.*, 70 F.4th 285 (5th Cir. 2023) ("Where the agreement is so indefinite that the Court must 'speculate' about its terms, the contract fails 'as a matter of law.'" (quoting *RealPage, Inc. v. EPS, Inc.*, 560 F. Supp. 2d 539, 547 (E.D. Tex. 2007))); *Coppock v. Doug's Corner, Inc.*, No. 5:21-CV-43-RWS-JBB, 2023 U.S. Dist. LEXIS 242726, at *10 (E.D. Tex. May 17, 2023) (noting that "the agreement's terms must also be sufficiently definite to 'enable a court to understand the

parties' obligations' and to give 'an appropriate remedy' if they are breached.") (quoting *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016)).

112. "As a general matter, Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify 'the time of performance, the price to be paid, the work to be done, the service to be rendered, or the property to be transferred.'" *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006) (quoting *Engelman Irr. Dist. v. Shields Bros.*, 960 S.W.2d 343, 352 (Tex. App. 1997)). "The question of indefiniteness—whether an agreement reaches all essential terms of a given transaction—is one of law for the court." *APS Cap. Corp.*, 580 F.3d at 271 (citing *COC Svcs., Ltd. v. CompUSA, Inc.*, 150 S.W.3d 654, 664 (Tex. App. 2004)).

113. Here, under Texas law, the Compensation Statement either contains vague or indefinite terms, or omits material terms, that render it unenforceable as a contract.

114. ***First***, the 2008 tax refund is explicitly stated to be an "estimated" amount. While unstated, the refund could only come from the IRS (as the taxing authority), not Highland. But the amount is unclear; it is merely "estimated" because a tax refund to an individual can only be determined after that individual files his/her tax return and all of the individual's particularized tax attributes are taken into consideration.[18] While Highland could estimate the amount of losses it would pass through to Daugherty as a limited partner, and could therefore estimate the potential tax refund of prior taxes paid on a previous year's partnership income, it could not definitively

[18] This would include things like other sources of income, unrelated capital gains and losses from investments, unrelated K-1s from other partnerships, spousal income, estimated tax payments the individual or their spouse made during the year, individual itemized deductions, and a litany of others. Each of these factors can impact an individual's refund or tax owed each year, and no evidence was adduced demonstrating that Highland had visibility into all the factors impacting Daugherty's return.

set forth the amount of the refund Daugherty would get from the IRS. Accordingly, the prospective amount of the refund was an estimate—and "estimates" are, by definition, uncertain.

115. ***Second***, as used in the Compensation Statement, the word "materially" is vague and ambiguous. To create an enforceable obligation, the Court would have to determine, among other things, whether the actual refund Daugherty received from the IRS "deviate[s] "materially" from [the] estimate." Here, the estimate was $1,475,816 (Highland Ex. 13) and the Received Refund was $1,273,930 (JPO ¶ 12), a $201,886 difference. But, as contemporaneous evidence shows, the Compensation Statement estimate was not an estimate of the cash refund that Daugherty could expect, but rather an estimate of the derivative pre-tax equivalent of such a refund. Highland Exs. 39 and 47. In other words, the amount reflected on the Compensation Statement was a "grossed-up" amount of his estimated cash refund of $959,280 to reflect what the refund would effectively be to Daugherty on an "apples-to-apples" basis with other pre-tax compensation amounts. Highland Ex. 47.[19] On that basis, Daugherty received an actual refund greater than the Compensation Statement estimate. Because the language is vague and ambiguous, there is simply no objective way for the Court to determine whether the Received Refund deviates materially from the grossed-up estimate on the Compensation Statement.

116. ***Third***, the phrase "other compensation" is also vague and ambiguous because it had many potential permutations at the time. The Compensation Statement proves the point as it identifies myriad forms of "Earnings and Awards" and "Highland Paid Benefits" that comprise the "Total Compensation Package" that Daugherty received for services he provided to Highland in 2008, including: (a) base salary, (b) tax refund, (c) loan forgiveness, (d) other awards (including

[19] *See also* Highland Ex. 62. Total 2005-2007 income (*see id.* at 3) for Daugherty equals $3,552,890. 2005-2007 income multiplied by 27% equals $959,280. $959,280 "grossed-up" by 35% (*i.e.*, divided by 0.65) equals $1,475,816 – the amount found on the Compensation Statement. This exhibit reflects the actual math behind what is described at Highland Ex. 47 and what appears on the Compensation Statement.

a 401(k) match and a "defined benefit"), and (e) deferred compensation.[20] In all, as reflected on the Compensation Statement, Daugherty was compensated 13 different ways in 2008 alone. Daugherty introduced no evidence as to how the parties intended to revise his compensation to make any adjustment, assuming one was needed, and the Compensation Statement provides no guidance for the Court to pick.

117. ***Fourth***, the phrase "fairly adjusted" is another subjective term susceptible to differing meanings. Indeed, based on the testimony by Daugherty about Highland's financial circumstances in early 2009, it is hard to imagine that Daugherty and Highland would have reached an agreement on what was "fair." And even if they had, based on Daugherty's own testimony as to the constraints Highland's lenders sought to place on Highland, it's unclear what even would have been allowed. Trial Tr. 294:24-295:20. Nevertheless, had the parties intended to reach a binding agreement, they surely would have done so. To create an enforceable agreement, the Court would have to identify on its own what amount would have been deemed "fair" by the parties in February 2009. Daugherty did not offer any testimony or documentary evidence concerning the meaning of "fairly adjusted."

118. ***Finally***, the Compensation Statement omits numerous material terms.[21] For example, the Compensation Statement does not (a) mention what happens if an actual tax refund is received by Daugherty (as it was) but that refund is subject to potential recovery by the IRS (as

[20] Highland Ex. 13. The Compensation Statement also ascribes value to paid benefits as part of Daugherty's "total compensation package", including benefits like life insurance, disability insurance, executive long-term disability, daily catered lunches, "Blackberry" charges, and paid parking.

[21] Daugherty's allegation that the Compensation Statement contained some sort of make-whole is aspirational at best. Daugherty testified that in 2009, Highland was in financial extremis and did not have the wherewithal to make any cash bonus payment, but instead used the 2008 Tax Refund Amount as an alternative to a cash bonus. Trial Tr. at 294:15-295:20. If Highland lacked the resources to make payment at the time, it could not have made a reliable promise to make payment in an unknown amount at some contingent, uncertain, future time. Indeed, at trial, the most Daugherty could come up with to support his vague, ambiguous, and unspecific make-whole contention was "[Dondero] said, I'll take care of you. I'll make it up to you. Not just me, but others." Trial Tr. 296:21-22.

it always is); (b) reference or even consider the possibility of an audit of Highland or Daugherty; (c) provide for what would happen in the event of an audit adjustment affecting Highland or Daugherty; (d) include any timeframe or due date for any potential adjustment of "other compensation"; (e) state that Highland would "adjust other compensation" to account for any interest or penalties arising in connection with any unconsidered audit; (f) state that Highland would "make Daugherty whole" if any portion of the refund was clawed back after the unconsidered audit; (g) state that any obligation Highland purportedly had would continue indefinitely, even after Daugherty voluntarily resigned from Highland (as he did); or (h) contain the words "indemnify," "reimburse," "cover," "back-stop," or any word or phrase of similar import. Contemporaneous evidence actually contradicts Daugherty's theory of endless indemnification: Tax refunds "are not guaranteed, as the IRS still has the authority to audit our claimed losses and resulting refunds due." Highland Ex. 47; *see also* Trial Tr. 296:15-17 (Daugherty: "I was very concerned about blow-back for the IRS, which was definitely going to get, in my opinion, their attention."). It is undisputed that Highland did not (i) even file its 2008 partnership return until nearly seven months *after* giving Daugherty the Compensation Statement (s*ee* JPO ¶ 40; Daugherty Ex. 57 at 159:10-15; Daugherty Ex. 24), and (ii) learn that the 2008 partnership return was selected for an IRS audit until *March 2010*. Highland Ex. 64 (IRS Notice of Beginning of Administrative Proceeding, dated March 3, 2010).

119. In sum, the Compensation Statement is not an enforceable contract as a matter of law because essential terms to form an agreement are either vague, indefinite, or missing. For this reason alone, the Claim should be disallowed.

## C. <u>If Highland Had Obligations Under the Compensation Statement, They Were Fulfilled</u>

120. Even if the Court deemed the unsigned Compensation Statement to be an enforceable contract, Highland satisfied any obligations it may have had because Daugherty

actually received a tax refund from the IRS based on partnership losses passed to him and reflected in the Draft K-1. JPO ¶12; Daugherty Ex. 26 (Draft K-1). The losses passed through to Daugherty as reflected on the Draft K-1 were further validated by the Final K-1 for 2008 that was provided in September 2009 and was materially consistent with the Draft K-1. Daugherty Ex. 26; Daugherty Ex. 24 (Final K-1). Specifically, as reflected on his Final K-1, Daugherty was allocated ordinary business losses by Highland in excess of $4 million, along with other losses that well exceeded the Highland partnership income allocated to Daugherty from 2005-2008. Thus, Highland generated and passed through to Daugherty even more losses than what was originally estimated in the Compensation Statement, which resulted in a greater "after-tax" refund for Daugherty than estimated. In other words, the allocation to Daugherty of over $4 million of actual losses from 2008 reflected in the Final K-1 delivered in 2009, when tax-effected at 35%, generated an even larger refund than was originally estimated and formed the basis of the amount referenced in the Compensation Statement[22].

121. When Daugherty voluntarily terminated his employment with Highland in October 2011 without signing and returning the form of separation agreement attached as Exhibit A (or any other severance agreement), Highland was—pursuant to the express terms of his Employment Agreement—relieved of any "further liability or obligation to [Daugherty] under [the Employment Agreement] or in connection with his/her employment of termination." Highland Ex. 11 § 4.5.

122. Highland, therefore, fully satisfied any obligations it might have had under the Compensation Statement when Daugherty got the Received Refund, and the Employment Agreement cut off any right he may have had to additional amounts.

[22] Highland Exs. 47 and 63

123. Daugherty voluntarily resigned from Highland on September 28, 2011, and his employment terminated on October 31, 2011. Daugherty Ex. 15. Daugherty concedes that the 2008 Tax Refund that he received from Highland was part of his discretionary bonus under the Employment Agreement. Trial Tr. at 300:24-301:1 Daugherty forfeited any right he may have had to a bonus under the Compensation Statement (to the extent he had any) when he voluntarily terminated his employment at Highland.

124. The Employment Agreement states that Daugherty must be employed at the time of payment in order to be eligible for a bonus payment. Section 3.1 of the Employment Agreement provides:

> Salary and Bonus. The annual salary (the ***"Base Salary")*** payable to the Executive during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to the Executive, and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon the Executive's performance and shall be determined by the Company in its sole discretion. In addition, the Company ***may*** from time to time award bonuses to the Executive based on such criteria as the Company ***may establish in its discretion***. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. ***The Executive must be employed on the payment date(s) in order to be eligible for the bonus.*** The payment of salary and bonuses shall be subject to all federal, state and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of the Executive's compensation does not constitute a guarantee of employment for any specific period of time.

Highland Ex. 11 § 3.1(a) (emphases added).

125. Daugherty terminated his employment at Highland and therefore was no longer eligible for any additional bonus payment under the Employment Agreement after termination. Daugherty admitted this in writing 15 years ago—literally the day before he resigned in 2011.

Highland Ex. 38 ("I would have to be employed at Highland in order to get any payment of bonus (as has always been the case).").

126. Likewise, as noted above, Section 4.5 of the Employment Agreement addresses Highland's liability to Daugherty in the event Daugherty voluntarily terminates his employment and does not take up work with a "competing business":

> In the event that [Daugherty] terminates his/her Continuous Status as an Executive hereunder and within one (1) year thereafter [Daugherty] is not employed by a Competing Business, [Highland] shall have no further liability or obligation to [Daugherty] under this Agreement or in connection with his/her employment hereunder, except for (i) any unpaid Base Salary accrued through the date of termination, (ii) any accrued but unused vacation time, (iii) any amounts or rights to which [Daugherty] is entitled under any other written agreement with [Highland], (iv) any unreimbursed expenses properly incurred prior to the date of termination, and (v) severance pay equal to the product of
>
> (a) two (2) weeks Base Salary … multiplied by (b) the number of [years of service]… [total severance not to exceed six weeks of Base Salary]... [Daugherty] acknowledges that [Highland's] obligation to pay severance, if any, will arise only … if [Daugherty] signs and returns a duly executed separation agreement and release substantially in the form attached hereto as Exhibit A….***In the event that [Daugherty] declines to sign the separation agreement and release, he/she shall not be entitled to any severance, and [Highland] will have no further liability or obligation to [Daugherty] under this Agreement or in connection with his/her employment or termination***.

Highland Ex. 11 at § 4.5 (emphasis added).

127. Daugherty did not sign the separation and release form and deliver it to Highland and instead elected to counter-sue Highland under the Employment Agreement (and lost against Highland). *See* Highland Ex. 44. Any right Daugherty may have had under the Compensation Statement for any additional consideration terminated with his employment, including his claim for unlimited indemnity or adjustment of other pre-termination compensation.

128. The Court also admitted into evidence an additional document, a form of Separation Agreement, that Daugherty refused to sign following his resignation (the "Draft Separation Agreement"). Daugherty Ex. 44 § 3(b)(ii). The Draft Separation Agreement contains, among other things, the very indemnity promise of payment of taxes, interest, and penalties arising from an audit of Highland's tax returns (the "Rejected Indemnity") that Daugherty now claims is implicitly included in the Compensation Statement. The evidence established that in October 2011, when Daugherty was presented with the Draft Separation Agreement, the IRS was *only* auditing Highland's 2008 return. There would have been no reason to include the Rejected Indemnity in the Draft Separation Agreement if the parties believed it was already included in the Compensation Statement and would survive Daugherty's termination. Daugherty's Reserved Claim is disallowed.

**D. Daugherty's Reserved Claim Should Be Disallowed (Mixed Question of Law and Fact)**

129. For the reasons set out in Section IV.C., *supra,* Daugherty's Reserved Claim is disallowed.

**E. If the Compensation Statement Is an Enforceable Contract, and Highland Has Not Fulfilled Its Obligations Thereunder, Daugherty's Reserved Claim Can Be Estimated in Accordance with Section 502(c) of the Bankruptcy Code (Mixed Question of Law and Fact)**

130. If Daugherty's Reserved Claim is allowed, the Court must estimate it under Section 502(c) of the Bankruptcy Code. Under Section 502(c), the Court is required to estimate contingent and unliquidated claims for allowance purposes in the circumstances present here.[23]

[23] Liles-Tims opined that Daugherty's Reserved Claim cannot be estimated until all disputes concerning the 2008 Audit are finally resolved, if then. Trial Tr. at 90:13-91:8. Liles-Tims' opinion cannot be reconciled with Congress' intent as reflected in the plain and unambiguous terms of Section 502(c)—a provision he acknowledges he never considered. *See* Trial Tr. 89:3-11. Indeed, if Daugherty's expert is right, and Daugherty's Reserved Claim cannot possibly be estimated, then the Reserved Claim should be disallowed as too speculative. The Court is bound to implement the court-approved agreement between Highland and its stakeholders (as reflected in the court-approved Plan and Claimant Trust Agreement) concerning the deadline for the resolution of claims and the commencement of dissolution (*i.e.*, August 11, 2026).

The statute provides: "[t]here *shall be* estimated for purposes of allowance ... any contingent or unliquidated claim, the fixing or liquidation of which ... would unduly delay the administration of the case. " 11 U.S.C. § 502(c) (emphasis added)

131. "The public policy underlying claims estimation under the Code is to facilitate the timely administration of the case by making an expeditious assessment of the value of certain claims which would otherwise unduly delay administration." *In re Perry*, 425 B.R. 323, 381 (Bankr. S.D. Tex. 2010). Thus, where, as here, both prerequisites are met, the bankruptcy court does not merely have discretion to estimate—it has an affirmative, mandatory duty to do so. The method by which the bankruptcy court estimates a claim under Section 502(c) is within the court's broad discretion. *See In re Brints Cotton Mktg., Inc.*, 737 F.2d 1338, 1341 (5th Cir. 1984) ("A bankruptcy court's estimation of the value of an unliquidated claim, the liquidation of which would unduly delay the proceedings, may be disturbed on appellate review only in the event of an abuse of discretion.").

**F. Failure to Estimate Daugherty's Reserved Claim Before August 11, 2026 Would Unduly Delay the Administration of Highland's Bankruptcy Case**

132. Daugherty's Claim, which is both contingent and unliquidated, is the type of claim that, if allowed, must be estimated under Section 502(c). As set forth above, the Plan was confirmed in February 2021 and has been effective since August 2021. Under the Sunset Provisions[24] in the Plan, CTA, Confirmation Order, and related extension orders, Highland must resolve all disputed claims, and the Claimant Trust must commence the Dissolution Process, by August 11, 2026. Trial Tr. at 209:6-211:13. The Reserved Claim is the last unresolved claim against Highland's estate. The parties agree that final resolution of the appeal of the 2008 Tax

[24] *See generally* Highland's *Motion for an Order Further Extending Duration of Trusts* [Bankr. Docket No. 4213] (the "Extension Motion"). This Court granted the Extension Motion and extended the life of the Claimant Trust only until August 11, 2026. Bankr. Docket No. 4298 (the "Extension Order").

Year Audit will not be complete by the court-ordered and Plan-mandated August 11, 2026 deadline to resolve the estate's outstanding claims and commence the Dissolution Process. *See* Trial Tr. at 173:18-174:1 (Liles-Tims), 209:11-210:3 (Seery). Thus, if the Reserve Claim is not estimated by August 11, 2026, Highland will violate the Confirmation Order and the Extension Order, and the administration of the Bankruptcy Case will be unduly delayed. Accordingly, this Court is required to estimate Daugherty's Claim under Section 502(c).

## G. If Daugherty's Reserved Claim Can Be Estimated, How Much Is the Reserved Claim Estimated to Be for Purposes of Allowance?

133. *[This section is contingent on the Court's finding that the Reserved Claim should be allowed in an estimated amount.]*

134. The Court has sufficient information to apply a reasonable methodology to estimate Daugherty's Reserved Claim. The only inputs subject to estimation are (a) the amount of adjustment to Highland's 2008 partnership return (the "HCMLP Income Adjustment") and (b) whether any penalty or interest should be included. Once the HCMLP Income Adjustment is estimated, the amount of Daugherty's Reserved Claim is determined by a simple arithmetical formula: (a) HCMLP Income Adjustment x Daugherty's 0.7403% interest in the partnership as of the December 31, 2008 x 35% (the maximum personal federal income tax rate as of December 31, 2008). The product of those amounts represents Daugherty's tax underpayment. Then, if the Court determines that a penalty and interest apply, those amounts are added to the underpayment.

135. Highland has advanced five possible amounts for the HCMLP Income Adjustment: (i) the IRS's original determination $166,332,713 at the conclusion of the 2008 Tax Year Audit (*see* Highland Ex. 65);[25] (ii) the IRS's 2024 $129,528,079 income adjustment offer to

[25] *See* Highland Ex. 15 (Form 4605-A). And note further that while the Form 4605-A contains a $166 million adjustment to the Highland 2008 portfolio income, it also affirms $546 million of 2008 ordinary losses that Highland had reflected

the tax matters partner of a discounted settlement (Highland Exs. 21 and 65 n. 8); (iii) Dondero's 2025 $8 million full settlement offer to the IRS (Highland Exs. 22 and 65 n. 6); (iv) a complete reversal of the 2008 Tax Year Audit with $0.00 HCMLP Income Adjustment; or (v) a mid-point hypothetical discounted settlement based on the simple average of the two extremes: 2008 Tax Year Audit income adjustment and a reversal of the 2008 Tax Year Audit with no adjustment. The results are set forth in the demonstrative exhibit, Highland Ex. 65, which was the subject of extensive testimony at trial.

136. In consideration of the testimony concerning the amounts at issue and the state of the tax matters partner's discussions with the IRS, the Court finds that the $83,166,357 mid-point between (a) the $166,332,713 HCMLP Income Adjustment demanded by the 2008 Tax Year Audit and (b) a reversal of the 2008 Tax Year Audit resulting in a $0.00 HCMLP Income Adjustment constitutes a reasonable basis for estimation of the HCMLP Income Adjustment as it is both (i) the mid-point of the lowest and highest outcomes and (ii) close to the mid-point of the known IRS settlement offers and tax-matters partner counter-offer.

137. An estimated $83,166,357 HCMLP Income Adjustment results in an income adjustment to Daugherty of $615,681 (adjustment (x) 0.7403% partnership interest) with a resulting estimated tax underpayment by Daugherty of $215,488 ((adjustment (x) 0.7403%) (x) 35% (the highest marginal federal tax rate in 2009)). The resulting estimated Reserved Claim, without penalty or interest, is therefore **$215,488**.

138. The Court will not hold Highland liable for any penalties or interest that Daugherty could be required to pay on account of an "underpayment" amount resulting from the HCMLP

on its original tax return. The income adjustment, and the subsequent dispute over the adjustment, affect only roughly 30% of the overall losses Highland reported.

Income Adjustment because (a) the Compensation Statement makes no reference to penalties or interest whatsoever, nor does it provide for any indemnification or similar obligations with respect thereto (and in fact, contemporaneous evidence (*i.e.*, the Draft Separation Agreement, including the Rejected Indemnity (Daugherty Ex. 44 § 3(b)(ii))) contradicts such a notion), (b) Daugherty could have mitigated his damages—including avoiding penalties and interest—by accepting the IRS's proposed adjustments pursuant to Form 870-PT (Highland Ex. 18), and (c) the benefit to Daugherty of the use of the Received Refund substantially exceeds any penalties and interest that would have accrued to the Petition Date.

### H. Whether Daugherty's Breach of Contract Counterclaim Is Barred by the Statute of Limitations?

139. Upon review of the law cited by Daugherty, Highland respectfully withdraws its affirmative defense based on the statute of limitations.

### I. Highland Fulfilled Its Obligations Under the Books and Records Provision (Mixed Question of Law and Fact)

140. Daugherty bears the burden of proof on this claim. *In re Neria*, No. AP 16-03148, 2022 WL 17254478, at *13 (Bankr. N.D. Tex. Nov. 28, 2022) (Jernigan, J.). The Settlement Agreement contains a Delaware choice of law clause (§ 22). Delaware law therefore controls the Court's interpretation of the Settlement Agreement. *Mozido, Inc. v. Papermaster*, No. A-16-CA-0675-LY, 2017 WL 8161165, at *10 (W.D. Tex. Aug. 14, 2017) (federal court applies forum choice of law rules; Texas law gives effect to contractual choice of law provisions, so Delaware law as chosen law applied to substantive contract law issues and contract interpretation).

141. While Highland offered documentary and testimonial evidence showing that it satisfied its obligations under the Books and Records Provision, Daugherty failed to specifically identify which "books and records" Highland failed to produce or how Highland otherwise breached the Books and Records Provision—and repeatedly failed to contest Highland's

consistent assertions that it had satisfied its obligations under the Books and Records Provision. Daugherty withdrew his claim for damages for breach of the Books and Records Provision and is seeking only specific performance. Trial Tr. at 33:12-16.

142. As set out above, under the Books and Records Provision, Highland agreed to "transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type …. Such transfer will be without any liability or material cost to HCMLP or its affiliates …." Highland Ex. 5 ¶ 8.

143. Daugherty negotiated the Books and Records Provision directly with Highland's Chief Executive Officer, Seery. Daugherty has no recollection about the negotiations of this provision or why the unique phrase "books and records (spreadsheet)" was included. Trial Tr. at 259:17-260:5 (no recollection of meaning of "spreadsheet" or "Highland system"). Seery credibly testified that phrase and accompanying text (a) refers to a specific set of documents and (b) was used to circumscribe the documents Highland would be required to turn over to Daugherty. Trial Tr. at 187:13-189:25.

144. The parties do not disagree that HERA and ERA (a) were shell entities established for the sole purpose of holding limited, passive assets for the benefit of certain then-Highland employees as a compensation vehicle, and (b) never had any of their own employees, offices, servers, email addresses, or operations of any kind. Trial Tr. at 183:17-185:7.

145. On May 5, 2022, shortly after the Court approved the Settlement Agreement, Highland delivered to Daugherty "HERA and ERA books and records" available on Highland's system, together with tax documents, and asserted that, subject only to a final review, it had

fulfilled its obligations under the Books and Records Provision. Trial Tr. at 192:6-193:15; Daugherty Ex. 33.

146. On October 19, 2022, in response to Daugherty's further requests for "back up" information, Highland provided additional information concerning HERA and ERA (including invoices backing up virtually all of HERA's historically recorded expenses reflected in the records previously delivered to Daugherty) and reiterated its position that it had "satisfied all of its obligations under the settlement agreement, and our involvement in HERA/ERA (your entities) will be complete." Daugherty Ex. 34; *see* Trial Tr. at 194:22-196:12. Daugherty admitted that he did not take issue with Highland's position. Trial Tr. at 197:18-22.

147. Daugherty did not raise the issue of "books and records" again until January 30, 2024, when his counsel requested that Highland supplement its document production to include Word, Excel, and PowerPoint documents, email correspondence, and legal communications, among others, all with corresponding metadata, and requesting that Highland employ an outside vendor at its expense to collect and produce the documents. Highland Ex. 53.

148. Klos testified without challenge that Highland had produced all the HERA/ERA legal invoices it could find—over 300—constituting 90% of such invoices. Trial Tr. at 81:6-11.

149. Before Daugherty received a substantive response from Highland, on February 29, 2024, HERA (under Daugherty's control) filed its original complaint against 24 individuals, law firms, and other entities. *See* Trial Tr. at 198:22-199:13; Highland Ex. 54 (York March 1, 2024 email). A few days later, on March 5, 2024, Highland's counsel responded to the January 30, 2024 letter and stood by Highland's prior statements that it had fulfilled its obligations under the Settlement Agreement. Highland Ex. 54.

150. On May 10, 2024, different counsel for Daugherty again demanded a broad set of documents concerning HERA and ERA that had been demanded on January 30, 2024 and again requested Highland's hiring of an outside vendor. Highland Ex 53. Highland responded promptly and again rejected Daugherty's newest demands, reiterating that it believed that it had fulfilled its obligations under the Books and Records Provision and inviting Daugherty to seek judicial relief to finally bring the matter to a close. Daugherty Ex. 35.

151. Daugherty did not seek judicial resolution at that time, notwithstanding that he had commenced an action in federal district court on behalf of HERA and ERA (the "HERA Action"), knowing that Highland would not produce any further documents concerning those entities. *See* Highland Ex. 1 ¶¶ 12-13 (Counterclaim). It was only in October 2025, three and a half years after Highland informed him that it had fulfilled its obligations under the Books and Records Provision, that Daugherty finally sought to enforce his claimed rights—and then, only as a counterclaim.

152. The Court finds that Highland fulfilled its obligations and did not breach the Books and Records Provision. As a matter of Delaware law, the Books and Records Provision is not ambiguous, as the term has a defined meaning in Delaware law:

> Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning. Where a word has attained the status of a term of art and is used in a technical context, the technical meaning is preferred over the common or ordinary meaning. When established legal terminology is used in a legal instrument, a court will presume that the parties intended to use the established legal meaning of the terms. If a writing is plain and clear on its face, *i.e.*, its language conveys an unmistakable meaning, the writing itself is the sole source for gaining an understanding of intent.

*Penton Bus. Media Holdings, LLC v. Informa PLC*, 252 A.3d 445, 461 (Del. Ch. 2018) (footnotes, quotation mark, and alterations omitted).

153. To that end, the Delaware Court of Chancery has stated that "the meaning of the term 'books and records' can readily be understood through § 18–305 of the LLC Act and through its corporate law and limited partnership law counterparts, 8 Del. C. § 220 and 6 Del. C. § 17–305, respectively."[26] *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, 2002 Del. Ch. LEXIS 102, at *7 n.3 (Del. Ch. Jan. 29, 2002) (finding tax returns were within the scope of a contractual "books and records" provision).

154. The Delaware Limited Liability Company Act, 6 Del. C. § 18-305(a), generally identifies the statutory base-level books and records that a Delaware LLC must provide to its managers for inspection:

> 1) True and full information regarding the status of the business and financial condition of the limited liability company;
>
> (2) Promptly after becoming available, a copy of the limited liability company's federal, state and local income tax returns for each year;
>
> (3) A current list of the name and last known business, residence or mailing address of each member and manager;
>
> (4) A copy of any written limited liability company agreement and certificate of formation and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the limited liability company agreement and any certificate and all amendments thereto have been executed;
>
> (5) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute in the future, and the date on which each became a member; and
>
> (6) Other information regarding the affairs of the limited liability company as is just and reasonable.

[26] 8 Del. C. § 220, the corporate books and records provision, sets out defined categories of corporate financial and governance documents and does not have a "just and reasonable" category. The Delaware Limited Partnership Law books and records provision, 6 Del. C. § 17–305, is substantially similar to the Delaware LLC Law's provision.

155. The Transfer Agreements do not describe any "other information" that Highland was required to provide regarding the affairs of HERA and ERA. Daugherty introduced no evidence that might guide an understanding of "other information" potentially included within the Books and Records Provision. He did not put any purported operating agreements, which might shed some light on the information required to be available to members or managers of the companies, into evidence.

156. Given the established and limited meaning of "books and records" in Delaware law and the absence of evidence that the parties intended to give those words some other meaning, Daugherty's contentions in his trial brief that he is entitled to "**all** HERA and ERA materials in Highland's possession" and that he "must receive **everything** Highland possessed **relating to** those entities," (Daugherty Trial Brief ¶ 27 (emphasis added)), are themselves vague and are otherwise not supported by the Books and Records Provision.

157. Instead, as required, Highland provided HERA and ERA's financial, governance and tax records—indeed, Daugherty does not complain that Highland failed to provide information of the types described in items (1) through (5) of the statute—including (as described above), among other things, HERA/ERA's QuickBooks (*i.e.*, financial) information, governance records, and tax returns.

158. The Court also finds that, at Daugherty's request, Highland provided substantial additional business documents to Daugherty. Daugherty has not proven that the totality of the information Highland provided was *not* "just and reasonable," particularly in light of the limiting proviso that information would be provided "without liability or material cost" to Highland. In the absence of the parties' agreement as to the inclusion of specific categories of documents beyond the scope of the matters set out in items (1)-(5) of the Delaware LLC Law, and given

Highland's provision of extensive information beyond that scope, the Court finds that Daugherty's requests for "all" documents or documents that "related to" HERA and ERA were not "just and reasonable" and Highland was under no obligation to satisfy them. The Court thus finds that Highland did not breach the Books and Records Provision.

### J. <u>Daugherty Withdrew His Claim for Attorneys' Fees</u>

159. Daugherty has stated that he has withdrawn his claim for attorneys' fees for claimed violation of the stay provision of the Settlement Agreement "without prejudice" in light of the Court's rulings that this matter could go forward. Trial Tr. at 33:17-34:7.

## V. <u>CONCLUSION</u>

160. For the reasons set forth above, the Court concludes as follows:

- [If Claim 205 is disallowed] Highland's First Claim for Relief is granted, and Claim 205 is disallowed;
- [If Claim 205 is not disallowed] Highland's First Claim for Relief is denied, and Claim 205 shall be allowed;
- [If Claim 205 is disallowed] Highland's Second Claim for Relief is dismissed as moot;
- [If Claim 205 is not disallowed] On Highland's Second Claim for Relief, for estimation of Claim 205, the Court estimates Claim 205 in the allowed amount of $[215,488];
- On Highland's Third Claim for Relief, for subordination of Claim 205, that Highland has withdrawn the claim and it is therefore denied;
- On Daugherty's Counterclaim Count I, for a determination that Highland has breached the Books and Records Provision of the Settlement Agreement, that Highland has not breached the Settlement Agreement;
- On Daugherty's Counterclaim Count II, that Daugherty's demand for specific performance of the Books and Records Provision of the Settlement Agreement is denied;
- On Daugherty's Counterclaim Count III, Daugherty's demand for attorneys' fees, that Daugherty has withdrawn the claim and it is therefore denied.

Dated: June 5, 2026

**PACHULSKI STANG ZIEHL & JONES LLP**
Jeffrey N. Pomerantz (CA Bar No. 143717)
John A. Morris (NY Bar No. 2405397)
Gregory V. Demo (NY Bar No. 5371992)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com

-and-

**HAYWARD PLLC**
*/s/ Zachery Z. Annable*
Melissa S. Hayward
Texas Bar No. 24044908
MHayward@HaywardFirm.com
Zachery Z. Annable
Texas Bar No. 24053075
ZAnnable@HaywardFirm.com
10501 N. Central Expy, Ste. 106
Dallas, Texas 75231
Tel: (972) 755-7100
Fax: (972) 755-7110

*Counsel for Plaintiff/Counter-Defendant Highland Capital Management, L.P.*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 5, 2026, a true and correct copy of the foregoing *Post-Trial Proposed Findings of Fact and Conclusions of Law* was served electronically via the Court's CM/ECF system upon all parties receiving electronic notice in this Adversary Proceeding.

*/s/ Zachery Z. Annable*
Zachery Z. Annable

Jason S. Brookner (Texas Bar No. 24033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
J. Reid Burley (Texas Bar No. 24109675)
Drake M. Rayshell (Texas Bar No. 24118507)
GRAY REED
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | Case No. 19-34054 (BWO) |
| Reorganized Debtor. | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| Plaintiff, | § | |
| v. | § | Adversary No. 25-03055 |
| PATRICK HAGAMAN DAUGHERTY, | § | |
| Defendant. | § | |

**PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW FILED BY
<u>DEFENDANT AND COUNTER-PLAINTIFF PATRICK HAGAMAN DAUGHERTY</u>**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, TX 75201.

Patrick Hagaman Daugherty ("Daugherty"), Defendant and Counter-Plaintiff in this adversary proceeding, hereby submits these Proposed Findings of Fact and Conclusions of Law.

If any finding of fact is in truth a conclusion of law, or if any conclusions stated is in truth a finding of fact, or if any finding or conclusion is a mixed questions of fact and law, it shall be deemed so and adopted as such.

**PROPOSED FINDINGS OF FACT**

1. Highland Capital Management, L.P. ("Highland") is a Delaware limited partnership that filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 16, 2019. Highland's bankruptcy case is pending in this Court under Case No. 19-34054.

2. On February 22, 2021, the Court entered an order confirming Highland's Fifth Amended Plan of Reorganization (the "Plan"). The Plan became effective on August 11, 2021. (PD-09.)

3. Patrick Hagaman Daugherty is a former senior employee of Highland who was hired on April 3, 1998. During his employment, Daugherty became eligible to participate in Highland's long-term incentive plan and became a profits-interest partner of Highland. (Ex. H-13; Trial Tr. at 246:21-247:10.)

4. On February 27, 2009, Highland provided Daugherty with a Comprehensive Compensation and Benefits Statement for calendar year 2008 (the "Compensation Statement" or "2009 Statement"). The Compensation Statement included, as part of Daugherty's "Earnings and Awards," a line item for a "2008 Tax Refund" in the amount of $1,475,816. (Ex. H-13; Trial Tr. at 219:17-20.)

5. The Compensation Statement contained the following language regarding the 2008 Tax Refund: "Refund is an estimated amount. If actual refund deviates materially from

estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months." (Ex. H-13.)

6. The 2008 Tax Refund was included as part of Daugherty's total "Earnings and Awards" for his service as an employee of Highland during 2008. Highland was unable to pay cash bonuses due to the financial crisis and restrictions imposed by its bank lenders, and instead devised a compensation method through a tax allocation mechanism that would generate a tax refund for senior employees in lieu of a cash bonus. (Trial Tr. at 294:15-295:9.)

7. Daugherty received a tax refund from the IRS on a net basis of approximately $1,157,046 in 2009. (Ex. H-7.)

8. The idea to implement Daugherty's compensation through the tax refund mechanism was not Daugherty's idea. The scheme was devised by James Dondero and Highland's tax personnel. Daugherty testified he would have preferred Highland pay him a cash bonus for 2008. (Trial Tr. at 294:15-23.)

9. In prior Texas state court litigation, Highland used a demonstrative exhibit summarizing Daugherty's compensation that categorized the 2008 Tax Refund under the heading "Bonus." The exhibit listed the identical $1,475,816 amount. James Seery ("Seery"), Highland's current CEO, testified he was not aware of Highland's prior characterization and did not recall seeing the document. (Trial Tr. at 236:13-237:16; Daugherty Ex. 99 (admitted))

10. Seery joined Highland in January 2020 as an independent director. He was not employed at Highland during Daugherty's tenure, was not involved in the preparation of Daugherty's Compensation Statement, and has had no conversations with anyone at Highland about it. He testified he has "no idea" whose idea the tax refund compensation mechanism was. No witness with personal knowledge of the 2008 compensation arrangement testified on behalf of Highland. (Trial Tr. at 177:1-12; *id.* at 212:1-213:7; *id.* at 221:15-21.)

11. On October 31, 2011, Daugherty terminated his employment with Highland. (Trial Tr. at 246:22-23; Ex. H-7.)

12. On or around December 8, 2017, IRS field examiners issued a summary report proposing adjustments to Highland's 2008 partnership tax return (the "IRS Proposed Adjustments"). (Ex. H-20.)

13. On February 3, 2018, Highland sent Daugherty a letter enclosing certain IRS forms, advising that the IRS field examiners had proposed an adjustment. Highland advised Daugherty that "no action on your part is required" and that Highland would "handle the closing conference" and "appeal the proposed adjustment to the IRS Appeals Office." (Ex. H-16.)

14. On July 3, 2018, Highland notified Daugherty that a 60-Day Letter had been issued and that Highland would timely appeal the proposed adjustments to the IRS Independent Office of Appeals. Highland again told Daugherty "you do not need to take any action." (Ex. H-19.)

15. On December 23, 2020, Daugherty filed Proof of Claim No. 205. (*See* Main Bankr. Case No. 19-34054-sgj11 at Doc. No 1533 (authorizing the amended Proof of Claim No. 205, which Daugherty filed on the claims register on December 23, 2020)).

16. On November 21, 2021, Highland and Daugherty executed a Settlement Agreement (the "Settlement Agreement") whereby Daugherty settled his claims against Highland, as more fully set forth in the terms of the Settlement Agreement. The Court entered an order approving the Settlement Agreement on March 8, 2022. The Settlement Agreement resolved all of Daugherty's claims (Claim No. 205) except Daugherty's remaining claim relating to the IRS Audit (the "Reserved Claim"). (Ex. H-5; PD-03.)

17. Under Section 9 of the Settlement Agreement, the parties agreed that "[a]ny litigation by and between the Debtor and Daugherty concerning the validity and amount of the

Reserved Claim shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute" (the "Stay Provision"). (Ex. H-5 at § 9.)

18. IRS Audit Dispute is a defined term in the Settlement Agreement, meaning "the dispute between the Debtor and the IRS…"

19. Daugherty's Reserved Claim was reserved at an amount of $2,650,353 consisting of the full amount of the 2008 Refund ($1,475,816) plus estimated interest of $1,174,537. This amount was estimated as of October 23, 2020. The Debtor reserved all rights to assert any and all defenses to the Reserved Claim. (Ex. H-5 at § 9; PD-05 at ¶ 9.)

20. On May 2, 2025, Highland filed the present adversary complaint seeking (1) disallowance of the remainder of Claim No. 205, (2) estimation of any allowed portion under 11 U.S.C. § 502(c), or (3) subordination of any allowed portion under 11 U.S.C. § 510(b). (PD-01.)

21. On April 10, 2026, Highland withdrew its third cause of action—subordination under § 510(b)—with prejudice through the parties' proposed joint pretrial order. [Doc. 100 at p. 19-20]. On April 13, 2026, the Court entered the parties' joint pretrial, including Highland's withdrawal of its subordination claim with prejudice. [Doc. 101 at p. 19-20].

22. On July 13, 2021, Strand Advisors, Inc., the Tax Matters Partner for Highland, notified Daugherty that the IRS Appeals Office had scheduled an Appeals hearing for September 14-16, 2021. (Expert Report of Liles-Tims at ¶ 21.)

23. On May 31, 2024, Highland's Tax Matters Partner submitted a counteroffer to the IRS Office of Appeals as part of mediation procedures, confirming continued active dispute of the IRS Audit. (Expert Report of Liles-Tims at ¶ 24.)

24. On June 26, 2024, Highland's Tax Matters Partner met with the IRS Office of Appeals team to further discuss settlement positions and narrow outstanding issues. (Expert Report of Liles-Tims at ¶ 25.)

25. On February 28, 2025, Highland's Tax Matters Partner's counsel submitted a revised settlement counteroffer to the IRS Office of Appeals and renewed its request for post-Appeals mediation, confirming that no final IRS determination had yet been made. (Expert Report of Liles-Tims at ¶ 26.)

26. As of April 16, 2026, the date of the final hearing in this adversary proceeding, Daugherty has received no notice of a final settlement or resolution of the IRS Audit.

27. As of the date of final hearing in this adversary proceeding, it is unknown when, if, or how the 2008 IRS Audit will be finally resolved.

28. Before the Plan's effective date, Highland's independent board—including Seery—controlled Strand Advisors and had the legal authority to resolve the IRS audit dispute. Highland chose not to accept or settle the IRS' proposed adjustments. Seery testified that Highland "certainly would have been sued by Mr. Dondero" and that he did not think Highland "ever thought of" accepting the audit result. After the effective date, control of Strand reverted to Dondero. Daugherty has never had authority to resolve the IRS audit at the partnership level. (Trial Tr. at 227:23-228:19; *id.* at 244:10-16.)

29. Daugherty's "damage calculation cannot be made until Highland's Tax Matters Partner resolves the IRS Audit" because the audit remains ongoing and unresolved, with no expected timeline for completion. (Trial Tr. at 89:19-23.)

30. Without a final IRS determination, the underlying inputs necessary for a reliable damage calculation do not exist.

31. T.J. Liles-Tims, Daugherty's expert witness, identified the following variables that remain unknown and prevent a reliable estimate: (a) the final adjustment type (income, deductions, etc.); (b) the total partnership adjustment amount; (c) Daugherty's partner allocation percentage for each adjustment item; (d) Daugherty's marginal tax rate at the time of any assessment; (e) the partnership basis impact; (f) the applicability and amount of any

penalties; and (g) the amount of interest calculated based on the underpayment amount and time outstanding. (Trial Tr. at 88-90.)

32. Highland has had "no idea" of Daugherty's tax attributes since 2012 and had no knowledge of whether he invested the refund money. (Trial Tr. at 82:22-83:9 (Court: "[…]you have no idea whether he invested that money or what his investments have or haven't done?" Klos: "Correct." Court: "[…]Highland would have no idea what his tax attributes are, whether he has losses or gains or income?" Klos: "…[Y]es, I don't have knowledge of those periods.").)

33. At the November 17, 2020 claim estimation hearing, Highland's own counsel argued that Daugherty's tax claim was "contingent" and that "there is no definite liability to the IRS." The Court agreed that the tax refund claim was "at best, contingent" and declined to allow it for voting purposes. (PD-36 at 17:15-18:5.)

34. Under the Plan and Claimant Trust Agreement, Class 10 and Class 11 interests cannot vest until the Claimant Trustee certifies to the Bankruptcy Court that all holders of Class 8 claims have been paid indefeasibly in full, including all accrued and unpaid post-petition interest at the Federal Judgment Rate from the Petition Date. Daugherty's Reserved Claim is a Class 8 claim entitled to such interest. To date, the Claimant Trustee has not filed a certification that all Class 8 claims have been paid. (PD-09 at p. 44; PD-09 at p. 102 (Plan § 27); PD-10 at § 1.1(h); PD-10 at § 5.1(c).)

35. Seery testified that upon dissolution of the Claimant Trust, residual funds flow to an indemnity trust that Seery solely administers. Once Seery determines no further indemnification obligations exist, remaining funds—approximately $45 million—will be distributed to Hunter Mountain Investment Trust, a Class 11 holder. Daugherty's unresolved Reserved Claim is a Class 8 unsecured claim senior to those Class 10 and Class 11 interests. (Trial Tr. at 241:17-243:11.)

36. Under Section 8 of the Settlement Agreement, Highland agreed to "transfer its interests in HERA and ERA to Daugherty." The Settlement Agreement further provided that "[s]uch transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system." (Ex. H-5 at § 8; Trial Tr. at 185:8-14.)

37. The stated purpose of the transfer under Section 8 was "[t]o facilitate recovery of such potential claims" belonging to HERA and ERA against persons or entities not released under the Settlement Agreement. (Ex. H-5 at § 8.)

38. Despite repeated demands, Highland has refused to produce all HERA and ERA books and records in its possession. Highland's position is that emails do not constitute "books and records" and that it has fulfilled its obligations. Daugherty and HERA dispute this position. (Trial Tr. at 193:12-194:4.)

39. Neither HERA nor ERA maintains its own email accounts or servers. Rather, all documents and communications related to HERA and ERA are in Highland's possession, custody, or control.

40. HERA is currently engaged in litigation with James Dondero and others in the case styled Highland Employee Retention Assets LLC v. James Dondero, et al., Civil Action No. 3:24-cv-00498-K, pending in the United States District Court for the Northern District of Texas. That litigation centers on Dondero's mismanagement of monetary contributions that Highland made on behalf of its employees into retention vehicles managed by HERA. (Daugherty Counterclaim at ¶ 13.)

41. Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him. Highland does not contest Daugherty's full performance of the Settlement Agreement. (Joint Pretrial Order.)

42. On or about October 19, 2022, Highland's counsel communicated that Highland considered its obligations under Section 8 complete, stating: "Upon transmission of the

information described above, [Highland] will have satisfied all of its obligations under the settlement agreement, and our involvement in HERA/ERA (your entities) will be complete." Highland nonetheless refused to produce certain documents that Abrams & Bayliss — not Highland — ultimately produced to HERA in connection with HERA's litigation against Dondero, Okada, Ellington, and others. These documents fall within Highland's "interests" in HERA and ERA. (Ex. H-3; Main Bankr. Case No. 19-34054, Doc. No. 4449 at Ex. B, Decl. of P. Daugherty at ¶¶ 2–3; Ex. B-1; Ex. B-2.)

**PROPOSED CONCLUSIONS OF LAW**

1. The Fifth Circuit has held when analyzing 11 U.S.C. § 502, "a party correctly filing a proof of claim is deemed to have established a prima facie case against the debtor's assets." *In re Fid. Holding Co., Ltd.,* 837 F.2d 696, 698 (5th Cir. 1988). Under Section 502(a) of the Code, a proof of claim filed pursuant to Section 501 "is deemed allowed, unless a party in interest…objections." 11 U.S.C. § 502(a).

2. Upon the filing of an objection, the burden shifts to the debtor as the objecting party. Once the objection is on file, the objecting party must "produce evidence tending to defeat the claim that is of a probative force equal to that of the creditor's proof of claim." *In re Simmons*, 765 F.2d 547, 552 (5th Cir. 1985). And if the objecting party does not produce sufficient evidence, "the claimant will prevail." *In re Fid. Holding Co., Ltd.*, 837 F.2d at 698. It is, therefore, critical to appreciate that "mere allegations unsupported by evidence are insufficient to rebut the prima facie case." *Matter of TransAmerican Natural Gas Corp.*, 978 F.2d 1409, 1416 (5th Cir. 1992). Only if the objecting party presents sufficient evidence to rebut the claimant's prima facie case does the ultimate burden shift back to the claimant.

3. When the ultimate burden rests with the claimant, the claimant must merely prove the merits of its claim by a preponderance of the evidence. *See In re Fid. Holding Co., Ltd.*, 837 F.2d at 698.

4. The parties do not dispute that Texas law governs Daugherty's Reserved Claim. In Texas, a unilateral contract is "created by the promisor promising a benefit if the promisee performs. The contract becomes enforceable when the promisee performs." *Vanegas v. American Energy Services*, 302 S.W.3d 299, 302 (Tex. 2009) (citing *Plano Surgery Ctr. v. New You Weight Mgmt. Ctr.*, 265 S.W.3d 496, 503 (Tex. App.—Dallas 2008, no pet.)). In the employment context, a unilateral contract is created when "an employer promises an employee certain benefits in exchange for the employee's performance, and the employee performs." *City of Hous. v. Williams*, 353 S.W.3d 128, 136 (Tex. 2011). For instance, in *Vanegas*, the supreme court held that a unilateral contract could be formed when an employer offered to share proceeds of a sale of the company with employees if the employees stayed employed until the sale occurred. 302 S.W.3d at 303. In that case, the supreme court held that "[w]hether the promise was illusory at the time it was made is irrelevant; what matters is whether the promise became enforceable by the time of the breach." *Id.* (quoting 2 Joseph M. Perillo & Helen Hadjiyannakis Bender, *Corbin on Contracts* § 6.2 (1995)) ("[U]nilateral contract analysis is applicable to the employer's promise to pay a bonus or pension to an employee in case the latter continues to serve for a stated period.").

5. The Compensation Statement constitutes an enforceable unilateral contract between Highland and Daugherty.

6. It is well-established law in Texas that "instruments pertaining to the same transaction may be read together to ascertain the parties' intent, even if the parties executed the instruments at different times and the instruments do not expressly refer to each other." *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 840 (Tex. 2000) (internal citations omitted); *see also Jim Walter Homes, Inc. v. Scheunemann*, 668 S.W.2d 324, 327 (Tex. 1984) (same); *Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) (same). "[A] court may determine, as a matter of law, that multiple documents comprise a written contract." *Id.* (citing

*Jones*, 614 S.W.2d at 98; *Miles v. Martin*, 321 S.W.2d 62, 65 (Tex. 1959); *Braniff Inv. Co. v. Robertson*, 81 S.W.2d 45, 47 (Tex. 1935)).

7. The supreme court has stated that together, the documents must define the "essential terms" of the contract, including "'the time of performance, the price to be paid, … [and] the service to be rendered.'" *City of Hous.*, 353 S.W.3d at 139–40 (citing *Kirby Lake Dev. Ltd. v. Clear Lake City Water Auth.*, 320 S.W.3d 829, 838 (Tex. 2010); *Liberto v. D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006)). In the context of employment agreements, "typical essential terms include, among others, 'compensation, duties or responsibilities.'" *Id.* (citing *Martin v. Credit Prot. Ass'n Inc.*, 793 S.W.2d 667, 669 (Tex. 1990)). Courts applying Texas law must determine whether the referenced documents, read together, "demonstrate a manifestation of [the employer's] intention to be bound to provide [the referenced benefits.]" *Parvis-Khyavi v. Alcon Laboratories, Inc.*, 395 S.W.3d 376, 382 (Tex. App. —Dallas 2013, pet. denied) (citing *City of Hous.*, 353 S.W.3d at 138).

8. Here, the applicable documents between Highland and Daugherty are the Amended Employment Agreement and the Compensation Statement. The Amended Employment Agreement provides, at Article III, subsection (a):

> The annual salary (the "**Base Salary**") payable to [Daugherty] during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to [Daugherty], and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon [Daugherty's] performance and shall be determined by the Company in its sole discretion. In addition, the Company may from time to time award bonuses to [Daugherty] based on such criteria as the Company may establish in its discretion. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. [Daugherty] must be employed on the payment date(s) in order to be eligible for the bonus. The payment of salary and bonuses shall be subject to federal, state, and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of [Daugherty's] compensation does not constitute a guarantee of employment for any specified period of time.

(Ex. H-11, p. 4, art. III.1(a) (emphasis in original)). In the Amended Employment Agreement, Highland sets out specific conditions for Daugherty's eligibility for bonus compensation, and the services to be rendered by Daugherty. (*See id.* at p. 3, art. II.1-2). Additionally, Article 3(a) of the Amended Employment Agreement states that, on an annual basis, Highland was to determine Daugherty's annual salary and bonus compensation for each year and communicate the same "in writing" in the annual Compensation Statement. Thus, the Amended Employment Agreement, read alone, does not establish Highland's "intention to be bound to provide" bonus compensation to Daugherty. *Alcon Laboratories*, 395 S.W.3d at 382.

9. However, the Compensation Statement, when read in conjunction with the Employment Agreement, established a binding requirement on Highland to guarantee Daugherty the compensation set forth therein, including the 2008 Tax Refund and the promise to "fairly adjust" other compensation if the refund deviated materially from the estimate.

10. Daugherty possesses an allowable claim against Highland. Daugherty's Reserved Claim is properly allowed under 11 U.S.C. § 502(a), as it was timely filed in Proof of Claim No. 205 and is supported by the Compensation Statement's express promise that "[i]f actual refund deviates materially from estimate, other compensation will be fairly adjusted." Highland has failed to carry its burden to demonstrate that the claim should be disallowed. (Ex. H-13; Ex. H-5 at § 9.)

11. Daugherty's tax liability arising from the 2008 IRS Audit of Highland's partnership tax return is uncertain. The IRS has not made a final determination with respect to the audit. Highland's Tax Matters Partner continues to actively negotiate with the IRS Office of Appeals, most recently submitting a revised settlement counteroffer on February 28, 2025. The ultimate amount of any tax liability, including penalties and interest, cannot be determined or reasonably estimated until the audit is resolved.

12. The Court cannot reliably estimate Daugherty's claim under 11 U.S.C. § 502(c) because of the uncertainty surrounding the IRS Audit. Section 502(c) provides that a claim "shall be estimated" only when "the fixing or liquidation of which ... would unduly delay the administration of the case." However, estimation is not appropriate where doing so would result in unreliable speculation rather than a reasonable approximation of the claim's value. *See In re Dow Corning Corp.*, 211 B.R. 545, 562 (Bankr. E.D. Mich. 1997).

13. The failure to estimate Daugherty's claim does not constitute "undue delay" within the meaning of Section 502(c). The Court has recognized that estimation is discretionary, not mandatory, and that courts may refrain from estimating a claim where: (a) the delay would not be "undue"; (b) estimation is not necessary for the plan of reorganization; and (c) estimation would duplicate subsequent proceedings. *In re Dow Corning Corp.*, 211 B.R. at 562–66; *In re Continental Airlines, Inc.,* 57 B.R. 842, 844 (Bankr. S.D. Tex. 1985).

14. The equities weigh in favor of leaving Daugherty's Reserved Claim open until the IRS concludes its audit. If the Court were to estimate Daugherty's claim and that estimated value were less than Daugherty's actual liability as a result of the IRS audit, Daugherty would be without recourse against Highland for money he is owed. As an individual taxpayer with potentially millions of dollars at stake, a premature estimation would be substantially prejudicial to Daugherty.

15. The Stay Provision in the Settlement Agreement provides that litigation concerning the Reserved Claim "shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute." The IRS has not made a final determination. While the Court struck the Stay Provision under Rule 60(b)(6), this does not eliminate the underlying equitable considerations that favor deferring estimation until a final determination exists.

16. Daugherty's Class 8 claim accrues post-petition interest at the Federal Judgment Rate under the Plan and Claimant Trust Agreement. Any estimation that fails to account for



4934-3741-4321

accruing interest as a result of the IRS Audit—and thus accruing liability to Daugherty depending on the ultimate resolution of the IRS Audit—understates Highland's obligation and overstates the residual available for Class 10 and Class 11 interest holders—including Hunter Mountain Investment Trust—cannot vest until such interest is paid. Any estimation that fails to account for accruing interest understates Highland's obligation, overstates the residual available for distribution, and contravenes the confirmed Plan's distribution waterfall. (PD-09 at p. 44; PD-10 at §§ 1.1(h), 5.1(b)-(c).)

17. Highland had the legal authority to resolve the IRS audit through its control of Strand Advisors before the Plan's effective date but chose not to do so. Highland cannot create uncertainty through its own inaction and then invoke that uncertainty to compel premature estimation to Daugherty's detriment.

18. The distribution waterfall further supports the inequity of premature estimation. If Daugherty's Class 8 claim is underestimated, the difference inures to the benefit of Class 10 and Class 11 interest holders—specifically Hunter Mountain Investment Trust, controlled by Dondero—through residual distributions from the indemnity trust that Seery solely administers. Estimation thus risks transferring value from a senior unsecured creditor to subordinated interests controlled by the individual whose decisions as tax matters partner perpetuate the very uncertainty Highland invokes.

19. Highland breached the Settlement Agreement by failing to transfer all of its "interests" in HERA and ERA to Daugherty, including the full scope of books and records. The Settlement Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty" and stated that "[s]uch transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system." (Ex. H-5, § 8).

20. The term "interests" referenced above is a broad and undefined term encompassing all ownership rights, property, data, documents, and records, including emails,

relating to HERA and ERA. The word "include" signals that books and records are one component of the broader "interests" being transferred, not the only thing being transferred. Courts will enforce the plain, ordinary meaning of clear and unambiguous language. *See generally Vill. Practice Mgmt. Co. LLC v. West*, 342 A.3d 295, 314 (Del. 2025).

21. The stated purpose of Section 8 in the Settlement Agreement—"to facilitate the recovery of potential claims"—requires a broad interpretation of Highland's "interests." Daugherty needs complete access to all HERA and ERA materials in Highland's possession to meaningfully pursue those claims. A narrow reading would frustrate the express purpose the parties articulated.

22. Specific performance is the appropriate remedy for Highland's breach of Section 8 of the Settlement Agreement. Specific performance is "the decisively preferable remedy" when a party breaches a contract involving unique subject matter and damages cannot be reasonably calculated. *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 22 (Del. Ch. 2001). The books and records at issue are not fungible assets that can be replaced or monetized.

23. To obtain specific performance under Delaware law, a plaintiff must prove by clear and convincing evidence: (1) a valid contract exists, (2) the plaintiff is ready, willing, and able to perform, (3) a legal remedy would be inadequate, and (4) the balance of equities tips in favor of the party seeking specific performance. *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022). Each element is satisfied here. The validity of the Settlement Agreement is undisputed, and Highland does not contest Daugherty's full performance. (Joint Pretrial Order.) The books and records are the sole repository of information about HERA and ERA's operations and potential claims, making specific performance particularly appropriate where the subject matter is unique. *Osborn ex rel. Osborn v. Kemp*, 991 A.2d 1153, 1161–62 (Del. 2010); *see also IBP*, 789 A.2d at 82–83.

24. A legal remedy would be inadequate because any damages calculation would be speculative — the HERA litigation is at the motion to dismiss stage with no outcome in sight. Specific performance "entirely eliminat[es] the need for a speculative determination of damages." *IBP*, 789 A.2d at 83. The balance of equities tips decidedly in Daugherty's favor. Daugherty comes to this Court with clean hands. *Osborn*, 991 A.2d at 1162. The relief is discrete and readily enforceable — the Court need only order Highland to produce records it already possesses — and Highland can demonstrate no hardship beyond mere inconvenience. *Id.*; *26 Capital Acquisition Corp. v. Tiger Resort Asia Ltd.*, 309 A.3d 434, 466–72 (Del. Ch. 2023).

25. Delaware courts "read a contract as a whole and give each provision and term effect, so as not to render any part of the contract mere surplusage." *Osborn*, 991 A.2d at 1159. Highland's position — that it may retain HERA and ERA's books and records while claiming to have transferred the relevant interests — eviscerates the express purpose of Section 8. *See Lee Builders, Inc. v. Wells*, 92 A.2d 710, 715 (Del. Ch. 1952) (granting specific performance where parties' intent was obvious despite arguments about contractual uncertainty). Denying specific performance would defeat the very purpose for which the parties agreed to Section 8.

26. Highland is the sole custodian of the HERA and ERA books and records, as well as documents and communications, that it agreed to turn over to Daugherty. If the Court does not order Highland to comply with the terms of the Settlement Agreement and turn over all of the books and records, documents and communications, Daugherty will be irreparably harmed and HERA will be unable to adequately pursue its litigation against Dondero, Okada, Ellington, and others.

27. Daugherty's claim for breach of the books and records provision in the Settlement Agreement is timely. Federal courts located in Texas apply Texas' four-year statute of limitations to breach of contract claims. Federal courts apply (a) the substantive law of the

contractually chosen state and (b)Texas procedural law to procedural matters. *See Cypress/Spanish Ft. I, L.P. v. Prof. Serv. Indus., Inc.*, 814 F. Supp. 2d 698, 708 (N.D. Tex. 2011). Texas considers statutes of limitation procedural, not substantive. *See id.*; *see also Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999); *Hunt Oil Co. v. Live Oak Energy, Inc.*, 313 S.W.3d 384, 387 (Tex. App.—Dallas 2009). The statute of limitations in Texas for breach of contract claims is four years. Tex. Civ. Prac. & Rem. Code §§ 16.004, 16.051; *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 707 (Tex. 2021). The Court entered the order approving the parties' Settlement Agreement in March 2022, and Daugherty filed his breach of contract claim on October 3, 2025 — less than four years later.

28. In adversary proceedings, bankruptcy courts engage in the same choice-of-law analysis as a federal district court. *In re Soporex, Inc.*, 446 B.R. 750, 760–61 (Bankr. N.D. Tex. 2011); *In re Vantage Benefits Admins., Inc.*, No. 18-31351-SGJ-7, 2024 WL 3842796, at *17 (Bankr. N.D. Tex. Aug. 14, 2024). Regardless of the Delaware choice-of-law provision, Texas' four-year statute applies. *See Cypress/Spanish*, 814 F. Supp. 2d at 709; *Hunter v. Berkshire Hathaway, Inc.*, No. 4:14-CV-663-Y, 2017 WL 11679602, at *4 (N.D. Tex. May 31, 2017); *Albritton v. Acclarent, Inc.*, No. 3:16-cv-03340-M, 2017 WL 6628122, at *6 (N.D. Tex. Dec. 27, 2017).

29. The parties executed the Settlement Agreement on November 22, 2021 — also less than four years before Daugherty's October 2025 claim. Still, even if Delaware's three-year statute of limitations applied, Daugherty's claim would be timely. In Delaware, a cause of action accrues when the contract is broken. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292 (Del. 1982); *Lehman Bros. Holdings Inc. v. Kee*, 268 A.3d 178, 185 (Del. 2021). At the earliest, Highland's breach accrued on October 19, 2022 — the date Highland communicated that it had completed its performance when it had not — and Daugherty filed less than three years later. (Ex. H-3.)

30. Additionally, Daugherty's claim for breach of the books and records provision was brought as a counterclaim in this adversary proceeding. Daugherty's claim is also timely filed under Texas Civil Practice and Remedies Code § 16.069 because Daugherty filed his counterclaim on or before his answer was due.

Dated: June 5, 2026.

Respectfully submitted,

GRAY REED

By: */s/ Andrew K. York*
Jason S. Brookner
Texas Bar No. 24033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507

1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this 5th day of June 2026, via the CM/ECF system and/or email.

*/s/ Andrew K. York*
ANDREW K. YORK

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| ______________________________ | § | ______________________________ |
| | § | |
| Highland Capital Management, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Adversary No. 25-03055-bwo |
| | § | |
| Patrick Hagaman Daugherty, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**<u>JUDGMENT</u>**

Consistent with the Memorandum Opinion issued on this date, it is hereby

ORDERED, ADJUDGED, AND DECREED that Patrick Hagaman Daugherty's ("Daugherty") Reserved Claim[1] is disallowed; it is further

ORDERED, ADJUDGED, AND DECREED that Highland Capital Management, L.P. ("Highland") did not breach its obligations under the Settlement Agreement between Highland and Daugherty dated November 22, 2021, and approved by this Court on March 8, 2022 (the "Settlement Agreement"); it is further

ORDERED, ADJUDGED, AND DECREED that Daugherty's request for specific performance of the Settlement Agreement is denied; and it is further

ORDERED, ADJUDGED, AND DECREED that any relief not expressly granted herein is denied.

This Judgment disposes of all parties and all claims in this adversary proceeding.

### End of Judgment ###

[1] "Reserved Claim" has the same meaning given to it in the Court's Memorandum Opinion.

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| ______________________________ | § | ______________________________ |
| | § | |
| Highland Capital Management, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Adversary No. 25-03055-bwo |
| | § | |
| Patrick Hagaman Daugherty, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**<u>MEMORANDUM OPINION</u>**

The Court issues this Memorandum Opinion in the action between Plaintiff and Counter-Defendant, Highland Capital Management, L.P. ("Highland"), and Patrick Hagaman Daugherty ("Daugherty"), Defendant and Counter-Plaintiff.

Highland contests the validity of Daugherty's proof of claim filed in its related bankruptcy case and seeks to disallow the claim. In the alternative, Highland asks the Court to estimate Daugherty's contingent claim under 11 U.S.C. § 502(c) for purposes of making a distribution under Highland's confirmed chapter 11 plan.[1] Daugherty's counterclaims allege that Highland breached a prior settlement agreement between the parties, in which Highland agreed to turnover the Highland Employee Retention Assets LLC ("HERA") and ERA Management, LLC ("ERA") books and records. Daugherty seeks specific performance of the settlement agreement.[2] Trial was held on April 17, 2026, after which the parties submitted proposed findings of fact and conclusions of law.

The Court's findings and conclusions are based upon the record before the Court and are issued under Rule 52 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

[1] Prior to trial, Highland withdrew its claim for subordination under 11 U.S.C. § 510(b). Unless otherwise stated, all "§" or "section" references are to Tile 11 of the United States Code (the "Bankruptcy Code").

[2] Prior to trial, Daugherty withdrew his claim for attorney's fees.

## FINDINGS OF FACT

***Highland's Bankruptcy Case and Daugherty's Reserved Claim***

1. On October 16, 2019, Highland filed its petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy case. Case No. 19-34054, Dkt. No. 1. In Highland's bankruptcy case, Daugherty filed several proofs of claim that culminated in proof of claim number 205, which is subject to the parties' dispute in this adversary proceeding. Dkt. No. 101, ¶ 2.[3]

2. On November 24, 2020, this Court entered an Order temporarily allowing Daughtery's claim in the amount of $9,134,019.00 for voting purposes only. Case No. 19-34054, Dkt. No. 1474. Then, on February 22, 2021, this Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief*.[4] *Id.*, Dkt. No. 1943. Highland's confirmed plan became effective on August 11, 2021, at which time a claimant trust was established over which James P. Seery, Highland's Chief Executive Officer, was appointed trustee. *Id.*, Dkt. Nos. 1808, 2700.

3. Following confirmation, on November 22, 2021, Highland and Daugherty executed a settlement agreement. Dkt. No. 101, ¶ 19. Among other things, the settlement agreement resolved Daugherty's claims against Highland's bankruptcy estate, save for one, and required Highland to turnover HERA and ERA's

[3] Unless otherwise stated, all "Dkt. No." references herein are to the above-captioned adversary proceeding.

[4] The Confirmation Order was subsequently modified for reasons irrelevant to this dispute. *See* Case No. 19-34054, Dkt. No. 4378.

books and records to Daugherty. Highland Ex. 5; Daugherty Ex. 3. Below are provisions from the settlement agreement relevant to this dispute:

> 8. HERA and ERA: The Parties acknowledge and agree that as of the date hereof, HERA and ERA have no material assets other than potential claims that may exist against persons or entities not released at or prior to the date hereof, and no claims against the HCMLP Released Parties. The allowed claims provided in paragraph 1 hereof are expressly agreed to in order to satisfy any liability the Debtor may have in connection with the HERA Judgment. To facilitate recovery of such potential claims – which expressly excludes any and all claims by or in the name of HERA and ERA against any of the HCMLP Released Parties -- HCMLP will transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type; including, for the avoidance of doubt, without any representation or warranty as to the merits of the potential claims or the efficacy of the transfer of the potential claims. Such transfer will be without any liability or material cost to HCMLP or its affiliates or the other HCMLP Released Parties, including any liability in respect of any assets that HERA or ERA ever actually or allegedly owned, possessed, or controlled and that were actually or allegedly transferred, conveyed, sold, written off or otherwise disposed of (in any such case, a "Disposition"). In connection with the transfer, HERA and ERA have expressly released the HCMLP Released Parties from any and all claims, including any claims actions or remedies related

to any Disposition, either of them may have against any HCMLP Released Party now or in the future (the "HERA and ERA Release"). Daugherty on behalf of himself and each of the Daugherty Released Parties acknowledges, accepts, and agrees not to challenge the HERA and ERA Release or support any challenge thereto. A copy of the HERA and ERA Release is annexed hereto as **Exhibit A**. Daugherty acknowledges and agrees that even though HERA and ERA are not HCMLP Released Parties under this Agreement, Daugherty and all Daugherty Released Parties shall (a) not seek to hold any HCMLP Released Party liable for any action or inaction taken by or on behalf of HERA or ERA, including through any derivative, veil-piercing or similar cause of action or remedy; and (b) not seek to recover damages or obtain any form of relief against any HCMLP Released Party on account of any action or inaction taken by or on behalf of HERA or ERA, including through any veil piercing or similar cause of action or remedy. If, for any reason, HERA or ERA, or any person or entity acting on their behalf, recovers anything from any HCMLP Released Party, Daugherty shall promptly turnover to HCMLP or its successors and assigns any amounts actually recovered by Daugherty or any Daugherty Released Party, from HERA or ERA arising from, related to, or derived from any claim that HERA or ERA or any person or entity acting on their behalf has or may have against any HCMLP Released Party. HCMLP will provide reasonable assistance to Daugherty to assist with the preparation of any required HERA K-1s for 2021, but any requirement to provide such K-1s will be the obligation, if any, of HERA.

9. IRS Compensation Claim: In section 4(ii) of the Addendum to Proof of Claim No. 205, Daugherty contends that he has a contingent, unliquidated claim against the Debtor arising out of a 2008/2009 compensation letter (the "Reserved Claim"), which claim is also related to an audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") (the dispute between the Debtor and IRS being referred to herein as the "IRS Audit Dispute"). The Debtor

> disputes the validity and amount of the Reserved Claim. Daugherty shall retain the Reserved Claim solely against the Debtor and not against any other HCMLP Released Party, and the Debtor reserves the right to assert any and all defenses thereto. Any litigation by and between the Debtor and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute; provided, however, that Daugherty may file a motion with the Bankruptcy Court to have the Reserved Claim estimated for purposes of establishing a reserve as a "Disputed Claim" under the Debtor's Plan (the "Reserve Motion"), and the Debtor (and any successor) reserves the right to assert any and all defenses thereto. Notwithstanding the foregoing, Daugherty may address any personal claim or personal liability to the IRS as a result of the IRS Audit Dispute, including settlement of any such claims; provided, however, Daugherty agrees to forego settling or addressing any claims with the IRS without the written consent of the Debtor until March 31, 2022.

Highland Ex. 5, ¶¶ 8, 9; Daugherty Ex. 3, ¶¶ 8, 9. The Court entered an order approving the settlement agreement on March 8, 2022, which allowed Daugherty's proof of claim number 205 in the amounts set forth in the settlement agreement, subject to further resolution of the Reserved Claim.[5] Case No. 19-34054, Dkt. No. 3298.

4. On May 2, 2025, Highland commenced this adversary proceeding by filing its Complaint seeking to disallow the Reserved Claim or, alternatively,

[5] "Reserved Claim" has the meaning given to it by the Parties in the Settlement Agreement. Highland Ex. 5, ¶ 9; Daugherty Ex. 3, ¶ 9.

requesting that the Court estimate the Reserved Claim.[6] Dkt. No. 1. On June 4, 2025, Daugherty filed his *Motion to Dismiss* Highland's complaint. Dkt. No. 5.

5. On July 18, 2025, Highland filed its *(A) Objection to Patrick Daugherty's Motion to Dismiss, and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* ("Cross Motion"). Dkt. No. 10. The Cross Motion sought to modify the order approving the settlement agreement to strike the so-called "Stay Provision." Such relief would permit Highland to proceed with its claim-disallowance proceeding against Daugherty despite there being no "final determination with respect to the IRS Audit Dispute." The Court granted the Cross Motion on September 5, 2025, and modification of the settlement order remains subject of Daugherty's appeal. Dkt. Nos. 23, 25.

6. Pursuant to the settlement agreement, Daugherty's Reserved Claim is fully reserved in an account held by the Claimant Trust with a balance equal to $2,650,353.00, the amount of the Reserved Claim asserted by Daugherty in his proof of claim. Daugherty Ex. 94, ¶ 1. At trial, Mr. Seery testified that this amount remains in a claimant trust account and is the last unresolved claim of the Highland bankruptcy estate. Trial Tr. at 241:21–242:3. Any distribution made to Daugherty on account of the Reserved Claim must occur prior to distributions to Highland's partnership interests—Classes 10 and 11. Trial Tr. at 240:23–243:11.

---

[6] *See supra* n.1 regarding Highland's claim for subordination.

***Daugherty's Employment at and Separation from Highland***

7. Daugherty was employed by Highland from 1998 to his voluntary resignation in 2011. Dkt No. 101, ¶ 8, 14. On December 31, 2004, Highland and Daugherty entered into an Amended Employment Agreement ("Employment Agreement"), which, among other things, described Daugherty's compensation and benefits. Highland Ex. 11. As 'Salary and Bonus" the Employment Agreement states the following:

> (a) Salary and Bonus. The annual salary (the "***Base Salary***") payable to the Executive during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to the Executive, and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon the Executive's performance and shall be determined by the Company in its sole discretion. In addition, the Company may from time to time award bonuses to the Executive based on such criteria as the Company may establish in its discretion. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. The Executive must be employed on the payment date(s) in order to be eligible for the bonus. The payment of salary and bonuses shall be subject to all federal, state and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of the Executive's compensation does not constitute a guarantee of employment for any specific period of time.

*Id.* ¶ 3.1(a). The Employment Agreement also includes a Form of Separation Agreement and Release, which an employee *may* sign at the termination of their employment. If an employee does not sign the separation agreement, then the Employment Agreement states that the employee is not entitled to severance, and Highland "will have no further liability or obligation to the [employee] under [the Employment Agreement] or in connection with [their] employment or termination." *Id.* ¶¶ 4.4–4.6.

8. Consistent with the Employment Agreement, Daugherty was provided with a Comprehensive Compensation and Benefits Statement ("2009 Compensation

Statement") dated February 27, 2009. Highland Ex. 13. Therein, Daugherty's 2008 earnings and awards totaled $3,594,136, of which $1,475,816 was allocated as a 2008 tax refund.[7] *Id.* Stated with the 2008 tax refund line item is the following language:

> Refund is an estimated amount. If actual refund deviates materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months.

*Id.* This language forms the basis for Daugherty's Reserved Claim against Highland's bankruptcy estate.

9. In an email from Scott Wilson, Highland's Principal, Internal Strategy, dated February 26, 2009, to Brian Collins and Patrick Boyce, Mr. Wilson included an attachment with draft questions and answers related to the 2008 tax refund. Highland Ex. 47. Of note, the following questions included draft answers:

> **Why would you consider the tax refund as part of compensation? Isn't the refund in my name?**
>
> When you paid taxes in 2006 and 2007 that are now potentially subject to a refund, you received a distribution from Highland to pay those taxes. Now we believe that the taxes were overpaid, due to subsequent losses, and as such, Highland distributed an excessive amount to you to pay the taxes. Accordingly, any difference, now or then, ends up being extra compensation to you, and keeping the refund represents an extra compensation to you from Highland **(NOTE: this is by no means well researched legal argument. The Tax Dept. is investigating various legal and tax rationale in this matter, and we can discuss various options on this argument further in a verbal conversation)**
>
> **What would happen if my actual tax refund is different from this estimate, or if the timing is significantly delayed? Would I be "trued-up" if is it less? What if it is more?**

[7] With the inclusion of "Highland Paid Benefits," Daugherty's compensation package totaled $3,619,376. Highland Ex. 13.

> If the actual refund ends up being different than the estimated amount, then we would consider what action to take on a case-by-case basis, considering several factors including the difference in the refund amount and if that creates any "gap" between the target total cash compensation and your actual cash compensation would be.

*Id.* at 3–5 (emphasis in original). A slide-deck dated March 6, 2009, and titled "Tax Discussion" included "[p]rovide overview of tax refund estimate calculation" as an objective. Highland Ex. 39; *see also* Trial Tr. 296:6–11. One slide answered affirmatively the following question: "Can the IRS claw back the refund?" *Id.* at 7.

10. In 2009, based on a draft Schedule K-1 that Highland provided to him, Daugherty filed his 2008 federal income tax return. Dkt. No. 101, ¶ 11. The Draft K-1 identified Daugherty's "partner's share of loss" as 0.746998% as of December 31, 2008. Daugherty Ex. 26. In 2009, Daugherty received refunds from the IRS of previously paid taxes in the amounts of $493,629 and $780,301 related to his 2008 Individual Income Tax Return (Form 1040) and his 2008 Application for Tentative Refund (Form 1045), respectively, for a total refund of $1,273,930. Highland Exs. 35, 36. These forms incorporated Highland's losses that were allocated to him as provided for in the draft Schedule K-1. Dkt. No. 101, ¶ 12. Later in 2009, Highland issued its final 2008 Schedule K-1 to Daugherty identifying Daugherty's "partner's share of loss" as 0.740262% as of December 31, 2008. Highland Ex. 14; Daugherty Ex. 24.

11. On March 3, 2010, the IRS notified Highland that it was initiating an audit of Highland's 2008 federal income tax return. Dkt. No. 101, ¶ 13.

12. On September 28, 2011, Daugherty gave voluntary notice of resignation from all positions at Highland with his last day as an employee being October 31,

2011. *Id.* ¶ 14. Daugherty did not sign the form separation agreement attached to the Employment Agreement. Prior to his last day of employment, Daugherty and Highland attempted to negotiate different separation and release terms that included, among other things, Highland's agreement to pay a "Notice of Tax Due," or other similar demand, delivered to Daugherty because of the IRS audit of Highland's tax return. Highland Exs. 40, 41. These negotiations did not culminate in a signed agreement. Trial Tr. 207:23–209:5.

13. At trial, Daugherty testified that James Dondero, Highland's former chief executive officer, made promises to Daugherty about the 2009 tax refund. Trial Tr. 296:18–22 ("[Dondero] said, I'll take care of you. I'll make it up to you.")

14. On December 8, 2017, an IRS examiner executed Form 4605-A, which proposed to increase Highland's reported 2008 short-term portfolio income by $166,332,713. Highland Ex. 15, Daugherty Ex. 27. Settlement discussions with the IRS remain ongoing. *See* Highland Ex. 20, Daugherty Ex. 32. To date, Daugherty has not received notice that he is required to repay any amount refunded to him in connection with his 2009 tax refund.

***Compliance with the Settlement Agreement***

15. The Settlement Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type . . . . Such transfer will be without any liability or material cost to HCMLP or its affiliates . . . ." Highland Ex. 5 ¶ 8;

Daugherty Ex. 3 ¶ 8. On April 1, 2022, Highland transferred its interests in HERA and ERA to Daugherty pursuant to written agreements. Highland Ex. 52. Both HERA and ERA are Delaware limited liability companies. *Id.*

16. HERA and ERA were non-operating entities that did not have any employees, offices, servers, or email addresses. Trial Tr. at 183:17–185:7. The phrase "books and records (spreadsheet)" is not otherwise expressly defined in the settlement agreement.

17. On May 5, 2022, and October 19, 2022, Highland delivered certain documents and materials to Daugherty as reflected in Daugherty Exhibits 33 and 34. The May 2022 production included over 50MB of data and included all of HERA and ERA's (a) corporate governance records, (b) historical accounting records, and (c) historical tax filings. Trial Tr. at 192:6–21, 193:4–194:2. At Daugherty's request, Highland transmitted additional records in October 2022 that included legal invoices. Trial Tr. 80:16–81:11.

18. On February 29, 2024, HERA filed a lawsuit in the Northern District of Texas against 24 defendants. Case No. 3:24-cv-00498-K, Dkt. No. 1 (N.D. Tex.); *see also* Highland Ex. 54; Trial Tr. 198:22–199:9, 277:3–8.[8] In that case, there are pending motions to dismiss, and the district court stayed the case pending resolution of those motions to dismiss. Case No. 3:24-cv-00498-K, Dkt. No. 119. Daugherty testified that if HERA prevails on the motions to dismiss, it will seek discovery from Highland. Trial Tr. 277:18–22.

[8] The Court takes judicial notice of the docket in Case No. 3:24-cv-00498-K pending in the Northern District of Texas. Fed. R. Evid. 201(b)(2), (c)(1).

19. Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him. Highland does not contest Daugherty's full performance of the Settlement Agreement. Daugherty's demand for specific performance relates to the HERA and ERA "books and records (spreadsheet)" provision of the settlement agreement. In particular, Daugherty seeks all materials "*related* to HERA and ERA" that are in Highland's possession. Dkt No. 102, ¶¶ 1, 27, 36 (emphasis added). Prior to filing his counterclaims in this adversary proceeding, Daugherty did not otherwise seek relief from this Court to enforce the settlement agreement.

## CONCLUSIONS OF LAW

20. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

***Burdens of Proof***

21. 11 U.S.C. § 502(a) states, "A claim . . . proof of which is filed under section 501 [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." A properly filed proof of claim is prima facie evidence of the claimant's entitlement to collect against assets of the debtor's estate. *Cal. State Bd. Of Equalization v. Off. Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988).

22. If a claim objection is filed, then the burden shifts to the objector to "produce evidence tending to defeat the claim that is of a probative force equal to that

of the creditor's proof of claim." *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985). If an objector produces evidence to rebut the prima facie validity of the claim, then the claimant must prove the validity of its claim by a preponderance of the evidence. *See United States v. Canada*, 574 B.R. 620, 627 (N.D. Tex. 2017).

23. Daugherty properly filed proof of claim number 205 and attached a compensation summary dated August 18, 2011, and the 2009 Compensation Statement. Case No. 19-34054, Dkt. No. 1280-2.[9] Thus, Highland must bring forward evidence equal in probative force to defeat Daugherty's claim.

***The Employment Agreement Absolves Highland of Any Liability to Daugherty.***

24. The parties do not contest that Texas law controls this dispute over Daugherty's Reserved Claim. Likewise, neither party contests the validity of the Employment Agreement. At issue, then, is how to construe the 2009 Compensation Statement.

25. "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Incorporation by reference" allows courts to also consider separate documents that are plainly referred to in the contract. *See Zamora v. Swift Transp. Corp.*, 547 F. Supp. 2d 699, 702 (W.D. Tex. 2008) ("An employment agreement may incorporate, by reference, the terms of a separate

[9] Neither party in this adversary proceeding sought to introduce as an exhibit Daugherty's proof of claim number 205. Daugherty's unredacted proof of claim is inaccessible via Highland's claims administrator, Verita, is not filed elsewhere on the Court's docket, and was attached only in a redacted format to a prior motion filed in the related bankruptcy case.

document where the agreement directly and expressly refers to the separate document."); *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968) ("It is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing.").

26. Article 3.1(a) of the Employment Agreement "plainly" states, ". . . annual salary . . . payable to the Executive . . . shall be communicated in writing to the Executive . . . ." Highland Ex. 11. The 2009 Compensation Statement was such a communication in writing related to Daugherty's compensation, and its terms are, therefore, incorporated in the Employment Agreement. The inquiry now turns to whether the terms in the 2009 Compensation Statement are ambiguous.

27. A contract is not ambiguous if its words can be given a certain or definite legal meaning. *Coker*, 650 S.W.2d at 393. On the other hand, ambiguity in a contract exists if its terms are uncertain, doubtful, or reasonably susceptible to more than one meaning. *Towers of Tex., Inc. v. J & J Sys., Inc.*, 834 S.W.2d 1, 2 (Tex. 1992). Parties to a disputed contract are likely to take conflicting interpretation views, "but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (emphasis in original).

28. Neither Highland nor Daugherty argue that the Employment Agreement or the 2009 Compensation Statement are ambiguous. Rather, Highland argues that the 2009 Compensation Statement lacks material terms rendering it an indefinite agreement.

29. An alleged contract that fails to address all essential and material terms with a reasonable degree of certainty and definiteness is unenforceable as a matter of law. *See APS Cap. Corp. v. Mesa Air Grp. Inc.*, 580 F.3d 265, 272 (5th Cir. 2009) ("In order to be a legally enforceable contract, an agreement must be formed around the contours of sufficiently specific terms."). Material terms "are those that the parties would reasonably regard as vitally important elements of their bargain," and "a contract must define its essential terms with enough precision to enable the court to determine the obligations of the parties." *Tex. Architectural Aggregate, Inc. v. ACM-Tex., LLC (In re ACM-Tex., Inc.)*, 430 B.R. 371, 408 (Bankr. W.D. Tex. 2010) (internal citation omitted). Essential terms are unique to the type of agreement, and, in the employment context, essential terms include compensation, duties, and responsibilities. *See City of Hou. V. Williams*, 353 S.W.3d 128, 139 (Tex. 2011).

30. Legally, there is significant difference between ambiguity and indefiniteness. *See Marx v. FDP, LP*, 474 S.W.3d 368, 375 (Tex. App.—San Antonio 2015, pet. denied) ("Unlike the trial court's obligation to resolve any ambiguity necessary to enforce a contract, indefiniteness in a contract makes the contract unenforceable."); *Sifuentes v. Carrillo*, 982 S.W.2d 500, 504 (Tex. App.—San Antonio 1998, pet. denied). When an ambiguity is discovered, courts seek to resolve the ambiguity "by looking at the contract as a whole in light of the circumstances present when the contract was entered" to ascertain the parties' intent. *Coker*, 650 S.W.2d at 393–94. "As a general matter, Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify" essential terms. *Liberto v.*

*D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006). In either instance, however, determining whether the contract is ambiguous or indefinite is a question of law. *See Coker*, 650 S.W.2d at 394; *Abatement Inc. v. Williams*, 324 S.W.3d 858, 862 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

31. The Employment Agreement incorporates by reference the 2009 Compensation Statement, such that, read together, the contract contains all material terms and is not indefinite. The following language, though, from the 2009 Compensation Statement is ambiguous:

> Refund is an estimated amount. If actual refund deviates materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months.

In particular, the phrases "deviates materially," "other compensation," and "fairly adjusted" are all uncertain and reasonably susceptible to more than one meaning. There are no other provisions in the Employment Agreement or the 2009 Compensation Statement that give certain or definite legal meaning to these phrases. Thus, the Court must resolve the ambiguity to enforce the agreement.

32. The "ultimate goal" when resolving an ambiguity "is always to determine the parties' intent as objectively expressed in the words of their agreement." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020). To that end, courts may consider the facts and circumstances surrounding the contract, including "objectively determinable factors that give context to the parties' transaction." *Id.* (internal quotation and citation omitted). And while this extrinsic evidence is helpful in resolving the ambiguity, courts cannot

interpret "contractual language to say what it unambiguously does not say." *Id.* (citation modified).

33. There can be little doubt that Highland intended the tax refund referenced in the 2009 Compensation Statement to be Daugherty's bonus for his work performed in 2008. Daugherty seemingly admits as much in his proof of claim. The ambiguity arises from the remaining language of the 2009 Compensation Statement that provided for a fair adjustment to other compensation if the refund amount materially deviated from the estimate. Highland Ex. 13; Daugherty Ex. 14.

34. Daugherty asserts the language obligates Highland to compensate Daugherty if the IRS Audit results in him paying back to the IRS all or part of the refund he received in 2009. Dkt. No. 102, ¶¶ 10–12. Highland argues the language is too vague and indefinite to create an enforceable obligation. Dkt. No. 101, ¶¶ 29–39.

35. The Court endeavors to resolve the ambiguity by determining the parties' intent from the entirety of the Employment Agreement and 2009 Compensation Statement. In doing so, the Court gives the words used in these documents their plain and ordinary meaning because they were not specifically defined or used in a technical manner. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 307 (Tex. 2015). The Court concludes that, as a component of Daugherty's compensation, Highland estimated Daugherty's refund at $1,475,816 and, if the refund amount he received materially deviated from that estimate, Highland would adjust his other compensation to make up the difference.

Highland Ex. 13, Daugherty Ex. 14. Certainly, it is a material deviation if Daugherty must pay back the entire amount he received as a refund on account of the IRS Audit.

36. Nonetheless, whether the 2009 Compensation Statement language is ambiguous and capable of resolution is immaterial, because Daugherty's Reserved Claim faces a bigger obstacle for allowance against Highland's bankruptcy estate. While the language used in the 2009 Compensation Statement is susceptible to more than one meaning, the termination provisions in the Employment Agreement are clear and unambiguous.

37. Sections 4.5 and 4.6 of the Employment Agreement deal with an executive's voluntary termination of their employment with Highland. Each provision contains the following language:

> In the event the Executive declines to sign the separation agreement and release, he/she shall not be entitled to any severance, ***and*** the Company will have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment or termination.

Highland Ex. 11 at 6 (emphasis added). Attached to the Employment Agreement as Exhibit A is the form separation agreement and release.

38. Daugherty submitted his resignation from Highland in September 2011 with an effective date of October 31, 2011. Highland Ex. 12; Daugherty Ex. 15. If Daugherty signed the separation agreement attached as Exhibit A, under the Employment Agreement, Daugherty would have been entitled to severance pay and additional earned compensation or benefits, including, potentially, a true up of the 2008 Tax Refund. Daugherty did not sign the separation agreement and release.

39. In fact, Daugherty attempted to negotiate a different general release and separation agreement with Highland prior to his last day with the company. *See* Highland Ex. 41. This separation agreement specifically referenced in paragraph 3.(c)(ii) Daugherty's right to payment from Highland if Daugherty were obligated to pay back the 2008 Tax Refund to the IRS. *Id.*, ¶ 3.(c)(ii). Daugherty did not sign this separation agreement either.

40. Therefore, the Court finds that the Employment Agreement controls whether Daugherty's Reserved Claim should be allowed against the Highland bankruptcy estate. Pursuant to its express terms, Highland is absolved of all liability or obligations to Daugherty because he failed to execute either of the separation agreements presented to him. The Reserved Claim is disallowed.

***Dondero's Oral Promises did not Create an Enforceable Guaranty.***

41. To the extent Daugherty argues Dondero's promises are binding agreements to cover his contingent tax liability, this argument also fails.

42. "[I]t is so obviously just that a promisor receiving no benefits should be bound only by the exact terms of his promise." *Davis v. Patrick*, 141 U.S. 479, 488 (1891). In Texas, a promise by one person to answer for the debt of another person, must be in writing and "signed by the person to be charged with the promise or

agreement or by someone lawfully authorized to sign for him." Tex. Bus. & Com. Code § 26.01(a), (b)(2).[10]

43. There is, however, an exception to the general rule that a promise to pay another's debt must be in writing—the main purpose doctrine.

> [W]herever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute [of frauds], although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.

*Lemmon v. Box*, 20 Tex. 329, 332 (1857). Three elements must be met to satisfy the main purpose doctrine and thereby remove the promise from the statute of frauds:

> (1) the promisor intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the promisor's own use and benefit—that is, the benefit it received was the promisor's main purpose for making the promise.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 828 (Tex. 2012). "Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties." *Marx*, 474 S.W.3d at 378. Without it, a contract is unenforceable. *Id.*

---

[10] The Texas Business and Commerce Code defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, any other legal or commercial entity, or a protected series or registered series of a for-profit entity." Tex. Bus. & Com. Code § 1.201(b)(27).

The evidence before the Court is that Daugherty worked in Highland's Texas office, negotiated his separation while in Texas, and the Employment Agreement identifies Texas in its "choice of law" provision. Thus, the Court will consider Texas law when construing Daugherty's testimony about Highland's promise to pay his unliquidated tax liability.

44. Assuming without deciding that Highland intended to create primary responsibility in itself to pay Daugherty's tax liability, the promise fails because there was no consideration. Though Daugherty testified that Dondero repeatedly promised to cover his tax liability, the only evidence before the Court of consideration for such promise is an unexecuted separation agreement. Highland Ex. 41. In that unexecuted separation agreement, Daugherty would give certain releases in favor of Highland and its subsidiaries in exchange for Highland's promise to pay "a 'Notice of Tax Due' or other such letter from a governmental taxing authority demanding payment for taxes that relates to an Internal Revenue Service audit." *Id.*, ¶¶ 3(c)(ii), 4. Neither party, however, agreed to be bound by the terms of the separation agreement, and there is no evidence that Dondero's oral promise, made conceivably on behalf of Highland, is relieved from the statute of frauds. These unwritten promises are not enforceable and, likewise, prohibit Daugherty from collecting his Reserved Claim from Highland's bankruptcy estate.

45. Based on an argument that Dondero promised to make Daugherty whole, for the reasons set forth above, Daugherty's Reserved Claim is disallowed.

***Highland Fulfilled its Obligations under the Settlement Agreement.***

46. Daugherty bears the burden of proving that Highland breached the settlement agreement by failing to turnover the HERA and ERA "books and records (spreadsheet)," which is remedied only by specific performance. *Movora LLC v. Gendreau*, 345 A.3d 997, 1011 (Del. 2025); *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 53 (Del. Ch. 2001). To obtain specific performance under Delaware law, a plaintiff

must prove by clear and convincing evidence: (1) a valid contract exists, (2) the plaintiff is ready, willing, and able to perform, (3) a legal remedy would be inadequate, and (4) the balance of equities tips in favor of the party seeking specific performance. *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022).

47. "Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). Courts will give effect to the plain-meaning of a contract's terms and provisions where they are clear and unambiguous. *Id.* at 1159–60.

48. To that end, the Delaware Court of Chancery has stated that "[t]he meaning of the term 'books and records' can readily be understood through § 18–305 of the LLC Act and through its corporate law and limited partnership law counterparts, 8 Del. C. § 220 and 6 Del. C. § 17–305, respectively."[11] *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, No. CIV.A. 18928, 2002 WL 205681, at *3 n.3 (Del. Ch. Jan. 29, 2002) (finding tax returns were within the scope of a contractual "books and records" provision). The Delaware Limited Liability Company Act, 6 Del. C. § 18-305(a), generally identifies, at a minimum, the statutory books and records that a Delaware LLC must provide to its managers for inspection:

> (1) True and full information regarding the status of the business and financial condition of the limited liability company;

[11] 8 Del. C. § 220, the corporate books and records provision, sets out defined categories of corporate financial and governance documents and does not have a "just and reasonable" category. The Delaware Limited Partnership Law books and records provision, 6 Del. C. § 17–305, is substantially similar to the Delaware LLC Law's provision.

(2) Promptly after becoming available, a copy of the limited liability company's federal, state and local income tax returns for each year;

(3) A current list of the name and last known business, residence or mailing address of each member and manager;

(4) A copy of any written limited liability company agreement and certificate of formation and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the limited liability company agreement and any certificate and all amendments thereto have been executed;

(5) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute in the future, and the date on which each became a member; and

(6) Other information regarding the affairs of the limited liability company as is just and reasonable.

49. Highland provided Daugherty with HERA and ERA's financial, governance, and tax records. And, at Daugherty's request, Highland provided additional information that supported HERA and ERA's financial records. Daugherty's requests for "all" documents or documents that "related to" HERA and ERA were not "just and reasonable," and Highland was under no obligation to satisfy them. The Court thus finds that Highland did not breach the Books and Records Provision of the settlement agreement, and Daugherty is not entitled to specific performance.

50. The Court's conclusion here is without prejudice to HERA seeking discovery from Highland in connection with its lawsuit pending in the Northern District of Texas.

**CONCLUSION**

Daugherty's Reserved Claim is disallowed, and he shall collect nothing further from Highland's bankruptcy estate or the claimant trust. Daugherty's counterclaim for breach of contract and specific performance is denied. The Court will issue a judgment consistent with this Memorandum Opinion.

### End of Memorandum Opinion ###

United States Bankruptcy Court
Northern District of Texas

Highland Capital Management, L.P.,
Plaintiff
Daugherty,
Defendant

Adv. Proc. No. 25-03055-bwo

# CERTIFICATE OF NOTICE

District/off: 0539-3 User: admin Page 1 of 2
Date Rcvd: Jul 24, 2026 Form ID: pdf001 Total Noticed: 6

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 26, 2026:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion06.ty.ecf@usdoj.gov | Jul 24 2026 22:14:00 | US Trustee, Office of the U.S. Trustee, 110 N. College Ave., Suite 300, Tyler, TX 75702-7231 |
| ust | + | Email/Text: ustpregion06.da.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - MD12, US Trustee's Office, 230 Homer Thornberry Judicial Bldg., 903 San Jacinto Blvd., Austin, TX 78701-2450 |
| ust | + | Email/Text: USTPRegion07.SN.ECF@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - WA12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 6

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |

TOTAL: 0 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

District/off: 0539-3 User: admin Page 2 of 2
Date Rcvd: Jul 24, 2026 Form ID: pdf001 Total Noticed: 6

Date: Jul 26, 2026 Signature: /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 24, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Andrew K. York | on behalf of Defendant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Andrew K. York | on behalf of Counter-Claimant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Gregory V. Demo | on behalf of Counter-Defendant Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Plaintiff Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Hayley R Winograd | on behalf of Plaintiff Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Hayley R Winograd | on behalf of Counter-Defendant Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Jeffrey Nathan Pomerantz | on behalf of Plaintiff Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Nathan Pomerantz | on behalf of Counter-Defendant Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Reid Burley | on behalf of Defendant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| Jeffrey Reid Burley | on behalf of Counter-Claimant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| John A Morris | on behalf of Counter-Defendant Highland Capital Management L.P. jmorris@pszjlaw.com |
| John A Morris | on behalf of Plaintiff Highland Capital Management L.P. jmorris@pszjlaw.com |
| Melissa S. Hayward | on behalf of Plaintiff Highland Capital Management L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Counter-Defendant Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |

TOTAL: 15

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| ___________________________ | § | ___________________________ |
| | § | |
| Highland Capital Management, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Adversary No. 25-03055-bwo |
| | § | |
| Patrick Hagaman Daugherty, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**<u>JUDGMENT</u>**

Consistent with the Memorandum Opinion issued on this date, it is hereby

ORDERED, ADJUDGED, AND DECREED that Patrick Hagaman Daugherty's ("Daugherty") Reserved Claim[1] is disallowed; it is further

ORDERED, ADJUDGED, AND DECREED that Highland Capital Management, L.P. ("Highland") did not breach its obligations under the Settlement Agreement between Highland and Daugherty dated November 22, 2021, and approved by this Court on March 8, 2022 (the "Settlement Agreement"); it is further

ORDERED, ADJUDGED, AND DECREED that Daugherty's request for specific performance of the Settlement Agreement is denied; and it is further

ORDERED, ADJUDGED, AND DECREED that any relief not expressly granted herein is denied.

This Judgment disposes of all parties and all claims in this adversary proceeding.

### End of Judgment ###

[1] "Reserved Claim" has the same meaning given to it in the Court's Memorandum Opinion.

United States Bankruptcy Court
Northern District of Texas

Highland Capital Management, L.P.,
Plaintiff
Daugherty,
Defendant

Adv. Proc. No. 25-03055-bwo

# CERTIFICATE OF NOTICE

District/off: 0539-3 | User: admin | Page 1 of 2
Date Rcvd: Jul 24, 2026 | Form ID: pdf001 | Total Noticed: 6

The following symbols are used throughout this certificate:

| **Symbol** | **Definition** |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Jul 26, 2026:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion06.ty.ecf@usdoj.gov | Jul 24 2026 22:14:00 | US Trustee, Office of the U.S. Trustee, 110 N. College Ave., Suite 300, Tyler, TX 75702-7231 |
| ust | + | Email/Text: ustpregion06.da.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - MD12, US Trustee's Office, 230 Homer Thornberry Judicial Bldg., 903 San Jacinto Blvd., Austin, TX 78701-2450 |
| ust | + | Email/Text: USTPRegion07.SN.ECF@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Jul 24 2026 22:14:00 | United States Trustee - WA12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 6

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |

TOTAL: 0 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

Date: Jul 26, 2026 Signature: /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on July 24, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Andrew K. York | on behalf of Defendant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Andrew K. York | on behalf of Counter-Claimant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Gregory V. Demo | on behalf of Counter-Defendant Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Plaintiff Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Hayley R Winograd | on behalf of Plaintiff Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Hayley R Winograd | on behalf of Counter-Defendant Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Jeffrey Nathan Pomerantz | on behalf of Plaintiff Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Nathan Pomerantz | on behalf of Counter-Defendant Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Reid Burley | on behalf of Defendant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| Jeffrey Reid Burley | on behalf of Counter-Claimant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| John A Morris | on behalf of Counter-Defendant Highland Capital Management L.P. jmorris@pszjlaw.com |
| John A Morris | on behalf of Plaintiff Highland Capital Management L.P. jmorris@pszjlaw.com |
| Melissa S. Hayward | on behalf of Plaintiff Highland Capital Management L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Counter-Defendant Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |

TOTAL: 15

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| Reorganized Debtor. | § | |
| ______________________________ | § | ______________________________ |
| Highland Capital Management, L.P., | § | |
| Plaintiff/Counter-Defendant, | § | |
| v. | § | Adversary No. 25-03055-bwo |
| Patrick Hagaman Daugherty, | § | |
| Defendant/Counter-Plaintiff. | § | |

**MEMORANDUM OPINION**

The Court issues this Memorandum Opinion in the action between Plaintiff and Counter-Defendant, Highland Capital Management, L.P. ("Highland"), and Patrick Hagaman Daugherty ("Daugherty"), Defendant and Counter-Plaintiff.

Highland contests the validity of Daugherty's proof of claim filed in its related bankruptcy case and seeks to disallow the claim. In the alternative, Highland asks the Court to estimate Daugherty's contingent claim under 11 U.S.C. § 502(c) for purposes of making a distribution under Highland's confirmed chapter 11 plan.[1] Daugherty's counterclaims allege that Highland breached a prior settlement agreement between the parties, in which Highland agreed to turnover the Highland Employee Retention Assets LLC ("HERA") and ERA Management, LLC ("ERA") books and records. Daugherty seeks specific performance of the settlement agreement.[2] Trial was held on April 17, 2026, after which the parties submitted proposed findings of fact and conclusions of law.

The Court's findings and conclusions are based upon the record before the Court and are issued under Rule 52 of the Federal Rules of Civil Procedure, made applicable in this adversary proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The issues here raise mixed questions of fact and law. Accordingly, where appropriate, findings of fact may be considered conclusions of law and conclusions of law may be considered findings of fact.

---

[1] Prior to trial, Highland withdrew its claim for subordination under 11 U.S.C. § 510(b). Unless otherwise stated, all "§" or "section" references are to Tile 11 of the United States Code (the "Bankruptcy Code").

[2] Prior to trial, Daugherty withdrew his claim for attorney's fees.

## FINDINGS OF FACT

***Highland's Bankruptcy Case and Daugherty's Reserved Claim***

1. On October 16, 2019, Highland filed its petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned bankruptcy case. Case No. 19-34054, Dkt. No. 1. In Highland's bankruptcy case, Daugherty filed several proofs of claim that culminated in proof of claim number 205, which is subject to the parties' dispute in this adversary proceeding. Dkt. No. 101, ¶ 2.[3]

2. On November 24, 2020, this Court entered an Order temporarily allowing Daughtery's claim in the amount of $9,134,019.00 for voting purposes only. Case No. 19-34054, Dkt. No. 1474. Then, on February 22, 2021, this Court entered the *Order (i) Confirming the Fifth Amended Plan of Reorganization of Highland Capital Management, L.P. (as Modified) and (ii) Granting Related Relief*.[4] *Id.*, Dkt. No. 1943. Highland's confirmed plan became effective on August 11, 2021, at which time a claimant trust was established over which James P. Seery, Highland's Chief Executive Officer, was appointed trustee. *Id.*, Dkt. Nos. 1808, 2700.

3. Following confirmation, on November 22, 2021, Highland and Daugherty executed a settlement agreement. Dkt. No. 101, ¶ 19. Among other things, the settlement agreement resolved Daugherty's claims against Highland's bankruptcy estate, save for one, and required Highland to turnover HERA and ERA's

---

[3] Unless otherwise stated, all "Dkt. No." references herein are to the above-captioned adversary proceeding.

[4] The Confirmation Order was subsequently modified for reasons irrelevant to this dispute. *See* Case No. 19-34054, Dkt. No. 4378.

books and records to Daugherty. Highland Ex. 5; Daugherty Ex. 3. Below are provisions from the settlement agreement relevant to this dispute:

8. HERA and ERA: The Parties acknowledge and agree that as of the date hereof, HERA and ERA have no material assets other than potential claims that may exist against persons or entities not released at or prior to the date hereof, and no claims against the HCMLP Released Parties. The allowed claims provided in paragraph 1 hereof are expressly agreed to in order to satisfy any liability the Debtor may have in connection with the HERA Judgment. To facilitate recovery of such potential claims – which expressly excludes any and all claims by or in the name of HERA and ERA against any of the HCMLP Released Parties -- HCMLP will transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type; including, for the avoidance of doubt, without any representation or warranty as to the merits of the potential claims or the efficacy of the transfer of the potential claims. Such transfer will be without any liability or material cost to HCMLP or its affiliates or the other HCMLP Released Parties, including any liability in respect of any assets that HERA or ERA ever actually or allegedly owned, possessed, or controlled and that were actually or allegedly transferred, conveyed, sold, written off or otherwise disposed of (in any such case, a "Disposition"). In connection with the transfer, HERA and ERA have expressly released the HCMLP Released Parties from any and all claims, including any claims actions or remedies related

to any Disposition, either of them may have against any HCMLP Released Party now or in the future (the "HERA and ERA Release"). Daugherty on behalf of himself and each of the Daugherty Released Parties acknowledges, accepts, and agrees not to challenge the HERA and ERA Release or support any challenge thereto. A copy of the HERA and ERA Release is annexed hereto as **Exhibit A**. Daugherty acknowledges and agrees that even though HERA and ERA are not HCMLP Released Parties under this Agreement, Daugherty and all Daugherty Released Parties shall (a) not seek to hold any HCMLP Released Party liable for any action or inaction taken by or on behalf of HERA or ERA, including through any derivative, veil-piercing or similar cause of action or remedy; and (b) not seek to recover damages or obtain any form of relief against any HCMLP Released Party on account of any action or inaction taken by or on behalf of HERA or ERA, including through any veil piercing or similar cause of action or remedy. If, for any reason, HERA or ERA, or any person or entity acting on their behalf, recovers anything from any HCMLP Released Party, Daugherty shall promptly turnover to HCMLP or its successors and assigns any amounts actually recovered by Daugherty or any Daugherty Released Party, from HERA or ERA arising from, related to, or derived from any claim that HERA or ERA or any person or entity acting on their behalf has or may have against any HCMLP Released Party. HCMLP will provide reasonable assistance to Daugherty to assist with the preparation of any required HERA K-1s for 2021, but any requirement to provide such K-1s will be the obligation, if any, of HERA.

9. IRS Compensation Claim: In section 4(ii) of the Addendum to Proof of Claim No. 205, Daugherty contends that he has a contingent, unliquidated claim against the Debtor arising out of a 2008/2009 compensation letter (the "Reserved Claim"), which claim is also related to an audit/dispute between the Debtor and the Internal Revenue Service (the "IRS") (the dispute between the Debtor and IRS being referred to herein as the "IRS Audit Dispute"). The Debtor

disputes the validity and amount of the Reserved Claim. Daugherty shall retain the Reserved Claim solely against the Debtor and not against any other HCMLP Released Party, and the Debtor reserves the right to assert any and all defenses thereto. Any litigation by and between the Debtor and Daugherty concerning the validity and amount of the Reserved Claim shall be stayed until the IRS makes a final determination with respect to the IRS Audit Dispute; provided, however, that Daugherty may file a motion with the Bankruptcy Court to have the Reserved Claim estimated for purposes of establishing a reserve as a "Disputed Claim" under the Debtor's Plan (the "Reserve Motion"), and the Debtor (and any successor) reserves the right to assert any and all defenses thereto. Notwithstanding the foregoing, Daugherty may address any personal claim or personal liability to the IRS as a result of the IRS Audit Dispute, including settlement of any such claims; provided, however, Daugherty agrees to forego settling or addressing any claims with the IRS without the written consent of the Debtor until March 31, 2022.

Highland Ex. 5, ¶¶ 8, 9; Daugherty Ex. 3, ¶¶ 8, 9. The Court entered an order approving the settlement agreement on March 8, 2022, which allowed Daugherty's proof of claim number 205 in the amounts set forth in the settlement agreement, subject to further resolution of the Reserved Claim.[5] Case No. 19-34054, Dkt. No. 3298.

4. On May 2, 2025, Highland commenced this adversary proceeding by filing its Complaint seeking to disallow the Reserved Claim or, alternatively,

[5] "Reserved Claim" has the meaning given to it by the Parties in the Settlement Agreement. Highland Ex. 5, ¶ 9; Daugherty Ex. 3, ¶ 9.

requesting that the Court estimate the Reserved Claim.[6] Dkt. No. 1. On June 4, 2025, Daugherty filed his *Motion to Dismiss* Highland's complaint. Dkt. No. 5.

5. On July 18, 2025, Highland filed its *(A) Objection to Patrick Daugherty's Motion to Dismiss, and (B) Cross Motion for Relief from a Final Order Pursuant to Bankruptcy Rule 9024* ("Cross Motion"). Dkt. No. 10. The Cross Motion sought to modify the order approving the settlement agreement to strike the so-called "Stay Provision." Such relief would permit Highland to proceed with its claim-disallowance proceeding against Daugherty despite there being no "final determination with respect to the IRS Audit Dispute." The Court granted the Cross Motion on September 5, 2025, and modification of the settlement order remains subject of Daugherty's appeal. Dkt. Nos. 23, 25.

6. Pursuant to the settlement agreement, Daugherty's Reserved Claim is fully reserved in an account held by the Claimant Trust with a balance equal to $2,650,353.00, the amount of the Reserved Claim asserted by Daugherty in his proof of claim. Daugherty Ex. 94, ¶ 1. At trial, Mr. Seery testified that this amount remains in a claimant trust account and is the last unresolved claim of the Highland bankruptcy estate. Trial Tr. at 241:21–242:3. Any distribution made to Daugherty on account of the Reserved Claim must occur prior to distributions to Highland's partnership interests—Classes 10 and 11. Trial Tr. at 240:23–243:11.

[6] *See supra* n.1 regarding Highland's claim for subordination.

***Daugherty's Employment at and Separation from Highland***

7. Daugherty was employed by Highland from 1998 to his voluntary resignation in 2011. Dkt No. 101, ¶ 8, 14. On December 31, 2004, Highland and Daugherty entered into an Amended Employment Agreement ("Employment Agreement"), which, among other things, described Daugherty's compensation and benefits. Highland Ex. 11. As 'Salary and Bonus" the Employment Agreement states the following:

> (a) Salary and Bonus. The annual salary (the "***Base Salary***") payable to the Executive during the term of this Agreement shall be an amount determined by the Company (in its sole discretion) and communicated in writing to the Executive, and will be subject to annual review pursuant to the Company's normal review policy for other similarly situated executives of the Company. Any increase in salary shall be based upon the Executive's performance and shall be determined by the Company in its sole discretion. In addition, the Company may from time to time award bonuses to the Executive based on such criteria as the Company may establish in its discretion. Any such bonus, unless specifically stated otherwise, will be paid in three (3) equal installments and is not earned or accrued until each payment date. The Executive must be employed on the payment date(s) in order to be eligible for the bonus. The payment of salary and bonuses shall be subject to all federal, state and withholding taxes, social security deductions and other general obligations. Furthermore, the designation of the Executive's compensation does not constitute a guarantee of employment for any specific period of time.

*Id.* ¶ 3.1(a). The Employment Agreement also includes a Form of Separation Agreement and Release, which an employee *may* sign at the termination of their employment. If an employee does not sign the separation agreement, then the Employment Agreement states that the employee is not entitled to severance, and Highland "will have no further liability or obligation to the [employee] under [the Employment Agreement] or in connection with [their] employment or termination." *Id.* ¶¶ 4.4–4.6.

8. Consistent with the Employment Agreement, Daugherty was provided with a Comprehensive Compensation and Benefits Statement ("2009 Compensation

Statement") dated February 27, 2009. Highland Ex. 13. Therein, Daugherty's 2008 earnings and awards totaled $3,594,136, of which $1,475,816 was allocated as a 2008 tax refund.[7] *Id.* Stated with the 2008 tax refund line item is the following language:

> Refund is an estimated amount. If actual refund deviates materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months.

*Id.* This language forms the basis for Daugherty's Reserved Claim against Highland's bankruptcy estate.

9. In an email from Scott Wilson, Highland's Principal, Internal Strategy, dated February 26, 2009, to Brian Collins and Patrick Boyce, Mr. Wilson included an attachment with draft questions and answers related to the 2008 tax refund. Highland Ex. 47. Of note, the following questions included draft answers:

> **Why would you consider the tax refund as part of compensation? Isn't the refund in my name?**
>
> When you paid taxes in 2006 and 2007 that are now potentially subject to a refund, you received a distribution from Highland to pay those taxes. Now we believe that the taxes were overpaid, due to subsequent losses, and as such, Highland distributed an excessive amount to you to pay the taxes. Accordingly, any difference, now or then, ends up being extra compensation to you, and keeping the refund represents an extra compensation to you from Highland **(NOTE: this is by no means well researched legal argument. The Tax Dept. is investigating various legal and tax rationale in this matter, and we can discuss various options on this argument further in a verbal conversation)**
>
> **What would happen if my actual tax refund is different from this estimate, or if the timing is significantly delayed? Would I be "trued-up" if is it less? What if it is more?**

[7] With the inclusion of "Highland Paid Benefits," Daugherty's compensation package totaled $3,619,376. Highland Ex. 13.

> If the actual refund ends up being different than the estimated amount, then we would consider what action to take on a case-by-case basis, considering several factors including the difference in the refund amount and if that creates any "gap" between the target total cash compensation and your actual cash compensation would be.

*Id.* at 3–5 (emphasis in original). A slide-deck dated March 6, 2009, and titled "Tax Discussion" included "[p]rovide overview of tax refund estimate calculation" as an objective. Highland Ex. 39; *see also* Trial Tr. 296:6–11. One slide answered affirmatively the following question: "Can the IRS claw back the refund?" *Id.* at 7.

10. In 2009, based on a draft Schedule K-1 that Highland provided to him, Daugherty filed his 2008 federal income tax return. Dkt. No. 101, ¶ 11. The Draft K-1 identified Daugherty's "partner's share of loss" as 0.746998% as of December 31, 2008. Daugherty Ex. 26. In 2009, Daugherty received refunds from the IRS of previously paid taxes in the amounts of $493,629 and $780,301 related to his 2008 Individual Income Tax Return (Form 1040) and his 2008 Application for Tentative Refund (Form 1045), respectively, for a total refund of $1,273,930. Highland Exs. 35, 36. These forms incorporated Highland's losses that were allocated to him as provided for in the draft Schedule K-1. Dkt. No. 101, ¶ 12. Later in 2009, Highland issued its final 2008 Schedule K-1 to Daugherty identifying Daugherty's "partner's share of loss" as 0.740262% as of December 31, 2008. Highland Ex. 14; Daugherty Ex. 24.

11. On March 3, 2010, the IRS notified Highland that it was initiating an audit of Highland's 2008 federal income tax return. Dkt. No. 101, ¶ 13.

12. On September 28, 2011, Daugherty gave voluntary notice of resignation from all positions at Highland with his last day as an employee being October 31,

2011. *Id.* ¶ 14. Daugherty did not sign the form separation agreement attached to the Employment Agreement. Prior to his last day of employment, Daugherty and Highland attempted to negotiate different separation and release terms that included, among other things, Highland's agreement to pay a "Notice of Tax Due," or other similar demand, delivered to Daugherty because of the IRS audit of Highland's tax return. Highland Exs. 40, 41. These negotiations did not culminate in a signed agreement. Trial Tr. 207:23–209:5.

13. At trial, Daugherty testified that James Dondero, Highland's former chief executive officer, made promises to Daugherty about the 2009 tax refund. Trial Tr. 296:18–22 ("[Dondero] said, I'll take care of you. I'll make it up to you.")

14. On December 8, 2017, an IRS examiner executed Form 4605-A, which proposed to increase Highland's reported 2008 short-term portfolio income by $166,332,713. Highland Ex. 15, Daugherty Ex. 27. Settlement discussions with the IRS remain ongoing. *See* Highland Ex. 20, Daugherty Ex. 32. To date, Daugherty has not received notice that he is required to repay any amount refunded to him in connection with his 2009 tax refund.

***Compliance with the Settlement Agreement***

15. The Settlement Agreement required Highland to "transfer its interests in HERA and ERA to Daugherty. Such transfer will include the HERA and ERA books and records (spreadsheet) maintained on HCMLP's system. Such transfer will be without representation or warranty of any type . . . . Such transfer will be without any liability or material cost to HCMLP or its affiliates . . . ." Highland Ex. 5 ¶ 8;

Daugherty Ex. 3 ¶ 8. On April 1, 2022, Highland transferred its interests in HERA and ERA to Daugherty pursuant to written agreements. Highland Ex. 52. Both HERA and ERA are Delaware limited liability companies. *Id.*

16. HERA and ERA were non-operating entities that did not have any employees, offices, servers, or email addresses. Trial Tr. at 183:17–185:7. The phrase "books and records (spreadsheet)" is not otherwise expressly defined in the settlement agreement.

17. On May 5, 2022, and October 19, 2022, Highland delivered certain documents and materials to Daugherty as reflected in Daugherty Exhibits 33 and 34. The May 2022 production included over 50MB of data and included all of HERA and ERA's (a) corporate governance records, (b) historical accounting records, and (c) historical tax filings. Trial Tr. at 192:6–21, 193:4–194:2. At Daugherty's request, Highland transmitted additional records in October 2022 that included legal invoices. Trial Tr. 80:16–81:11.

18. On February 29, 2024, HERA filed a lawsuit in the Northern District of Texas against 24 defendants. Case No. 3:24-cv-00498-K, Dkt. No. 1 (N.D. Tex.); *see also* Highland Ex. 54; Trial Tr. 198:22–199:9, 277:3–8.[8] In that case, there are pending motions to dismiss, and the district court stayed the case pending resolution of those motions to dismiss. Case No. 3:24-cv-00498-K, Dkt. No. 119. Daugherty testified that if HERA prevails on the motions to dismiss, it will seek discovery from Highland. Trial Tr. 277:18–22.

[8] The Court takes judicial notice of the docket in Case No. 3:24-cv-00498-K pending in the Northern District of Texas. Fed. R. Evid. 201(b)(2), (c)(1).

19. Daugherty performed and satisfied all obligations that the Settlement Agreement imposed upon him. Highland does not contest Daugherty's full performance of the Settlement Agreement. Daugherty's demand for specific performance relates to the HERA and ERA "books and records (spreadsheet)" provision of the settlement agreement. In particular, Daugherty seeks all materials "*related* to HERA and ERA" that are in Highland's possession. Dkt No. 102, ¶¶ 1, 27, 36 (emphasis added). Prior to filing his counterclaims in this adversary proceeding, Daugherty did not otherwise seek relief from this Court to enforce the settlement agreement.

## CONCLUSIONS OF LAW

20. The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334. This action is a core proceeding under 28 U.S.C. § 157(b)(2)(B) and (O). Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

***Burdens of Proof***

21. 11 U.S.C. § 502(a) states, "A claim . . . proof of which is filed under section 501 [the Bankruptcy Code], is deemed allowed, unless a party in interest . . . objects." A properly filed proof of claim is prima facie evidence of the claimant's entitlement to collect against assets of the debtor's estate. *Cal. State Bd. Of Equalization v. Off. Unsecured Creditors' Comm. (In re Fid. Holding Co.)*, 837 F.2d 696, 698 (5th Cir. 1988).

22. If a claim objection is filed, then the burden shifts to the objector to "produce evidence tending to defeat the claim that is of a probative force equal to that

of the creditor's proof of claim." *Simmons v. Savell (In re Simmons)*, 765 F.2d 547, 552 (5th Cir. 1985). If an objector produces evidence to rebut the prima facie validity of the claim, then the claimant must prove the validity of its claim by a preponderance of the evidence. *See United States v. Canada*, 574 B.R. 620, 627 (N.D. Tex. 2017).

23. Daugherty properly filed proof of claim number 205 and attached a compensation summary dated August 18, 2011, and the 2009 Compensation Statement. Case No. 19-34054, Dkt. No. 1280-2.[9] Thus, Highland must bring forward evidence equal in probative force to defeat Daugherty's claim.

***The Employment Agreement Absolves Highland of Any Liability to Daugherty.***

24. The parties do not contest that Texas law controls this dispute over Daugherty's Reserved Claim. Likewise, neither party contests the validity of the Employment Agreement. At issue, then, is how to construe the 2009 Compensation Statement.

25. "In construing a written contract, the primary concern of the court is to ascertain the true intentions of the parties as expressed in the instrument." *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983). "Incorporation by reference" allows courts to also consider separate documents that are plainly referred to in the contract. *See Zamora v. Swift Transp. Corp.*, 547 F. Supp. 2d 699, 702 (W.D. Tex. 2008) ("An employment agreement may incorporate, by reference, the terms of a separate

[9] Neither party in this adversary proceeding sought to introduce as an exhibit Daugherty's proof of claim number 205. Daugherty's unredacted proof of claim is inaccessible via Highland's claims administrator, Verita, is not filed elsewhere on the Court's docket, and was attached only in a redacted format to a prior motion filed in the related bankruptcy case.

document where the agreement directly and expressly refers to the separate document."); *Owen v. Hendricks*, 433 S.W.2d 164, 166 (Tex. 1968) ("It is uniformly held that an unsigned paper may be incorporated by reference in the paper signed by the person sought to be charged. The language used is not important provided the document signed by the defendant plainly refers to another writing.").

26. Article 3.1(a) of the Employment Agreement "plainly" states, ". . . annual salary . . . payable to the Executive . . . shall be communicated in writing to the Executive . . . ." Highland Ex. 11. The 2009 Compensation Statement was such a communication in writing related to Daugherty's compensation, and its terms are, therefore, incorporated in the Employment Agreement. The inquiry now turns to whether the terms in the 2009 Compensation Statement are ambiguous.

27. A contract is not ambiguous if its words can be given a certain or definite legal meaning. *Coker*, 650 S.W.2d at 393. On the other hand, ambiguity in a contract exists if its terms are uncertain, doubtful, or reasonably susceptible to more than one meaning. *Towers of Tex., Inc. v. J & J Sys., Inc.*, 834 S.W.2d 1, 2 (Tex. 1992). Parties to a disputed contract are likely to take conflicting interpretation views, "but neither conflicting expectations nor disputation is sufficient to *create* an ambiguity." *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994) (emphasis in original).

28. Neither Highland nor Daugherty argue that the Employment Agreement or the 2009 Compensation Statement are ambiguous. Rather, Highland argues that the 2009 Compensation Statement lacks material terms rendering it an indefinite agreement.

29. An alleged contract that fails to address all essential and material terms with a reasonable degree of certainty and definiteness is unenforceable as a matter of law. *See APS Cap. Corp. v. Mesa Air Grp. Inc.*, 580 F.3d 265, 272 (5th Cir. 2009) ("In order to be a legally enforceable contract, an agreement must be formed around the contours of sufficiently specific terms."). Material terms "are those that the parties would reasonably regard as vitally important elements of their bargain," and "a contract must define its essential terms with enough precision to enable the court to determine the obligations of the parties." *Tex. Architectural Aggregate, Inc. v. ACM-Tex., LLC (In re ACM-Tex., Inc.)*, 430 B.R. 371, 408 (Bankr. W.D. Tex. 2010) (internal citation omitted). Essential terms are unique to the type of agreement, and, in the employment context, essential terms include compensation, duties, and responsibilities. *See City of Hou. V. Williams*, 353 S.W.3d 128, 139 (Tex. 2011).

30. Legally, there is significant difference between ambiguity and indefiniteness. *See Marx v. FDP, LP*, 474 S.W.3d 368, 375 (Tex. App.—San Antonio 2015, pet. denied) ("Unlike the trial court's obligation to resolve any ambiguity necessary to enforce a contract, indefiniteness in a contract makes the contract unenforceable."); *Sifuentes v. Carrillo*, 982 S.W.2d 500, 504 (Tex. App.—San Antonio 1998, pet. denied). When an ambiguity is discovered, courts seek to resolve the ambiguity "by looking at the contract as a whole in light of the circumstances present when the contract was entered" to ascertain the parties' intent. *Coker*, 650 S.W.2d at 393–94. "As a general matter, Texas courts have consistently held that a contract may be held void for indefiniteness if it fails to specify" essential terms. *Liberto v.*

*D.F. Stauffer Biscuit Co.*, 441 F.3d 318, 324 (5th Cir. 2006). In either instance, however, determining whether the contract is ambiguous or indefinite is a question of law. *See Coker*, 650 S.W.2d at 394; *Abatement Inc. v. Williams*, 324 S.W.3d 858, 862 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

31. The Employment Agreement incorporates by reference the 2009 Compensation Statement, such that, read together, the contract contains all material terms and is not indefinite. The following language, though, from the 2009 Compensation Statement is ambiguous:

> Refund is an estimated amount. If actual refund deviates materially from estimate, other compensation will be fairly adjusted. Refund is expected to be received in approximately 4 months.

In particular, the phrases "deviates materially," "other compensation," and "fairly adjusted" are all uncertain and reasonably susceptible to more than one meaning. There are no other provisions in the Employment Agreement or the 2009 Compensation Statement that give certain or definite legal meaning to these phrases. Thus, the Court must resolve the ambiguity to enforce the agreement.

32. The "ultimate goal" when resolving an ambiguity "is always to determine the parties' intent as objectively expressed in the words of their agreement." *Endeavor Energy Res., L.P. v. Energen Res. Corp.*, 615 S.W.3d 144, 148 (Tex. 2020). To that end, courts may consider the facts and circumstances surrounding the contract, including "objectively determinable factors that give context to the parties' transaction." *Id.* (internal quotation and citation omitted). And while this extrinsic evidence is helpful in resolving the ambiguity, courts cannot

interpret "contractual language to say what it unambiguously does not say." *Id.* (citation modified).

33. There can be little doubt that Highland intended the tax refund referenced in the 2009 Compensation Statement to be Daugherty's bonus for his work performed in 2008. Daugherty seemingly admits as much in his proof of claim. The ambiguity arises from the remaining language of the 2009 Compensation Statement that provided for a fair adjustment to other compensation if the refund amount materially deviated from the estimate. Highland Ex. 13; Daugherty Ex. 14.

34. Daugherty asserts the language obligates Highland to compensate Daugherty if the IRS Audit results in him paying back to the IRS all or part of the refund he received in 2009. Dkt. No. 102, ¶¶ 10–12. Highland argues the language is too vague and indefinite to create an enforceable obligation. Dkt. No. 101, ¶¶ 29–39.

35. The Court endeavors to resolve the ambiguity by determining the parties' intent from the entirety of the Employment Agreement and 2009 Compensation Statement. In doing so, the Court gives the words used in these documents their plain and ordinary meaning because they were not specifically defined or used in a technical manner. *See Plains Expl. & Prod. Co. v. Torch Energy Advisors Inc.*, 473 S.W.3d 296, 307 (Tex. 2015). The Court concludes that, as a component of Daugherty's compensation, Highland estimated Daugherty's refund at $1,475,816 and, if the refund amount he received materially deviated from that estimate, Highland would adjust his other compensation to make up the difference.

Highland Ex. 13, Daugherty Ex. 14. Certainly, it is a material deviation if Daugherty must pay back the entire amount he received as a refund on account of the IRS Audit.

36. Nonetheless, whether the 2009 Compensation Statement language is ambiguous and capable of resolution is immaterial, because Daugherty's Reserved Claim faces a bigger obstacle for allowance against Highland's bankruptcy estate. While the language used in the 2009 Compensation Statement is susceptible to more than one meaning, the termination provisions in the Employment Agreement are clear and unambiguous.

37. Sections 4.5 and 4.6 of the Employment Agreement deal with an executive's voluntary termination of their employment with Highland. Each provision contains the following language:

> In the event the Executive declines to sign the separation agreement and release, he/she shall not be entitled to any severance, ***and*** the Company will have no further liability or obligation to the Executive under this Agreement or in connection with his/her employment or termination.

Highland Ex. 11 at 6 (emphasis added). Attached to the Employment Agreement as Exhibit A is the form separation agreement and release.

38. Daugherty submitted his resignation from Highland in September 2011 with an effective date of October 31, 2011. Highland Ex. 12; Daugherty Ex. 15. If Daugherty signed the separation agreement attached as Exhibit A, under the Employment Agreement, Daugherty would have been entitled to severance pay and additional earned compensation or benefits, including, potentially, a true up of the 2008 Tax Refund. Daugherty did not sign the separation agreement and release.

39. In fact, Daugherty attempted to negotiate a different general release and separation agreement with Highland prior to his last day with the company. *See* Highland Ex. 41. This separation agreement specifically referenced in paragraph 3.(c)(ii) Daugherty's right to payment from Highland if Daugherty were obligated to pay back the 2008 Tax Refund to the IRS. *Id.*, ¶ 3.(c)(ii). Daugherty did not sign this separation agreement either.

40. Therefore, the Court finds that the Employment Agreement controls whether Daugherty's Reserved Claim should be allowed against the Highland bankruptcy estate. Pursuant to its express terms, Highland is absolved of all liability or obligations to Daugherty because he failed to execute either of the separation agreements presented to him. The Reserved Claim is disallowed.

***Dondero's Oral Promises did not Create an Enforceable Guaranty.***

41. To the extent Daugherty argues Dondero's promises are binding agreements to cover his contingent tax liability, this argument also fails.

42. "[I]t is so obviously just that a promisor receiving no benefits should be bound only by the exact terms of his promise." *Davis v. Patrick*, 141 U.S. 479, 488 (1891). In Texas, a promise by one person to answer for the debt of another person, must be in writing and "signed by the person to be charged with the promise or

agreement or by someone lawfully authorized to sign for him." Tex. Bus. & Com. Code § 26.01(a), (b)(2).[10]

43. There is, however, an exception to the general rule that a promise to pay another's debt must be in writing—the main purpose doctrine.

> [W]herever the main purpose and object of the promisor is, not to answer for another, but to subserve some purpose of his own, his promise is not within the statute [of frauds], although it may be in form a promise to pay the debt of another, and although the performance of it may incidentally have the effect of extinguishing the liability of another.

*Lemmon v. Box*, 20 Tex. 329, 332 (1857). Three elements must be met to satisfy the main purpose doctrine and thereby remove the promise from the statute of frauds:

> (1) the promisor intended to create primary responsibility in itself to pay the debt; (2) there was consideration for the promise; and (3) the consideration given for the promise was primarily for the promisor's own use and benefit—that is, the benefit it received was the promisor's main purpose for making the promise.

*Cruz v. Andrews Restoration, Inc.*, 364 S.W.3d 817, 828 (Tex. 2012). "Consideration is a bargained-for exchange of promises or return performance and consists of benefits and detriments to the contracting parties." *Marx*, 474 S.W.3d at 378. Without it, a contract is unenforceable. *Id.*

---

[10] The Texas Business and Commerce Code defines "person" as "an individual, corporation, business trust, estate, trust, partnership, limited liability company, association, joint venture, government, governmental subdivision, agency, or instrumentality, public corporation, any other legal or commercial entity, or a protected series or registered series of a for-profit entity." Tex. Bus. & Com. Code § 1.201(b)(27).

The evidence before the Court is that Daugherty worked in Highland's Texas office, negotiated his separation while in Texas, and the Employment Agreement identifies Texas in its "choice of law" provision. Thus, the Court will consider Texas law when construing Daugherty's testimony about Highland's promise to pay his unliquidated tax liability.

44. Assuming without deciding that Highland intended to create primary responsibility in itself to pay Daugherty's tax liability, the promise fails because there was no consideration. Though Daugherty testified that Dondero repeatedly promised to cover his tax liability, the only evidence before the Court of consideration for such promise is an unexecuted separation agreement. Highland Ex. 41. In that unexecuted separation agreement, Daugherty would give certain releases in favor of Highland and its subsidiaries in exchange for Highland's promise to pay "a 'Notice of Tax Due' or other such letter from a governmental taxing authority demanding payment for taxes that relates to an Internal Revenue Service audit." *Id.*, ¶¶ 3(c)(ii), 4. Neither party, however, agreed to be bound by the terms of the separation agreement, and there is no evidence that Dondero's oral promise, made conceivably on behalf of Highland, is relieved from the statute of frauds. These unwritten promises are not enforceable and, likewise, prohibit Daugherty from collecting his Reserved Claim from Highland's bankruptcy estate.

45. Based on an argument that Dondero promised to make Daugherty whole, for the reasons set forth above, Daugherty's Reserved Claim is disallowed.

***Highland Fulfilled its Obligations under the Settlement Agreement.***

46. Daugherty bears the burden of proving that Highland breached the settlement agreement by failing to turnover the HERA and ERA "books and records (spreadsheet)," which is remedied only by specific performance. *Movora LLC v. Gendreau*, 345 A.3d 997, 1011 (Del. 2025); *In re IBP, Inc. S'holders Litig.*, 789 A.2d 14, 53 (Del. Ch. 2001). To obtain specific performance under Delaware law, a plaintiff

must prove by clear and convincing evidence: (1) a valid contract exists, (2) the plaintiff is ready, willing, and able to perform, (3) a legal remedy would be inadequate, and (4) the balance of equities tips in favor of the party seeking specific performance. *Am. Healthcare Admin. Servs., Inc. v. Aizen*, 285 A.3d 461, 495 (Del. Ch. 2022).

47. "Delaware adheres to the objective theory of contracts, i.e. a contract's construction should be that which would be understood by an objective, reasonable third party." *Osborn v. Kemp*, 991 A.2d 1153, 1159 (Del. 2010). Courts will give effect to the plain-meaning of a contract's terms and provisions where they are clear and unambiguous. *Id.* at 1159–60.

48. To that end, the Delaware Court of Chancery has stated that "[t]he meaning of the term 'books and records' can readily be understood through § 18–305 of the LLC Act and through its corporate law and limited partnership law counterparts, 8 Del. C. § 220 and 6 Del. C. § 17–305, respectively."[11] *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.*, No. CIV.A. 18928, 2002 WL 205681, at *3 n.3 (Del. Ch. Jan. 29, 2002) (finding tax returns were within the scope of a contractual "books and records" provision). The Delaware Limited Liability Company Act, 6 Del. C. § 18-305(a), generally identifies, at a minimum, the statutory books and records that a Delaware LLC must provide to its managers for inspection:

> (1) True and full information regarding the status of the business and financial condition of the limited liability company;

[11] 8 Del. C. § 220, the corporate books and records provision, sets out defined categories of corporate financial and governance documents and does not have a "just and reasonable" category. The Delaware Limited Partnership Law books and records provision, 6 Del. C. § 17–305, is substantially similar to the Delaware LLC Law's provision.

(2) Promptly after becoming available, a copy of the limited liability company's federal, state and local income tax returns for each year;

(3) A current list of the name and last known business, residence or mailing address of each member and manager;

(4) A copy of any written limited liability company agreement and certificate of formation and all amendments thereto, together with executed copies of any written powers of attorney pursuant to which the limited liability company agreement and any certificate and all amendments thereto have been executed;

(5) True and full information regarding the amount of cash and a description and statement of the agreed value of any other property or services contributed by each member and which each member has agreed to contribute in the future, and the date on which each became a member; and

(6) Other information regarding the affairs of the limited liability company as is just and reasonable.

49. Highland provided Daugherty with HERA and ERA's financial, governance, and tax records. And, at Daugherty's request, Highland provided additional information that supported HERA and ERA's financial records. Daugherty's requests for "all" documents or documents that "related to" HERA and ERA were not "just and reasonable," and Highland was under no obligation to satisfy them. The Court thus finds that Highland did not breach the Books and Records Provision of the settlement agreement, and Daugherty is not entitled to specific performance.

50. The Court's conclusion here is without prejudice to HERA seeking discovery from Highland in connection with its lawsuit pending in the Northern District of Texas.

**CONCLUSION**

Daugherty's Reserved Claim is disallowed, and he shall collect nothing further from Highland's bankruptcy estate or the claimant trust. Daugherty's counterclaim for breach of contract and specific performance is denied. The Court will issue a judgment consistent with this Memorandum Opinion.

### End of Memorandum Opinion ###

Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**Gray Reed & McGraw LLP**
1845 Woodall Rogers Freeway, Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>HIGHLAND CAPITAL MANAGEMENT, L.P.,[1]<br><br>Reorganized Debtor. | §<br>§<br>§<br>§<br>§<br>§ | Chapter 11<br><br>CASE NO. 19-34054-sgj11 |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,<br><br>Plaintiff/Counter-Defendant,<br><br>v.<br><br>PATRICK HAGAMAN DAUGHERTY,<br><br>Defendant/Counter-Plaintiff | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | <br><br><br>ADV. PROC. NO. 25-03055-bwo |

**NOTICE OF APPEAL**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, Texas 75201.

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s): **Patrick Daugherty**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.

☐ Plaintiff
☒ Defendant
☐ Other (describe):

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed: **Judgment [Docket No. 138], attached hereto as Exhibit A.**

2. State the date on which the judgment, order, or decree was entered: **July 24, 2026.**

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Patrick Daugherty

Jason S. Brookner
Texas Bar No. 24033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507
**GRAY REED & McGRAW LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

| | |
|---|---|
| 2. Highland Capital Management, L.P. and Highland Claimant Trust | Jeffrey N. Pomerantz (admitted *pro hac vice)*<br>John A. Morris (admitted *pro hac vice*)<br>Gregory V. Dmo (admitted *pro hac vice*)<br>Hayley R. Winograd (admitted *pro hac vice*)<br>**PACHULSKI STANG ZIEHL & JONES LLP**<br>10100 Santa Monica Blvd., 13th Floor<br>Los Angeles, California 90067<br>Telephone: (310) 277-6910<br>Facsimile: (310) 201-0760<br>Email: jpomerantz@pszjlaw.com<br>jmorris@pszjlaw.com<br>gdemo@pszjlaw.com<br>hwinograd@pszjlaw.com<br><br>-and-<br><br>Melissa S. Hayward<br>Texas Bar No. 24044908<br>Zachery Z. Annable<br>Texas Bar No. 24053075<br>**HAYWARD PLLC**<br>10501 N. Central Expwy., Suite 106<br>Dallas, Texas 75231<br>Telephone: (972) 755-7100<br>Facsimile: (972) 75507110<br>Email: mhayward@haywardfirm.com<br>zannble@haywardfirm.com |

**Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign Below**

Respectfully submitted this seventh day of August, 2026.

**GRAY REED**

By: */s/ Andrew K. York*
Jason S. Brookner
Texas Bar No. 240033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507

1845 Woodall Rogers Freeway, Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this seventh day of August, 2026, via the CM/ECF system and/or email.

*/s/ Andrew K. York*
ANDREW K. YORK

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| ______________________ | § | ______________________ |
| | § | |
| Highland Capital Management, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Adversary No. 25-03055-bwo |
| | § | |
| Patrick Hagaman Daugherty, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**JUDGMENT**

Consistent with the Memorandum Opinion issued on this date, it is hereby

ORDERED, ADJUDGED, AND DECREED that Patrick Hagaman Daugherty's ("Daugherty") Reserved Claim[1] is disallowed; it is further

ORDERED, ADJUDGED, AND DECREED that Highland Capital Management, L.P. ("Highland") did not breach its obligations under the Settlement Agreement between Highland and Daugherty dated November 22, 2021, and approved by this Court on March 8, 2022 (the "Settlement Agreement"); it is further

ORDERED, ADJUDGED, AND DECREED that Daugherty's request for specific performance of the Settlement Agreement is denied; and it is further

ORDERED, ADJUDGED, AND DECREED that any relief not expressly granted herein is denied.

This Judgment disposes of all parties and all claims in this adversary proceeding.

### End of Judgment ###

[1] "Reserved Claim" has the same meaning given to it in the Court's Memorandum Opinion.

Jason S. Brookner (Texas Bar No. 240033684)
Andrew K. York (Texas Bar No. 24051554)
Joshua D. Smeltzer (Texas Bar No. 24113859)
Drake M. Rayshell (Texas Bar No. 24118507)
**Gray Reed & McGraw LLP**
1845 Woodall Rogers Freeway, Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P.,[1] | § | CASE NO. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| | § | |
| | § | |
| HIGHLAND CAPITAL MANAGEMENT, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | ADV. PROC. NO. 25-03055-bwo |
| | § | |
| v. | § | |
| | § | |
| PATRICK HAGAMAN DAUGHERTY, | § | |
| | § | |
| Defendant/Counter-Plaintiff | § | |
| | § | |

**NOTICE OF APPEAL**

[1] Highland's last four digits of its taxpayer identification number are (8357). The headquarters and service address for Highland is 100 Crescent Court, Suite 1850, Dallas, Texas 75201.

**Part 1: Identify the appellant(s)**

1. Name(s) of appellant(s): **Patrick Daugherty**

2. Position of appellant(s) in the adversary proceeding or bankruptcy case that is the subject of this appeal:

For appeals in an adversary proceeding.

☐ Plaintiff
☒ Defendant
☐ Other (describe):

**Part 2: Identify the subject of this appeal**

1. Describe the judgment, order, or decree appealed: **Judgment [Docket No. 138], attached hereto as Exhibit A.**

2. State the date on which the judgment, order, or decree was entered: **July 24, 2026.**

**Part 3: Identify the other parties to the appeal**

List the names of all parties to the judgment, order, or decree appealed from and the names, addresses, and telephone numbers of their attorneys (attach additional pages if necessary):

1. Patrick Daugherty

Jason S. Brookner
Texas Bar No. 24033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507
**GRAY REED & McGRAW LLP**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

2. Highland Capital Management, L.P. and Highland Claimant Trust

Jeffrey N. Pomerantz (admitted *pro hac vice)*
John A. Morris (admitted *pro hac vice*)
Gregory V. Dmo (admitted *pro hac vice*)
Hayley R. Winograd (admitted *pro hac vice*)
**PACHULSKI STANG ZIEHL & JONES LLP**
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
jmorris@pszjlaw.com
gdemo@pszjlaw.com
hwinograd@pszjlaw.com

-and-

Melissa S. Hayward
Texas Bar No. 24044908
Zachery Z. Annable
Texas Bar No. 24053075
**HAYWARD PLLC**
10501 N. Central Expwy., Suite 106
Dallas, Texas 75231
Telephone: (972) 755-7100
Facsimile: (972) 75507110
Email: mhayward@haywardfirm.com
zannble@haywardfirm.com

**<u>Part 4: Optional election to have appeal heard by District Court (applicable only in certain districts)</u>**

If a Bankruptcy Appellate Panel is available in this judicial district, the Bankruptcy Appellate Panel will hear this appeal unless, pursuant to 28 U.S.C. § 158(c)(1), a party elects to have the appeal heard by the United States District Court. If an appellant filing this notice wishes to have the appeal heard by the United States District Court, check below. Do not check the box if the appellant wishes the Bankruptcy Appellate Panel to hear the appeal.

☐ Appellant(s) elect to have the appeal heard by the United States District Court rather than by the Bankruptcy Appellate Panel.

**Part 5: Sign Below**

Respectfully submitted this seventh day of August, 2026.

**GRAY REED**

By: */s/ Andrew K. York*
Jason S. Brookner
Texas Bar No. 240033684
Andrew K. York
Texas Bar No. 24051554
Joshua D. Smeltzer
Texas Bar No. 24113859
J. Reid Burley
Texas Bar No. 24109675
Drake M. Rayshell
Texas Bar No. 24118507

1845 Woodall Rogers Freeway, Suite 1300
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email: jbrookner@grayreed.com
dyork@grayreed.com
jsmeltzer@grayreed.com
rburley@grayreed.com
drayshell@grayreed.com

*Counsel to Patrick Daugherty*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing instrument was served on all Parties or counsel of record herein on this seventh day of August, 2026, via the CM/ECF system and/or email.

*/s/ Andrew K. York*
ANDREW K. YORK

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed July 24, 2026**

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| Highland Capital Management, L.P., | § | Case No. 19-34054-sgj11 |
| | § | |
| Reorganized Debtor. | § | |
| ______________________________ | § | ______________________________ |
| | § | |
| Highland Capital Management, L.P., | § | |
| | § | |
| Plaintiff/Counter-Defendant, | § | |
| | § | |
| v. | § | Adversary No. 25-03055-bwo |
| | § | |
| Patrick Hagaman Daugherty, | § | |
| | § | |
| Defendant/Counter-Plaintiff. | § | |

**JUDGMENT**

Consistent with the Memorandum Opinion issued on this date, it is hereby

ORDERED, ADJUDGED, AND DECREED that Patrick Hagaman Daugherty's ("Daugherty") Reserved Claim[1] is disallowed; it is further

ORDERED, ADJUDGED, AND DECREED that Highland Capital Management, L.P. ("Highland") did not breach its obligations under the Settlement Agreement between Highland and Daugherty dated November 22, 2021, and approved by this Court on March 8, 2022 (the "Settlement Agreement"); it is further

ORDERED, ADJUDGED, AND DECREED that Daugherty's request for specific performance of the Settlement Agreement is denied; and it is further

ORDERED, ADJUDGED, AND DECREED that any relief not expressly granted herein is denied.

This Judgment disposes of all parties and all claims in this adversary proceeding.

### End of Judgment ###

[1] "Reserved Claim" has the same meaning given to it in the Court's Memorandum Opinion.

BTXN 116 (rev. 07/08)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# APPEAL SERVICE LIST

## Transmission of the Record

BK Case No.: 19−34054−sgj11

Adversary No.: 25−03055−bwo

Received in District Court by: ___________

Date: ________

Volume Number(s): _______

cc: Brad W Odell
Alicia Barcomb

Attorney(s) for Appellant
US Trustee

**Appellant** Patrick Daugherty

Jason S. Brookner
Andrew K. York
Joshua D. Smeltzer
J. Reid Burley
Drake M. Rayshell
GRAY REED & McGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954−4135

**Appellee** Highland Capital Management, L.P. and Highland Claimant Trust

Jeffrey N. Pomerantz (admitted pro hac vice)
John A. Morris (admitted pro hac vice)
Gregory V. Dmo (admitted pro hac vice)
Hayley R. Winograd (admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277−6910

And

Melissa S. Hayward
Zachery Z. Annable
HAYWARD PLLC
10501 N. Central Expwy., Suite 106
Dallas, Texas 75231
Telephone: (972) 755−7100

BTXN 010 (rev. 03/04)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Highland Capital Management, L.P.<br>Debtor(s) | § | Case No.: 19−34054−sgj11 |
| Patrick Daugherty<br>Appellant(s) | § | Adversary No.: 25−03055−bwo |
| vs.<br>Highland Capital Management, L.P. and Highland Claimant Trust<br>Appellee(s) | § | |

## CERTIFICATE OF MAILING

Notice of Appeal Filed By: Patrick Daugherty

Re: [138] Judgment

The Notice of Appeal was noticed to the parties, indicated by attachment, by either electronic transmission or U.S. mail on August 11, 2026.

DATED: 8/11/26

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk

BTXN 113 (rev. 3/18)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

In Re:
Highland Capital Management, L.P.
Debtor(s)

Patrick Daugherty
Appellant(s)

vs.

Highland Capital Management, L.P. and Highland Claimant Trust
Appellee(s)

Case No.: 19−34054−sgj11

Adversary No.: 25−03055−bwo

## NOTICE REGARDING THE RECORD FOR A BANKRUPTCY APPEAL

Federal Rule of Bankruptcy Procedure 8009 prescribes the deadlines for filing the designations of items to be included in the record, requires copies to be submitted to the bankruptcy clerk to prepare the record, and directs all parties to "take any other action necessary to enable the clerk to assemble and transmit the record." Fed.R.Bankr.P. 8009(g). The purpose of this notice is to provide guidance on the local application of this rule.

**DESIGNATION OF THE RECORD**

- If you are the appellant, when designating items for inclusion in the record,
    - ♦ list the following items first, in this order: (1) the notice of appeal, (2) the judgment, order, or decree appealed from, (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court, and (4) the docket sheet;
    - ♦ then list the *other* items to be included, leaving for the end of your list any sealed documents, any exhibits, and any transcripts.
- If you are the appellee, cross−appellant, or cross−appellee and are designating additional items,
    - ♦ list the following items first, in this order: (1) any notice of cross−appeal, (2) any judgment, order, or decree appealed from that the appellant has not designated, and (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court that the appellant has not designated;
    - ♦ then list the *other* items to be included, leaving for the end of your list any sealed documents , any exhibits, and any transcripts.
- All parties designating items to be included in the record on appeal must
    - ♦ for each item, specify the document number shown on the docket sheet. If an item does not have a document number, specify the date the item was filed.

- If you have designated a transcript that has not been filed, order it immediately by contacting the presiding bankruptcy judge's courtroom deputy or following the instructions at http://www.txnb.uscourts.gov/transcript−and−tape−orders.

**ASSEMBLY OF THE RECORD**

Within 14 days of filing your designation of the record, pursuant to Rule 8009, submit to the bankruptcy clerk any item that is **not available in the ECF system**, using this procedure:

- Enclose sealed items and non−documentary items (e.g., removable media) in 8.5" x 11" envelopes.

- Copy all other items in PDF files to a removable storage device (e.g., USB drives, DVDs, etc.), organized in the sequence in which they were designated. Limit files to 5.0 MB in size and do not include color.

- Save copies of court exhibits in PDF files to a removable storage device, organized in the sequence in which they are designated. Limit files to 5.0 MB in size and do not include color. (Use a separate removable storage device for each hearing.)

- Label any submission with the case caption and bankruptcy court case and/or adversary proceeding number.

**TRANSMITTAL OF THE RECORD**

- The bankruptcy clerk will electronically transmit the record to the district clerk. The parties must provide a paper copy of the record, if required.

**REQUIREMENTS REGARDING PAPER RECORD**

- If the district judge requires a paper copy, the district clerk will notify you that you are required to provide a copy of the items in *your* designation **to the bankruptcy clerk**, for quality review.

- If you are notified to provide a paper copy, organize the record according to the volumes maintained in the **district court's ECF system**.

- Even if a paper copy is not required when an appeal is entered on the docket, the district judge or the district clerk may later notify you that a paper copy is required for the use of the district judge or the court of appeals.

DATED: 8/11/26

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk

BTXN 049 (rev. 03/15)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| In Re:<br>Highland Capital Management, L.P.<br>Debtor(s) | § | Case No.: 19−34054−sgj11<br>Chapter No.: 11 |
| Highland Capital Management, L.P.<br>Plaintiff(s)<br>vs.<br>Patrick Hagaman Daugherty et al.<br>Defendant(s) | § | Adversary No.: 25−03055−bwo<br><br>Civil Case No.: |
| Patrick Hagaman Daugherty<br>Appellant(s)<br>vs.<br>Highland Capital Management, L.P. and Highland Claimant Trust<br>Appellee(s) | § | |

## NOTICE OF TRANSMITTAL

I am transmitting:

- ☐ The Motion for leave to Appeal 28 U.S.C. § (USDC Civil Action No. DNC Case).
- ☐ The Motion for Stay Pending Appeal (USDC Action No. − DNC Case).
- ☐ The Proposed Findings of Fact and Conclusions of Law.
- ☐ The Motion to Extend Time To File Designation (USDC Civil Action No DNC Case).
- ☐ On , the Record on Appeal was transmitted. The designation of record or item(s) designated by were not filed when the record was transmitted. The item(s) were filed on awaiting instructions from the assigned district judge.
- ☐ Other
- ☑ Copies of: Notice of appeal, appealed order [138] and supporting documents

**TO ALL ATTORNEYS**: File all subsequent papers captioned and numbered with the appropriate division of the United States District Clerk's Office. Any questions concerning this proceeding should be directed to the U.S. District Clerk's Office at (214) 753−2200.

DATED: 8/11/26

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk

BTXN 116 (rev. 07/08)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# APPEAL SERVICE LIST

## Transmission of the Record

BK Case No.: 19−34054−sgj11

Adversary No.: 25−03055−bwo

Received in District Court by: ___________

Date: ________

Volume Number(s): _______

cc: Brad W Odell
Alicia Barcomb

Attorney(s) for Appellant
US Trustee

**Appellant** Patrick Daugherty

Jason S. Brookner
Andrew K. York
Joshua D. Smeltzer
J. Reid Burley
Drake M. Rayshell
GRAY REED & McGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954−4135

**Appellee** Highland Capital Management, L.P. and Highland Claimant Trust

Jeffrey N. Pomerantz (admitted pro hac vice)
John A. Morris (admitted pro hac vice)
Gregory V. Dmo (admitted pro hac vice)
Hayley R. Winograd (admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277−6910

And

Melissa S. Hayward
Zachery Z. Annable
HAYWARD PLLC
10501 N. Central Expwy., Suite 106
Dallas, Texas 75231
Telephone: (972) 755−7100

BTXN 150 (rev. 11/10)

In Re:
Highland Capital Management, L.P.
Debtor(s)

Highland Capital Management, L.P.
Plaintiff(s)

vs.
Patrick Hagaman Daugherty et al.
Defendant(s)

Case No.: 19−34054−sgj11
Chapter No.: 11

Adversary No.: 25−03055−bwo

# CIVIL CASE COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.

**I.** (a) **APPELLANT**
Patrick Daugherty

(b) County of Residence of First Listed Party:
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jason S. Brookner
Andrew K. York
Joshua D. Smeltzer
J. Reid Burley
Drake M. Rayshell
GRAY REED & McGRAW LLP
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954−4135

**APPELLEE**
Highland Capital Management, L.P. and Highland Claimant Trust

County of Residence of First Listed Party:
(IN U.S. PLAINTIFF CASES ONLY)

Attorney's (If Known)
Jeffrey N. Pomerantz (admitted pro hac vice)
John A. Morris (admitted pro hac vice)
Gregory V. Dmo (admitted pro hac vice)
Hayley R. Winograd (admitted pro hac vice)
PACHULSKI STANG ZIEHL & JONES LLP
10100 Santa Monica Blvd., 13th Floor
Los Angeles, California 90067
Telephone: (310) 277−6910

And

Melissa S. Hayward
Zachery Z. Annable
HAYWARD PLLC
10501 N. Central Expwy., Suite 106
Dallas, Texas 75231
Telephone: (972) 755−7100

## II. BASIS OF JURISDICTION

( ) 1 U.S. Government Plaintiff
( ) 2 U.S. Government Defendant
(•) 3 Federal Question (U.S. Government Not a Party)
( ) 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES

| | | | | | |
|---|---|---|---|---|---|
| Citizen of This State | ( ) 1 | ( ) 1 | Incorporated *or* Principal Place of Business In This State | ( ) 4 | ( ) 4 |
| Citizen of Another State | ( ) 2 | ( ) 2 | Incorporated *and* Principal Place of Business In Another State | ( ) 5 | ( ) 5 |
| Citizen or Subject of a Foreign Country | ( ) 3 | ( ) 3 | Foreign Nation | ( ) 6 | ( ) 6 |

## IV. NATURE OF SUIT

(•) 422 Appeal 28 USC 158
( ) 423 Withdrawal 28 USC 157
( ) 890 Other Statutory Actions

## V. ORIGIN

(•) 1 Original Proceeding
( ) 2 Removed from State Court
( ) 3 Remanded from Appellate Court
( ) 4 Reinstated or Reopened
( ) 5 Transferred from another district
( ) 6 Multidistrict Litigation
( ) 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing **(Do not cite jurisdictional statutes unless diversity):**
422 Appeal 28 USC 158

Brief description of cause:
Notice of appeal of a bankruptcy court order

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23 DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
Judge: Docket Number: 3:25−cv−02584−E

DATED: 8/11/26

FOR THE COURT:
Stephen J Manz, Clerk of Court
by: /s/Sheniqua Whitaker, Deputy Clerk

United States Bankruptcy Court
Northern District of Texas

Highland Capital Management, L.P.,
Plaintiff
Daugherty,
Defendant

Adv. Proc. No. 25-03055-bwo

# CERTIFICATE OF NOTICE

District/off: 0539-3 User: admin Page 1 of 2
Date Rcvd: Aug 11, 2026 Form ID: BTXN113 Total Noticed: 6

The following symbols are used throughout this certificate:

| Symbol | Definition |
|---|---|
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Aug 13, 2026:**

NONE

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| ust | + | Email/Text: ustpregion06.ty.ecf@usdoj.gov | Aug 11 2026 22:21:00 | US Trustee, Office of the U.S. Trustee, 110 N. College Ave., Suite 300, Tyler, TX 75702-7231 |
| ust | + | Email/Text: ustpregion06.da.ecf@usdoj.gov | Aug 11 2026 22:21:00 | United States Trustee, 1100 Commerce Street, Room 976, Dallas, TX 75242-0996 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Aug 11 2026 22:21:00 | United States Trustee - AU12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Aug 11 2026 22:21:00 | United States Trustee - MD12, US Trustee's Office, 230 Homer Thornberry Judicial Bldg., 903 San Jacinto Blvd., Austin, TX 78701-2450 |
| ust | + | Email/Text: USTPRegion07.SN.ECF@usdoj.gov | Aug 11 2026 22:21:00 | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |
| ust | + | Email/Text: ustpregion07.au.ecf@usdoj.gov | Aug 11 2026 22:21:00 | United States Trustee - WA12, United States Trustee, 903 San Jacinto Blvd, Suite 230, Austin, TX 78701-2450 |

TOTAL: 6

# BYPASSED RECIPIENTS

**The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.**

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| ust | *+ | United States Trustee - SA12, US Trustee's Office, 615 E Houston, Suite 533, San Antonio, TX 78205-2055 |

TOTAL: 0 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

**I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.**

**Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.**

District/off: 0539-3 User: admin Page 2 of 2
Date Rcvd: Aug 11, 2026 Form ID: BTXN113 Total Noticed: 6

Date: Aug 13, 2026 Signature: /s/Gustava Winters

# CM/ECF NOTICE OF ELECTRONIC FILING

**The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on August 11, 2026 at the address(es) listed below:**

| Name | Email Address |
|---|---|
| Andrew K. York | on behalf of Defendant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Andrew K. York | on behalf of Counter-Claimant Patrick Hagaman Daugherty dyork@grayreed.com slangley@grayreed.com |
| Gregory V. Demo | on behalf of Counter-Defendant Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Gregory V. Demo | on behalf of Plaintiff Highland Capital Management L.P. gdemo@pszjlaw.com, jo'neill@pszjlaw.com;ljones@pszjlaw.com;jfried@pszjlaw.com;ikharasch@pszjlaw.com;jmorris@pszjlaw.com;jpomerantz@pszjlaw.com;hwinograd@pszjlaw.com;kyee@pszjlaw.com;lsc@pszjlaw.com |
| Hayley R Winograd | on behalf of Plaintiff Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Hayley R Winograd | on behalf of Counter-Defendant Highland Capital Management L.P. hwinograd@allenmatkins.com |
| Jeffrey Nathan Pomerantz | on behalf of Plaintiff Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Nathan Pomerantz | on behalf of Counter-Defendant Highland Capital Management L.P. jpomerantz@pszjlaw.com |
| Jeffrey Reid Burley | on behalf of Defendant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| Jeffrey Reid Burley | on behalf of Counter-Claimant Patrick Hagaman Daugherty rburley@grayreed.com hpetrea@bellnunnally.com |
| John A Morris | on behalf of Counter-Defendant Highland Capital Management L.P. jmorris@pszjlaw.com |
| John A Morris | on behalf of Plaintiff Highland Capital Management L.P. jmorris@pszjlaw.com |
| Melissa S. Hayward | on behalf of Plaintiff Highland Capital Management L.P. MHayward@HaywardFirm.com, mholmes@HaywardFirm.com |
| Zachery Z. Annable | on behalf of Plaintiff Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |
| Zachery Z. Annable | on behalf of Counter-Defendant Highland Capital Management L.P. zannable@haywardfirm.com, mholmes@haywardfirm.com |

TOTAL: 15

BTXN 113 (rev. 3/18)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

In Re:
Highland Capital Management, L.P.
Debtor(s)
Patrick Daugherty
Appellant(s)
vs.
Highland Capital Management, L.P. and Highland Claimant Trust
Appellee(s)

§ § § § § § § § § § § § § §

Case No.: 19−34054−sgj11

Adversary No.: 25−03055−bwo

## NOTICE REGARDING THE RECORD FOR A BANKRUPTCY APPEAL

Federal Rule of Bankruptcy Procedure 8009 prescribes the deadlines for filing the designations of items to be included in the record, requires copies to be submitted to the bankruptcy clerk to prepare the record, and directs all parties to "take any other action necessary to enable the clerk to assemble and transmit the record." Fed.R.Bankr.P. 8009(g). The purpose of this notice is to provide guidance on the local application of this rule.

**DESIGNATION OF THE RECORD**

- If you are the appellant, when designating items for inclusion in the record,
    - ♦ list the following items first, in this order: (1) the notice of appeal, (2) the judgment, order, or decree appealed from, (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court, and (4) the docket sheet;
    - ♦ then list the *other* items to be included, leaving for the end of your list any sealed documents, any exhibits, and any transcripts.
- If you are the appellee, cross−appellant, or cross−appellee and are designating additional items,
    - ♦ list the following items first, in this order: (1) any notice of cross−appeal, (2) any judgment, order, or decree appealed from that the appellant has not designated, and (3) any opinion, findings of fact, and conclusions of law of the bankruptcy court that the appellant has not designated;
    - ♦ then list the *other* items to be included, leaving for the end of your list any sealed documents , any exhibits, and any transcripts.
- All parties designating items to be included in the record on appeal must
    - ♦ for each item, specify the document number shown on the docket sheet. If an item does not have a document number, specify the date the item was filed.

♦ If you have designated a transcript that has not been filed, order it immediately by contacting the presiding bankruptcy judge's courtroom deputy or following the instructions at http://www.txnb.uscourts.gov/transcript–and–tape–orders.

**ASSEMBLY OF THE RECORD**

Within 14 days of filing your designation of the record, pursuant to Rule 8009, submit to the bankruptcy clerk any item that is **not available in the ECF system**, using this procedure:

- Enclose sealed items and non–documentary items (e.g., removable media) in 8.5" x 11" envelopes.
- Copy all other items in PDF files to a removable storage device (e.g., USB drives, DVDs, etc.), organized in the sequence in which they were designated. Limit files to 5.0 MB in size and do not include color.
- Save copies of court exhibits in PDF files to a removable storage device, organized in the sequence in which they are designated. Limit files to 5.0 MB in size and do not include color. (Use a separate removable storage device for each hearing.)
- Label any submission with the case caption and bankruptcy court case and/or adversary proceeding number.

**TRANSMITTAL OF THE RECORD**

- The bankruptcy clerk will electronically transmit the record to the district clerk. The parties must provide a paper copy of the record, if required.

**REQUIREMENTS REGARDING PAPER RECORD**

- If the district judge requires a paper copy, the district clerk will notify you that you are required to provide a copy of the items in *your* designation **to the bankruptcy clerk**, for quality review.
- If you are notified to provide a paper copy, organize the record according to the volumes maintained in the **district court's ECF system**.
- Even if a paper copy is not required when an appeal is entered on the docket, the district judge or the district clerk may later notify you that a paper copy is required for the use of the district judge or the court of appeals.

DATED: 8/11/26

FOR THE COURT:
Stephen J Manz, Clerk of Court

by: /s/Sheniqua Whitaker, Deputy Clerk